IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASHOK V. SHAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 07-554-SLR/LPS |
| | ) |
| BANK OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Sheldon S. Sandler, Esquire (No. 245)
Margaret M. DiBianca, Esquire (No. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-5008
Facsimile: (302) 576-3476
E-mail: mdibianca@ycst.com

and

Elena D. Marcus, Esquire (admitted *pro hac vice*)
MCGUIRE WOODS LLP
7 St. Paul Street, Suite 1000
Baltimore, MD 21202
Telephone: (410) 659-4400
Facsimile: (410) 659-4547
E-mail: emarcuss@mcguirewoods.com

*Attorneys for Defendant*

Dated: May 5, 2008

# TABLE OF CONTENTS

                                                                     **Page**

TABLE OF AUTHORITIES ................................................................................................... v

NATURE AND STAGE OF PROCEEDINGS ..................................................................... 7

SUMMARY OF ARGUMENT ............................................................................................. 9

STATEMENT OF FACTS .................................................................................................. 10

ARGUMENT ....................................................................................................................... 12

I.     THE BANK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS ............................................................................ 12

        A.    Summary Judgment Standard ....................................................................... 12

        B.    Analytical Framework .................................................................................. 13

        C.    Preliminary Matters ....................................................................................... 15

II.    THE BANK SHOULD BE GRANTED SUMMARY JUDGMENT BECAUSE PLAINTIFF IS UNABLE TO ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION OR PROFFER ANY EVIDENCE OF PRETEXT ...................................................................................................... 16

        A.    Plaintiff Is Unable to Establish a *Prima Facie* Case of Discrimination .......... 16

        B.    Plaintiff Also Cannot Prove that the Bank's Legitimate, Non-Discriminatory Reason for Its Action Is a Pretext for Discrimination ............ 17

CONCLUSION .................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

Bray v. L.D. Caulk Dentsply Int'l,
    No. 98-441-SLR, 2000 U.S. Dist. LEXIS 11062 (D. Del. July 31, 2000) ....................... 17

Cannon v. State of Del.,
    523 F. Supp. 341 (D. Del. 1981) ................................................................................... 13

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ............................................................................................... 12, 13

Cuffee v. The Dover Wipes Co.,
    334 F. Supp. 2d (D. Del. 2004) ..................................................................................... 16

Ebert v. Office of Info. Sys.,
    No. 97-530-SLR, 1998 U.S. Dist. LEXIS 9100 (D. Del. June 12, 1998) ....................... 13

Fallon v. Meissner,
    66 Fed. Appx. 348 (3d Cir. 2003) ................................................................................. 14

Fuentes v. Perskie,
    32 F.3d 759 (3d Cir. 1994) ............................................................................................ 15

Furnco Construction Corp. v. Waters,
    438 U.S. 567 (1978) ...................................................................................................... 14

Graves v. Lowery,
    117 F.3d 723 (3d Cir. 1997) .......................................................................................... 15

Horowitz v. Fed. Kemper Life Assurance Co.,
    57 F.3d 300 (3d Cir. 1995) ............................................................................................ 12

Jones v. Sch. Dist. of Phila.,
    198 F.3d 403 (3d Cir. 1999) .......................................................................................... 14

Keller v. Orix Credit Alliance, Inc.,
    130 F.3d 1101 (3d Cir. 1997) ........................................................................................ 15

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ...................................................................................................... 13

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ...................................................................................................... 14

Mitchell v. Data Gen. Corp.,
    12 F.3d 1310 (4th Cir. 1993) ........................................................................................ 14

Pamintuan v. Nanticoke Mem'l Hosp.,
    No. 96-233-SLR, 1998 U.S. Dist. LEXIS 16764 (D. Del. Oct. 15, 1998) ..................... 13

Quiroga v. Hasbro, Inc.,
    934 F.2d 497 (3d Cir. 1991) .................................................................................... 12

Richards v. City of Wilmington,
    2004 U.S. Dist. 4987 (D. Del. Mar. 24 2004) ...................................................... 12, 13

Riner v. Nat'l Cash Register,
    434 A.2d 375 (Del. 1981) ........................................................................................ 13

Schlifke v. Trans World Entmt. Corp.,
    479 F. Supp. 2d 445 (D. Del. 2007) ......................................................................... 14

Schoch v. First Fidelity Bancorporation,
    912 F.2d 654 (3d Cir. 1990) .................................................................................... 12

Sheridan v. E.I. DuPont De Nemours & Co.,
    100 F.3d 1061 (3d Cir. 1996) ............................................................................. 14, 15

Stinson v. Del. River Port Auth.,
    935 F. Supp. 531 (D.N.J. 1996) .............................................................................. 13

Taylor v. Proctor & Gamble Dover Wipes Co.,
    184 F. Supp. 2d 402 (D. Del. 2002) ........................................................................ 13

Tex. Dep't of Comty. Affairs v. Burdine,
    450 U.S. 248 (1981) ................................................................................................ 15

Thorpe v. Reading Hosp.,
    No. 06-00828, 2006 U.S. Dist. LEXIS 80206 (E.D. Pa. Nov. 2, 2006) .................. 15

**Statutes**

19 Del. C. § 711(a) ............................................................................................................ 15

19 Del. C. § 712(c)(1) ....................................................................................................... 16

19 Del. C. § 714 ................................................................................................................ 16

19 Del. C. §§ 710-18 .......................................................................................................... 7

42 U.S.C. § 2000e-2(a) ..................................................................................................... 15

42 U.S.C. §§ 2000e-17 ....................................................................................................... 7

42 U.S.C. §§ 2000e-5(e) ................................................................................................... 16

**Rules**

Fed R. Civ. P. 56(c) .......................................................................................................... 12

DB02:6794734.2                                                                                                              061442.1004

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff *pro se* Ashok Shah brought the present matter against Banc of America Card Servicing Corporation (the "Bank").[1] Plaintiff was placed at the Bank through Adecco, a temporary services company, on December 4, 2006. The assignment was expected to last less than a month. On the first day of the assignment, Plaintiff's managers learned that he had been accused of harassing a Bank associate some years earlier. Plaintiff was released from the assignment the same day.

In January 2007, Plaintiff filed a Charge of Discrimination (the "Charge"), with the Delaware Department of Labor ("DDOL"). In his Charge, Plaintiff alleges that he was discharged because of his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-17 ("Title VII"), and the Delaware Discrimination in Employment Act, 19 Del. C. §§ 710-18 ("DDEA").[2] (A104.) The DDOL investigated Plaintiff's Charge and concluded that there was "no reasonable cause to believe that an unlawful employment practice has occurred." (A104.) The DDOL's Final Determination and Right to Sue Notice was issued February 28, 2007. Id.

Plaintiff initiated the instant matter by filing a Complaint *pro se* in the Superior Court of Delaware in and for New Castle County on May 24, 2007.[3] The Bank timely removed this

---

[1] Plaintiff erroneously named Bank of America as the Defendant. Plaintiff's assignment was with Banc of America Card Servicing Corp. which is a subsidiary of Bank of America, N.A.

[2] There are two versions of Plaintiff's Charge of Discrimination. In one, Plaintiff claims that his discharge was based on his national origin. In the other, Plaintiff claims that his discharge was based both on his race and national origin. Plaintiff does not know which is the final version. (A89-91; 102-103.) The Charge that the DDOL sent to the Bank and investigated identifies only national origin as the protected class. (A104.)

[3] The following day, Plaintiff filed a Complaint with essentially the same allegations against Nancy Pingitore. (C.A. No. 07C-05-271 WCC.) That matter was dismissed by the Delaware Superior Court on January 9, 2008, upon the defendant's motion.

matter to this Court.  (D.I. 1.)  In the Complaint, Plaintiff alleges that he was terminated by the Bank due to discrimination based on race and national origin.  (D.I. 1 at ¶ 7.)  Plaintiff demands salary for 18 years in the amount of $1,440,000.00 and punitive damages in the amount of $3,000,000.00.  (D.I. 1.)

Pursuant to the Court's Scheduling Order, discovery in this matter was to be completed on or before April 4, 2008.  (D.I. 9.)  During discovery, the Bank deposed Plaintiff and served Plaintiff with written requests for production of documents.  On the last day of the discovery period, Plaintiff submitted a letter to the Court requesting an extension of the discovery period.  (D.I. 13.)  The Bank opposed this request.  (D.I. 16.)  The Bank now moves for summary judgment in accordance with the Court's Scheduling Order.

## SUMMARY OF ARGUMENT

1. Plaintiff's temporary assignment with the Bank was ended just hours after it started when the Bank learned that some years earlier Plaintiff had been accused of harassing a current Bank associate.

2. The Bank is entitled to summary judgment because there is no genuine issue of material fact with respect to Plaintiff's claim that must be resolved by a jury.

3. Plaintiff cannot establish a *prima facie* case of race or national origin discrimination because he cannot identify any facts that could possibly give rise to an inference that his assignment with the Bank was ended because of his race or national origin.

4. Moreover, even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of discrimination, Plaintiff has failed to proffer any evidence that the Bank's legitimate, non-discriminatory reason for ending his temporary assignment is unworthy of credence or that it was more likely than not that his temporary assignment was ended because of invidious discrimination.

## STATEMENT OF FACTS

Dawn Weaver is a Group Operations Manager for Banc of America Card Service Corporation in Newark, Delaware. (A114.) In late 2006, Ms. Weaver contacted Adecco, a temporary staffing agency, to obtain temporary assistance for a special project. (A114.) The assignment was scheduled to begin December 4, and was to conclude on December 29, 2006. (A124.) Plaintiff was going to be paid $13 an hour for his work at the Bank. (Id.)

On the morning of December 4, 2006, Plaintiff reported to the Bank. He met with Linda ("Michele") Durso, an Operations Manager who reported to Ms. Weaver. (A116; A41-42.) Ms. Durso walked Plaintiff across the work area, introduced him to a few of the associates that were present, and showed him where he would be sitting. (A42-43; A116.) One of the individuals with whom Plaintiff spoke is Peggy Keen. (A118; A52-53.)

This was not Plaintiff's first time working as a temporary employee at the Bank. Plaintiff had worked as a temporary at MBNA in 1997 and 1999 as part of another special project. (A118; A1-8.)[4] Ms. Keen was also a temporary employee at that time. Plaintiff and Ms. Keen both worked with Nancy Weeks,[5] an MBNA associate. (A118.)

Ms. Weeks and Plaintiff became friends and developed a personal relationship during Plaintiff's temporary assignment with MBNA in 1999. Their relationship continued until August 2001. At that point, Ms. Weeks no longer wanted to have any sort of relationship or contact with Plaintiff. Plaintiff had borrowed $17,000 from Ms. Weeks and pressured her to forgive the debt. After she asked him to stop bothering her, Plaintiff continued calling Ms.

---

[4] These time records were produced by Plaintiff.

[5] Ms. Weeks' last name at the time was Pignitore.

Weeks' home phone (even after she changed the number) and cell phone and driving by her home.

Ms. Weeks became very scared of Plaintiff and the only place she felt safe was at work. But, Plaintiff continued to call her at work and on her cell phone during working hours, despite her repeated requests that he not call her anymore. (A120.) Ms. Weeks reported the situation to her senior manager, Wendy Lindsey. Ms. Lindsey contacted MBNA Security. Ms. Weeks was then contacted by someone from the Bank's Threat Management group to whom she explained the situation. (A120; A122; A104.)

Ms. Keen had also worked with Ms. Weeks and Ms. Lindsey in 2001. In December 2006, Ms. Keen recognized Plaintiff as the individual with whom Ms. Weeks previously had an issue. (A118.) Based upon what she knew about the previous issue between them, Ms. Keen believed that Ms. Weeks would be upset if she saw Plaintiff. So as not to involve individuals who might not be aware of the situation, Ms. Keen called Ms. Lindsey. (A118.)

Ms. Lindsey, who no longer worked in the same area of the Bank, contacted another manager in Ms. Weeks' and Ms. Keen's area, who in turn contacted Ms. Durso. (A122-23; A116.) Ms. Durso reported what she had learned to Ms. Weaver. (A116.) Ms. Weaver spoke with Ms. Lindsey about the situation and then with a personnel generalist who advised that the Bank was under no obligation retain the agency employee. As the current temporary assignment would have involved Ms. Weeks and Mr. Shah working in the same area, Ms. Weaver decided to end Mr. Shah's temporary assignment. (A115.)

Ms. Durso conveyed the decision to Lisa Pisano, the Bank's Adecco representative and then gave Ms. Pisano's phone number to Plaintiff and asked him to call her. (A116; A45-47.) Ms. Pisano told Plaintiff that his temporary assignment was being ended and that he should leave

11

immediately. (A48-49.) Plaintiff then left the Bank. (A50-51.) Plaintiff was at the Bank for less than four hours. (A28.)

## ARGUMENT

I. THE BANK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS

    A.    **Summary Judgment Standard**

Summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material," and disputes "genuine," only if "'evidence exists from which a rational person could conclude that the position of the person with the burden of proof is correct.'" Richards v. City of Wilmington, No. 03-106-SLR, 2004 U.S. Dist. LEXIS 4987, at *8 (D. Del. Mar. 24 2004) (quoting Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)).

The non-movant may not "rest upon mere allegations, general denials, or . . . vague statements." Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991); Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) ("unsupported allegations in [a non-movant's] memorandum and pleadings are insufficient to repel summary judgment"). To defeat a summary judgment motion, Rule 56(c) requires the non-moving party to:

> [D]o more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' [W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); see also Taylor v. Proctor & Gamble Dover Wipes Co., 184 F. Supp. 2d 402, 408 (D. Del. 2002) ("mere scintilla of evidence in support of non-moving party is insufficient"); Richards, 2004 U.S. Dist. LEXIS 4987, at *11-12 ("There must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.").

In an action brought under Title VII, a defendant is entitled to summary judgment when it demonstrates either: "(1) that the plaintiff is unable to establish a *prima facie* case of discrimination; or (2) if the plaintiff can establish a *prima facie* case, the plaintiff cannot produce sufficient evidence from which a fact finder could infer that the defendant's legitimate, non-discriminatory reason for [taking adverse employment action against] plaintiff was a pretext." Pamintuan v. Nanticoke Mem'l Hosp., No. 96-233-SLR, 1998 U.S. Dist. LEXIS 16764, at *41 (D. Del. Oct. 15, 1998) (citing Stinson v. Del. River Port Auth., 935 F. Supp. 531, 539 (D.N.J. 1996)).  Put another way, if the non-moving party fails to sufficiently establish an essential element of his case with respect to which he bears the burden of proof, summary judgment shall be granted in favor of the moving party.  See Ebert v. Office of Info. Sys., No. 97-530-SLR, 1998 U.S. Dist. LEXIS 9100, at *9 (D. Del. June 12, 1998) (citing Celotex, 477 U.S. at 322).

**B.     Analytical Framework**

It is not entirely clear whether Plaintiff seeks to bring his claim under Title VII or the DDEA.  The answer is immaterial for purposes of summary judgment because the analysis is the same under either statute.  See Cannon v. State of Del., 523 F. Supp. 341, 344 (D. Del. 1981) (recognizing that "Delaware State law prohibits employment discrimination in terms almost identical to Title VII itself"); Riner v. Nat'l Cash Register, 434 A.2d 375, 376 (Del. 1981) (noting that in interpreting the DDEA "we have in the past taken our interpretive lead from federal decisions construing and applying Title VII").

13

Plaintiff's disparate treatment claim should be analyzed under the familiar burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See, e.g., Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999); Schlifke v. Trans World Entmt. Corp., 479 F. Supp. 2d 445, 450 (D. Del. 2007). Thus, Plaintiff must first establish by a preponderance of the evidence a *prima facie* case of discrimination. In order to establish a *prima facie* case, Plaintiff must prove that: (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person who is not of the protected class is treated differently. Id. While the elements of a *prima facie* case may be stated in different ways, the central focus is whether Plaintiff has presented sufficient evidence from which a fact finder could presume that the acts at issue, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors" such as race or national origin. See Sheridan v. E.I. DuPont De Nemours & Co., 100 F.3d 1061, 1069 (3d Cir. 1996) (quoting Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978)); Fallon v. Meissner, 66 Fed. Appx. 348, 351 (3d Cir. 2003); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315 (4th Cir. 1993).

If Plaintiff establishes a *prima facie* case, the burden shifts to the Bank to articulate a legitimate, nondiscriminatory reason for its actions. See Jones, 198 F.3d at 410; Schlifke, 479 F. Supp. 2d at 450. If the Bank produces this evidence, any presumption of discrimination drops from the case. Jones, 198 F. 3d at 410. Plaintiff "may defeat a motion for summary judgment [] by pointing 'to some evidence, direct or circumstantial, from which a fact finder would reasonably believe either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or

determinative cause in the employer's action.'" Id. at 413 (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994), and Sheridan, 100 F.3d at 1067). With respect to the former option, this Circuit has explained that:

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence.

Id. (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-9 (3d Cir. 1997)). "The ultimate burden of persuading the trier of facts that the defendant intentionally discriminated against the Plaintiff remains at all times with the Plaintiff." Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

### C. Preliminary Matters

There are two threshold matters to be addressed. First, Title VII and the DDEA prohibit certain conduct by an employer. See 42 U.S.C. § 2000e-2(a); 19 Del. C. § 711(a). An individual's "status as an employee under Title VII can be determined only upon careful analysis of the myriad facts surrounding the employment relationship in question." Graves v. Lowery, 117 F.3d 723, 729 (3d Cir. 1997). In this case, Plaintiff cannot establish that he was an employee of the Bank for purposes of Title VII or the DDEA. Even in his unemployment insurance claim, he names Adecco as the employer. (A22.) Because the Bank was not Plaintiff's employer, it is improperly named in this matter. As a result, Plaintiff cannot sustain a claim under either statute. Thorpe v. Reading Hosp., No. 06-00828, 2006 U.S. Dist. LEXIS 80206, at *8 (E.D. Pa. Nov. 2, 2006) (finding that, because Title VII only holds employers liable

15

for employment discrimination, the Court must determine as a threshold matter the relationship between the defendant and plantiff).

Second, Plaintiff cannot establish that he exhausted his administrative remedies with respect to his race discrimination claim. An aggrieved individual is required to exhaust his administrative remedies as a precondition to suit under both Title VII and the DDEA. See Cuffee v. The Dover Wipes Co., 334 F. Supp. 2d 565, 573 (D. Del. 2004); 19 Del. C. § 714. The Charge that was filed with and investigated by the DDOL alleged discrimination on the basis of national origin only. The revised draft of the Charge did not assert race as a basis for his claims. (Compare A105-09 to A102-03.) As a result, Plaintiff did not exhaust his administrative remedy with respect to his race discrimination claim. In addition, because the time for filing such a claim has now long expired, see 42 U.S.C. §§ 2000e-5(e); 19 Del. C. § 712(c)(1), Plaintiff's race discrimination claim should be dismissed with prejudice. Plaintiff has named a non-employer as the defendant in this matter. Additionally he has not exhausted his administrative remedies. Consequently, there is no material dispute that Plaintiff's claim cannot survive the present Motion.

## II. THE BANK SHOULD BE GRANTED SUMMARY JUDGMENT BECAUSE PLAINTIFF IS UNABLE TO ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION OR PROFFER ANY EVIDENCE OF PRETEXT

### A. Plaintiff Is Unable to Establish a *Prima Facie* Case of Discrimination

The first two elements of a *prima facie* case are not at issue. Defendant does not dispute that Plaintiff is a member of a protected class. And, even assuming he was an employee of the Bank,[6] termination of Plaintiff's temporary assignment with the Bank constituted an adverse employment action. Thus, whether Plaintiff can establish a *prima facie* case depends upon

---

[6] See Subsection C, *supra*.

whether he can establish that the action occurred under circumstances that give rise to an inference of unlawful discrimination.

There are no facts in this matter that could give rise to an inference of discrimination because there is nothing that suggests in any way that the ending of Plaintiff's temporary assignment was related to his race or national origin. In addition, Plaintiff cannot identify any similarly situated person outside of his protected class who was treated differently. The prior personal issue that led the Bank to terminate Plaintiff's temporary assignment involved two people: Plaintiff and Ms. Weeks.

Plaintiff and Ms. Weeks are not similarly situated. Ms. Weeks was a long-term employee of the Bank who had complained to the Bank that she was being harassed by Plaintiff. Plaintiff was a temporary employee on a short term assignment who never complained to the Bank of any problem with Ms. Weeks. (A38-40; 100-01.) The circumstances surrounding the Bank's decision to terminate Plaintiff's temporary assignment does not give rise to an inference of race or national origin discrimination. As this Court has noted, "speculation alone cannot establish a *prima facie* case of discrimination." Bray v. L.D. Caulk Dentsply Int'l, No. 98-441-SLR, 2000 U.S. Dist. LEXIS 11062, at *15 (D. Del. July 31, 2000). The Bank should be granted summary judgment because Plaintiff cannot establish a *prima facie* case of discrimination.

      **B.**    **Plaintiff Also Cannot Prove that the Bank's Legitimate, Non-Discriminatory Reason for Its Action Is a Pretext for Discrimination**

Likewise, Plaintiff cannot establish that the Bank's legitimate, non-discriminatory reason for terminating his temporary assignment was a pretext for discrimination. Plaintiff was asked during his deposition about what facts or evidence he had to support his claim that he was discriminated against by the Bank on the basis of his race or national origin. (A57-80; A94-99.) Plaintiff's various responses cannot support his claim.

17

First, Plaintiff relies upon the fact that the DDOL concluded that he was not disqualified from receiving unemployment benefits following the termination of his temporary assignment at the Bank. In particular, Plaintiff points to the fact that in its Determination, the DDOL's Unemployment Division stated that the employer did not meet its burden of establishing just cause for the discharge. (A62-65; A22.) This is irrelevant to the instant matter. Flick v. Aurora Equip. Co., Inc., No. 03-2508, 2004 U.S. Dist. LEXIS 4303, at *11 (E.D. Pa. 2004). (holding that an unemployment hearing ruling "should normally not be admitted in a federal discrimination suit").

The Determination identifies Adecco, not the Bank, as the employer-respondent. Additionally, the Determination states that its conclusion was based solely on information provided by Plaintiff. And, while the employer has the burden of proving discharge for just cause before unemployment benefits will be disallowed, the burden of proof is on the plaintiff in a discrimination case. Thus, the fact that Plaintiff was not disqualified from receiving unemployment benefits is immaterial to his discrimination claims in this matter. Id.

Second, Plaintiff claims that, "in his opinion," Ms. Lindsey knew that Ms. Weeks was sexually harassing him because she knew that they had traveled to Niagara Falls together. (A67; A76-77; A11-12.) This claim, even if true, is irrelevant to the present analysis. This alleged trip in August 2000 does not reflect in any way that Ms. Weeks was sexually harassing Plaintiff. Nor is it relevant to the nature of the relationship in October 2001 when Ms. Weeks complained to Ms. Lindsey. Moreover, though Plaintiff now alleges that Ms. Weeks harassed and assaulted him (A29-32), Plaintiff admits that he never reported any such inappropriate conduct to the Bank. (A34-40; A100-01.)

Third, Plaintiff claims that Ms. Weeks' complaint to the Bank about his conduct was "dishonest." In support of this claim, Plaintiff alleges that Ms. Weeks gave him her phone numbers in 1999 and wrote to him as late as August 2001. (A72-75.)[7] Again, none of this reflects the state of their relationship in October 2001.[8] Further, even assuming the accuracy of Plaintiff's implausible assertion, the Bank would not have had any reason to believe that Ms. Weeks' complaint was "dishonest." More importantly, none of this indicates that the Bank's belief or motivation was dishonest, unworthy of credence, or pretextual. Schlifke v. Trans World Entm't, 479 F. Supp. 2d 445 (D. Del. 2007) (finding that vague allegations, unsupported by other evidence in the record, cannot defeat a properly supported motion for summary judgment).

Fourth, Plaintiff claims that the fact that Ms. Lindsey gave him a good review after his temporary assignment in 1999 evidences that he did not threaten Ms. Weeks. (A80-82.) Again, this does not reflect on what happened more than two years later. See Rush v. Scott Specialty Gases, Inc., 113 F. 3d 476 (3d Cir. 1997) (finding that evidence from outside the relevant time period is inadmissible).

Fifth, Plaintiff claims that Ms. Durso is "a racist." When asked for the basis for that assertion, Plaintiff pointed to events that he alleges occurred during his temporary assignment at the Bank in 1997. He claimed that Ms. Durso ended his assignment early. He also suggests that she did not like the fact that he drank tea. (A54-56; A82-86.) Assuming their truth, these facts

---

[7] Plaintiff produced one letter from Ms. Weeks to him dated October 1999 (A9), an e-mail from Ms. Weeks to him from June 2000 (A10), envelopes from her to him from April and August 2001 (A15; A17-18), a "birthday gift" check from her to him from August 2001 (A13; A16), and a note from Ms. Weeks to Plaintiff reflecting checks totaling $15,000 she had given him between June 2000 and April 2001 (A14).

[8] To the contrary, the fact that Plaintiff produced nothing related to their relationship more recent than August 2001, tends to confirms Ms. Weeks' statement that their relationship ended in August 2001.

do not establish that Ms. Durso harbored any animus against Plaintiff because of his race or national origin.  Further, Plaintiff's assertion that Ms. Durso discriminated against him in 1997 is belied by the fact that he never made a complaint about such conduct, never filed a charge of discrimination, and voluntarily returned to the Bank twice thereafter.

Finally, Plaintiff claims that in 1997, temporary employees were not given the same benefits as permanent employees.  (A86-88.)  Even if true, disparity in benefits among full-time and temporary employees does not evidence discrimination on the basis of a protected classification.  <u>Gray v. N.E. Teleph. & Telegraph Co.</u>, 792 F. 2d 251, 255 (1st Cir. 1986) (rejecting plaintiff's suggestion that discrimination can be inferred by reference to different employment benefits).

As the above discussion makes clear, Plaintiff has not proffered any evidence from which a fact finder could reasonably disbelieve the Bank's articulated reason for terminating Plaintiff's temporary assignment.  Even if Ms. Weeks was harassing Plaintiff, as he now alleges, it is undisputed that the Bank had no reason to know about such conduct, as Plaintiff admits that he never complained to anyone at the Bank about it.  There is also no evidence from which a reasonable fact finder could conclude that Plaintiff's race or national origin was more likely than not a determinative cause in the termination of his temporary assignment.  Accordingly, Plaintiff cannot possibly sustain his burden of proving that the Bank intentionally discriminated against him and summary judgment in favor of the Bank is appropriate in this matter.

20

## CONCLUSION

For the foregoing reasons, the Bank should be granted summary judgment on Plaintiff's claims.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Margaret M. DiBianca*
Sheldon S. Sandler (No. 0245)
Margaret M. DiBianca (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-5008
Facsimile: (302) 576-3476
E-mail: mdibianca@ycst.com

and

Elena D. Marcuss
MCGUIRE WOODS, LLP
7 St. Paul Street, Suite 1000
Baltimore, MD  21202
Telephone:  (410) 659-4400
Facsimile:  (410) 659-4547
E-mail:  emarcuss@mcguirewoods.com
Admitted *Pro Hac Vice*

*Attorneys for Defendant*

Dated: May 5, 2008

## **CERTIFICATE OF SERVICE**

I, Margaret M. DiBianca, Esquire, do hereby certify that on May 5, 2008, I did file electronically file **Defendant's Opening Brief in Support of It's Motion for Summary Judgment** with the Court.  I also certify that I caused two (2) copies of **Defendant's Opening Brief in Support of It's Motion for Summary Judgment** to be mailed via Certified Mail, return receipt requested, to the following plaintiff *pro se*:

>Ashok V. Shah
>P.O. Box 1182
>New Castle, Delaware 19720

>*/s/ Margaret M. DiBianca, Esq.*
>Margaret M. DiBianca

\6216173.1