IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASHOK V. SHAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No.: 07-554-SLR/LPS |
| | ) | |
| BANK OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**APPENDIX TO DEFENDANT'S OPENING BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Sheldon S. Sandler, Esquire (No. 245)
Margaret M. DiBianca, Esquire (No. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899-0391
Telephone: (302) 571-5008
Facsimile:  (302) 576-3476
E-mail:  mdibianca@ycst.com

Elena D. Marcus, Esquire (admitted *pro hac vice*)
MCGUIRE WOODS LLP
7 St. Paul Street, Suite 1000
Baltimore, MD  21202
Telephone:  (410) 659-4400
Facsimile:  (410) 659-4547
E-mail:  emarcuss@mcguirewoods.com

*Attorneys for Defendant*

Dated: May 5, 2008

# TABLE OF CONTENTS

**Page**

Shah Time Sheets (1997 and 1999) ..............................................................................A1

Weeks letter to Shah dated October 14, 1999..............................................................A9

Pingitore email to Shah dated June 25, 2000..............................................................A10

Shah Liberty Travel and CitiBank receipts (August 2000) ........................................A11

Pingitore check to Shah dated August 11, 2000 .........................................................A13

Pingitore list of loans to Shah (2000 and 2001)..........................................................A14

Pingitore envelope and letter to Shah dated April 23, 2001 .......................................A15

Envelope to Shah dated August 6, 2001 .....................................................................A17

MBNA Security notes of interview dated October 10, 2001........................................A19

MBNA Security Incident Report dated October 10, 2001...........................................A21

DDOL Unemployment Insurance Notice of Determination (ADECCO)
dated December 18, 2006 .............................................................................................A22

Charge of Discrimination (Bank of America) dated January 8, 2007 ........................A23

DDOL Notice of Charge of Discrimination dated January 19, 2007 ..........................A25

DDOL Final Determination and Right to Sue Notice dated February 28, 2007.........A26

Excerpts and Exhibits from the Deposition Transcript of Ashok V. Shah
dated February 21, 2008 ..............................................................................................A27

Declaration of Karen Bahr dated May 2, 2008 (with Exhibits A-C).........................A104

Declaration of Dawn Weaver dated May 2, 2008........................................................A114

Declaration of Linda Durso dated May 5, 2008 .........................................................A116

Declaration of Peggy Keen dated May 2, 2008 ..........................................................A118

Declaration of Nancy Weeks dated May 2, 2008 .......................................................A120

DB02:6794861.1                                                                    061442.1004

Declaration of Wendy Lindsey dated May 2, 2008 ...................................................................A122

Declaration of Lisa Pisano dated May 2, 2008 .........................................................................A124

DB02:6794861.1                                                                                            061442.1004

**Olsten**
**Staffing Services**

PRINT CLEARLY

CHECK NUMBER _____

WEEK ENDING | MO. | DAY | YEAR | OFFICE NO. 0640

EMPLOYEE NAME  Ashok V. Shah

COMPANY NAME  MBNA America

DEPARTMENT _____ COST CTR. NO. ASSIGNMENT NO. 19904

ASSIGNMENT STATUS: ☐ CONTINUING ☐ COMPLETED ☐ AVAILABLE

I UNDERSTAND THAT I MUST OBTAIN PERMISSION FROM OLSTEN BEFORE I WORK HOURS THAT WOULD BE CONSIDERED AS OVERTIME.

I AGREE TO NOTIFY OLSTEN AT THE END OF EACH ASSIGNMENT. IF I FAIL TO DO SO, OLSTEN MAY ASSUME THAT I AM NOT AVAILABLE FOR EMPLOYMENT AND I MAY BE INELIGIBLE FOR UNEMPLOYMENT BENEFITS.

I CERTIFY THAT I HAVE WORKED THE HOURS LISTED ON THIS TIME SHEET AND HAVE READ THE INSTRUCTIONS ON THE REVERSE SIDE. THE UNDERSIGNED ACKNOWLEDGES THAT THE DURATION OF ANY ASSIGNMENT IS NOT GUARANTEED.

X  _Shah_
EMPLOYEE SIGNATURE

SEE INSTRUCTIONS AND TERMS ON REVERSE SIDE

ALL OVERTIME MUST BE VERIFIED

| DAY | DATE | IN | OUT | TOTAL | LESS LUNCH | DAILY TOTAL |
|-----|------|-----|-----|-------|-----------|------------|
| MON | 4-28 | 8:00 A | 4:00 P | | | 07 |
| TUES | 4/29 | 8:00 A | 5:00 P | | 1:00 | 08 |
| WED | 4/30 | 8:00 A | 5:00 P | | 1:00 | 1:0 |
| THU | 5/1 | | 5:00 P | 1:00 | | |
| FRI | 5/2 | 8:00 A | 5:00 P | 1:00 | | |
| SAT | | | | | | |
| SUN | | | | | | |

CIRCLE NUMBER OF DAYS OLSTEN EMPLOYEE WORKED  1 2 3 4 5 6 7

TOTAL HOURS

STRAIGHT TIME / OVERTIME

▶ FORTY HOURS —

WRITE IN WORDS THE NUMBER OF HOURS WORKED (CLIENT)
I CERTIFY THAT THE ABOVE OLSTEN EMPLOYEE WORKED THE HOURS LISTED ON THIS TIME SHEET AND AGREE TO TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE.

X  _Linda M. Durso_
AUTHORIZED CLIENT SIGNATURE

PRINT NAME  Linda M. Durso  Facil
DEPT

CLIENT TITLE _____

TELEPHONE NO.  302-3433   EXT.

---

**Olsten**
**Staffing Services**

CHECK NUMBER  MAIL

PRINT CLEARLY

WEEK ENDING | MO. 05 | DAY 11 | YEAR 97 | OFFICE NO. 0640

EMPLOYEE NAME  ASHOK V. SHAH

COMPANY NAME  MBNA AMERICA

DEPARTMENT FACILITY FINANCE  COST CTR. NO. ASSIGNMENT NO. 19907

ASSIGNMENT STATUS: ☒ CONTINUING ☐ COMPLETED ☐ AVAILABLE

I UNDERSTAND THAT I MUST OBTAIN PERMISSION FROM OLSTEN BEFORE I WORK HOURS THAT WOULD BE CONSIDERED AS OVERTIME.

I AGREE TO NOTIFY OLSTEN AT THE END OF EACH ASSIGNMENT. IF I FAIL TO DO SO, OLSTEN MAY ASSUME THAT I AM NOT AVAILABLE FOR EMPLOYMENT AND I MAY BE INELIGIBLE FOR UNEMPLOYMENT BENEFITS.

I CERTIFY THAT I HAVE WORKED THE HOURS LISTED ON THIS TIME SHEET AND HAVE READ THE INSTRUCTIONS ON THE REVERSE SIDE. THE UNDERSIGNED ACKNOWLEDGES THAT THE DURATION OF ANY ASSIGNMENT IS NOT GUARANTEED.

X  _AShah_
EMPLOYEE SIGNATURE

SEE INSTRUCTIONS AND TERMS ON REVERSE SIDE

ALL OVERTIME MUST BE VERIFIED

| DAY | DATE | IN | OUT | TOTAL | LESS LUNCH | DAILY TOTAL |
|-----|------|-----|-----|-------|-----------|------------|
| MON | 5-5-97 | 8:00A | 5:00P | 09:00 | 1:00 | 08:00 |
| TUES | 5-6-97 | 8:00A | 5:00P | 09:00 | 1:00 | 08:00 |
| WED | 5-7-97 | 8:00A | 5:00P | 09:00 | 1:00 | 08:00 |
| THU | 5-8-97 | 8:00A | 5:00P | 09:00 | 1:00 | 08:00 |
| FRI | 5-9-97 | 8:00A | 5:00P | 09:00 | 1:00 | 08:00 |
| SAT | | | | | | |
| SUN | | | | | | |

CIRCLE NUMBER OF DAYS OLSTEN EMPLOYEE WORKED  1 2 3 4 5 6 7

TOTAL HOURS

STRAIGHT TIME  40:00 / OVERTIME

▶ FORTY HOURS

WRITE IN WORDS THE NUMBER OF HOURS WORKED (CLIENT)
I CERTIFY THAT THE ABOVE OLSTEN EMPLOYEE WORKED THE HOURS LISTED ON THIS TIME SHEET AND AGREE TO TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE.

X  _Linda M. Durso 5/9_
AUTHORIZED CLIENT SIGNATURE

PRINT NAME  Linda M. Durso Finance
DEPT

CLIENT TITLE  Operations Mgr.

TELEPHONE NO.  302-432-3433   EXT.

---

**Olsten**
**Staffing Services**

CHECK NUMBER  MAIL

PRINT CLEARLY

WEEK ENDING | MO. 05 | DAY 18 | YEAR 97 | OFFICE NO. 0640

EMPLOYEE NAME  ASHOK V. SHAH

COMPANY NAME  MBNA AMERICA

DEPARTMENT FACILITY FINANCE  COST CTR. NO. ASSIGNMENT NO. 19907

ASSIGNMENT STATUS: ☐ CONTINUING ☐ COMPLETED ☐ AVAILABLE

I UNDERSTAND THAT I MUST OBTAIN PERMISSION FROM OLSTEN BEFORE I WORK HOURS THAT WOULD BE CONSIDERED AS OVERTIME.

I AGREE TO NOTIFY OLSTEN AT THE END OF EACH ASSIGNMENT. IF I FAIL TO DO SO, OLSTEN MAY ASSUME THAT I AM NOT AVAILABLE FOR EMPLOYMENT AND I MAY BE INELIGIBLE FOR UNEMPLOYMENT BENEFITS.

I CERTIFY THAT I HAVE WORKED THE HOURS LISTED ON THIS TIME SHEET AND HAVE READ THE INSTRUCTIONS ON THE REVERSE SIDE. THE UNDERSIGNED ACKNOWLEDGES THAT THE DURATION OF ANY ASSIGNMENT IS NOT GUARANTEED.

X  _AShah_
EMPLOYEE SIGNATURE

SEE INSTRUCTIONS AND TERMS ON REVERSE SIDE

ALL OVERTIME MUST BE VERIFIED

| DAY | DATE | IN | OUT | TOTAL | LESS LUNCH | DAILY TOTAL |
|-----|------|-----|-----|-------|-----------|------------|
| MON | 5-12-97 | 8:00A | 5:00P | 09:00 | 1:00 | 08:00 |
| TUES | | | | | | |
| WED | | | | | | |
| THU | | | | | | |
| FRI | | | | | | |
| SAT | | | | | | |
| SUN | | | | | | |

CIRCLE NUMBER OF DAYS OLSTEN EMPLOYEE WORKED  1 2 3 4 5 6 7

TOTAL HOURS

STRAIGHT TIME  8:00 / OVERTIME

▶ EIGHT HOURS

WRITE IN WORDS THE NUMBER OF HOURS WORKED (CLIENT)
I CERTIFY THAT THE ABOVE OLSTEN EMPLOYEE WORKED THE HOURS LISTED ON THIS TIME SHEET AND AGREE TO TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE.

X  _Linda M. Durso_
AUTHORIZED CLIENT SIGNATURE

PRINT NAME  Linda M. Durso
DEPT

CLIENT TITLE  Operation Mgr.  5/13/97
DATE

TELEPHONE NO.  302-732-3433   EXT.

A1

**Left copy:**

nt copy with your supervisor.
ployee copy for your records.

YS

| | | |
|---|---|---|
| LPHIA, PA | 215 . 568 . 6810 | fax 215 . 977 . 0362 |
| ER, PA | 610 . 687 . 6107 | fax 610 . 687 . 9456 |
| TON, DE | 717 . 390 . 0888 | fax 717 . 390 . 2012 |
| HILL, NJ | 302 . 658 . 6181 | fax 302 . 658 . 6244 |
| | 609 . 910 . 1824 | fax 609 . 910 . 1939 |

(PLEASE PRINT)
BNA AMERICA BANK
WILMINGTON, DE- 19884   STATE
S. LINDSEY 4459  Settlement 08 |01/1999

| DATE | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|
| 7 26 99 | 8.00A | 5.00P | (1.00) | 8.00 |
| 7 27 99 | 8.00A | 5.00P | (1.00) | 8.00 |
| 7 28 99 | 8.00A | 4.30P | (0.50) | 8.00 |
| 7 29 99 | 8.00A | 5.00P | (1.00) | 8.00 |
| 7 30 99 | 8.00A | 5.00P | (1.00) | 8.00 |
| 7 31 99 | — | — | ( — ) | — |
| 8 01 99 | — | — | ( — ) | — |

PLEASE WRITE TOTAL HOURS
IN WORDS HERE   FOR  TY   4 0.00  TO THE
HOUR

URS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT:
form by the client constitutes a certification that the TOTAL hours
as stated, that the work was performed in a satisfactory manner,
the Client to the TERMS and CONDITIONS printed on the reverse
PLEASE DO NOT ADVANCE MONIES TO EMPLOYEES.

| RE OF ACCEPTANCE | PLEASE PRINT NAME |
|---|---|
| D SIGNATURE | PLEASE PRINT NAME HERE John OBrien |

| AME (Please Print) | SOCIAL SECURITY NUMBER |
|---|---|
| V. SHAH | |

at the hours shown were worked by me during the week ending
above. I understand I am to contact the office after completing this
termine if there is other work available for me. I agree that if I do not
upon completion of an assignment, they can assume I am not
tand that all unsigned time sheets will be returned to me without a
rations will void this timesheet.
NATURE: X

EMPLOYEE MUST FILL IN BELOW

TURNING          PLEASE NOTE: ALTERATIONS TO THE
IGNMENT          FOLLOWING CANNOT BE HONORED
   No            ☒ MAIL MY CHECK
                 ☐ HOLD MY CHECK IN:
AILABLE
SSIGNMENT
                 (office location)

OFFICE COPY

---

**Right copy:**

4- Keep the employee copy for your records.


ACSYS

| | | |
|---|---|---|
| PHILADELPHIA, PA | 215 . 568 . 6810 | fax 215 . 977 . 0362 |
| WAYNE, PA | 610 . 687 . 6107 | fax 610 . 687 . 9456 |
| LANCASTER, PA | 717 . 390 . 0888 | fax 717 . 390 . 2012 |
| WILMINGTON, DE | 302 . 658 . 6181 | fax 302 . 658 . 6244 |
| CHERRY HILL, NJ | 609 . 910 . 1824 | fax 609 . 910 . 1939 |

COMPANY NAME (PLEASE PRINT)
MBNA AMERICA BANK
ADDRESS      CITY            STATE
             WILMINGTON   DE
REPORT TO:   DEPT.  JOB TITLE  WEEK ENDING SUNDAY
WENDY S. LINDSEY 4459 FINANCIAL ANALYST 11 /14/1999

| DAY | DATE | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|---|
| MONDAY | 11 08 99 | 7.45A | 4.00P | (0.50) | 7.75 |
| TUESDAY | 11 09 99 | 8.05A | 4.30P | (0.50) | 8.00 |
| WEDNESDAY | 11 10 99 | — | — | ( ) | |
| THURSDAY | 11 11 99 | HOLIDAY | | ) | |
| FRIDAY | 11 12 99 | 8.00A | 5.00P | (2.00) | 7.00 |
| SATURDAY | 11 13 99 | — | — | ( — ) | — |
| SUNDAY | 11 14 99 | — | — | ( — ) | — |

CLIENT NOTE   PLEASE WRITE TOTAL HOURS
IN WORDS HERE    TWENTY TOTAL HOURS  22.75 TO THE HOUR

MINIMUM: 4 HOURS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT:
Execution of this form by the client constitutes a certification that the TOTAL hours
listed are correct as stated, that the work was performed in a satisfactory manner,
an            ement by the Client to the TERMS and CONDITIONS printed on the reverse
sk          is form. PLEASE DO NOT ADVANCE MONIES TO EMPLOYEES.

| CLIENT SIGNATURE OF ACCEPTANCE | PLEASE PRINT NAME |
|---|---|
| X AUTHORIZED SIGNATURE | PLEASE PRINT NAME HERE WENDY S. LINDSEY |

| EMPLOYEE NAME (Please Print) | SOCIAL SECURITY NUMBER |
|---|---|
| ASHOK V. SHAH | |

I hereby certify that the hours shown were worked by me during the week ending
shown above, and were properly certified by an authorized representative of this
company named above. I understand I am to contact the office after completing this
assignment, to determine if there is other work available for me. I agree that if I do not
contact the office upon completion of an assignment, they can assume I am not
available. I understand that all unsigned time sheets will be returned to me without a
check and any alterations will void this time sheet.

EMPLOYEE SIGNATURE: X  AShah

EMPLOYEE MUST FILL IN BELOW

ARE YOU RETURNING          PLEASE NOTE: ALTERATIONS TO THE
TO THIS ASSIGNMENT         FOLLOWING CANNOT BE HONORED
☐ Yes  ☐ No               ☐ MAIL MY CHECK
                          ☐ HOLD MY CHECK IN:
I WILL BE AVAILABLE
FOR NEW ASSIGNMENT
ON: 11 /15/1999
                          (office location)

EMPLOYEE COPY

OFFICE COPY

A2

## ACSYS (Form 1 — left/rotated)

PHILADELPHIA, PA
WYNE, PA
LANCASTER, PA
WILMINGTON, DE
CHERRY HILL, NJ

215.568.6810    fax 215.977.0362
610.687.6107    fax 610.687.9456
717.390.0888    fax 717.390.2012
302.658.6181    fax 302.658.6244
609.910.1824    fax 609.910.1939

1- Use a separate time sheet for each assignment and for each week's work.
2- Mail the top three (3) copies to our office each Friday.
3- Leave the client copy with your supervisor.
4- Keep the employee copy for your records.

COMPANY NAME (PLEASE PRINT): MBNA AMERICA BANK
ADDRESS: WILMINGTON DE
REPORT TO: WENDEY SLINDES 74459
WEEK ENDING SUNDAY: 08/29/1999

| DAY | DATE | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|---|
| MONDAY | 08/23/99 | 8:00 | 4:30 | (0:50) | 8:00 |
| TUESDAY | 08/24/99 | 8:15 | 4:50 | (0:50) | 8:00 |
| WEDNESDAY | 08/25/99 | 8:00 | 4:15 | (0:25) | 8:00 |
| THURSDAY | 08/26/99 | 8:05 | 4:35 | (0:50) | 8:00 |
| FRIDAY | 08/27/99 | 8:00 | 4:15 | (0:25) | 8:00 |
| SATURDAY | 08/28/99 | (—) | (—) | (—) | — |
| SUNDAY | 08/29/99 | (—) | (—) | (—) | — |

TOTAL HOURS: 40.00

EMPLOYEE NAME (Please Print): ASHOK V. SHAH

OFFICE COPY

---

## ACSYS (Form 2 — right/rotated)

PHILADELPHIA, PA
WYNE, PA
LANCASTER, PA
WILMINGTON, DE
CHERRY HILL, NJ

215.568.6810    fax 215.977.0362
610.687.6107    fax 610.687.9456
717.390.0888    fax 717.390.2012
302.658.6181    fax 302.658.6244
609.910.1824    fax 609.910.1939

COMPANY NAME (PLEASE PRINT): MBNA AMERICA BANK
ADDRESS:
REPORT TO: WENDEY
WEEK ENDING SUNDAY

| DAY | DATE | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|---|
| MONDAY | 07/26/99 | 8:00 | 4:30 | (1:00) | 8:00 |
| TUESDAY | 07/27/99 | 8:00 | 4:30 | (0:30) | 8:00 |
| WEDNESDAY | 07/28/99 | 8:00 | 5:00 | (1:00) | 8:00 |
| THURSDAY | 07/29/99 | 8:00 | 5:00 | (1:00) | 8:00 |
| FRIDAY | 07/30/99 | 8:00 | 5:00 | (1:00) | 8:00 |
| SATURDAY | 07/31/99 | (—) | (—) | (—) | — |
| SUNDAY | 08/01/99 | (—) | (—) | (—) | — |

TOTAL HOURS: 40.00

EMPLOYEE NAME (Please Print): ASHOK V. SHAH

## Timesheet 1

**OFFICE COPY**

INSTRUCTIONS FOR FILLING OUT TIME SHEET:
1- Use a separate time sheet for each assignment and for each week's work.
2- Mail the top three (3) copies to our office each Friday.
3- Leave the client copy with your supervisor.
4- Keep the employee copy for your records.

**ACSYS**

| | |
|---|---|
| PHILADELPHIA, PA | 215. 977. 0362 |
| WAYNE, PA | 610. 687. 9456 |
| LANCASTER, PA | 717. 390. 2012 |
| WILMINGTON, DE | 302. 658. 6244 |
| CHERRY HILL, NJ | 609. 910. 1939 |
| | fax 215. 568. 6810 |
| | fax 610. 687. 6107 |
| | fax 717. 390. 0888 |
| | fax 302. 658. 6181 |
| | fax 609. 910. 1824 |

COMPANY NAME (PLEASE PRINT): MBNA AMERICA BANK
CITY: WILMINGTON   STATE: DE
ADDRESS:
REPORT TO: WENDSEY S. LINDSEY   DEPT. #459   JOB TITLE:   WEEK ENDING SUNDAY 09/05/99

| DAY | DATE | TIME IN | TIME OUT (LESS LUNCH) | TOTAL HOURS |
|---|---|---|---|---|
| MONDAY | 08/30/99 | 8:00A | 4:35(0.50) | 8.00 |
| TUESDAY | 08/31/99 | 8:00A | 4:15(0.50) | 7.75 |
| WEDNESDAY | 09/01/99 | 8:00A | 5:00(0.50) | 8.50 |
| THURSDAY | 09/02/99 | 8:05A | 5:05(0.50) | 8.50 |
| FRIDAY | 09/03/99 | 9:00A | 4:45(0.50) | 8.25 |
| SATURDAY | 09/04/99 | — | (—) | — |
| SUNDAY | 09/05/99 | — | (—) | — |

TOTAL HOURS: 41.00
ONE HUNDRED PER HOUR

CLIENT NOTE: PLEASE PRINT NAME HERE

CLIENT SIGNATURE OF ACCEPTANCE: X _____ PLEASE PRINT NAME HERE: JERRY CONE

EMPLOYEE NAME (Please Print): ASHOK V. SHAH

SOCIAL SECURITY NUMBER: ___

MINIMUM- 4 HOURS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT: Execution of this form by the client constitutes a certification that the TOTAL hours listed are correct as stated, that the work was performed in a satisfactory manner, and agreement by the Client to the TERMS and CONDITIONS printed on the reverse side of this form. PLEASE DO NOT ADVANCE MONIES TO EMPLOYEE.

I hereby certify that the hours shown were worked by me during the week ending shown above, and were properly certified by an authorized representative of this company named above. I understand I am to contact the office after completing this assignment, to determine if there is other work available. If there is no other work available, I understand that all unsigned time sheets will be returned to me without a check and any alterations will void this time sheet.
EMPLOYEE SIGNATURE: X _____

AREYOU RETURNING TO THIS ASSIGNMENT  ☒ Yes  ☐ No
EMPLOYEE MUST FILL IN BELOW
PLEASE NOTE: ALTERATIONS TO THE FOLLOWING CANNOT BE HONORED
☒ MAIL MY CHECK
☐ HOLD MY CHECK IN:

---

## Timesheet 2

**OFFICE COPY**

INSTRUCTIONS FOR FILLING OUT TIME SHEET:
...a separate time sheet for each assignment and for each week's work.
2- Mail the top three (3) copies to our office each Friday.
3- Leave the client copy with your supervisor.
4- Keep the employee copy for your records.

**ACSYS**

| | |
|---|---|
| PHILADELPHIA, PA | 215. 568. 6810 |
| WAYNE, PA | 610. 687. 6107 |
| LANCASTER, PA | 717. 390. 0888 |
| WILMINGTON DE | 302. 658. 6181 |
| CHERRY HILL, NJ | 609. 910. 1824 |
| | fax 215. 977. 0362 |
| | fax 610. 687. 9456 |
| | fax 717. 390. 2012 |
| | fax 302. 658. 6244 |
| | fax 609. 910. 1939 |

COMPANY NAME (PLEASE PRINT): MBNA AMERICA BANK
CITY: WILMINGTON   STATE: DE
ADDRESS:
REPORT TO: WENDSEY S. LINDSEY   DEPT. #459   JOB TITLE:   WEEK ENDING SUNDAY 09/12/99

| DAY | DATE | TIME IN | TIME OUT (LESS LUNCH) | TOTAL HOURS |
|---|---|---|---|---|
| MONDAY | 09/06/99 | HOLIDAY | (—) | — |
| TUESDAY | 09/07/99 | 8:00A | 6:00(0.50) | 9.50 |
| WEDNESDAY | 09/08/99 | 8:15A | 4:50(1.00) | 7.50 |
| THURSDAY | 09/09/99 | 8:10A | 6:00(1.00) | 8.75 |
| FRIDAY | 09/10/99 | 8:10A | 3:30(1.00) | 6.25 |
| SATURDAY | 09/11/99 | — | (—) | — |
| SUNDAY | 09/12/99 | — | (—) | — |

TOTAL HOURS: 32.00
THIRTY TWO PER HOUR

CLIENT NOTE: PLEASE PRINT NAME HERE

CLIENT SIGNATURE OF ACCEPTANCE: X _____ PLEASE PRINT NAME: Patricia Cole

EMPLOYEE NAME (Please Print): ASHOK V. SHAH

SOCIAL SECURITY NUMBER: ___

MINIMUM- 4 HOURS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT: Execution of this form by the client constitutes a certification that the TOTAL hours listed are correct as stated, that the work was performed in a satisfactory manner, and agreement by the Client to the TERMS and CONDITIONS printed on the reverse side of this form. PLEASE DO NOT ADVANCE MONIES TO EMPLOYEE.

I hereby certify that the hours shown were worked by me during the week ending shown above, and were properly certified by an authorized representative of this company named above. I understand I am to contact the office after completing this assignment, to determine if there is other work available. If there is no other work available, I understand that all unsigned time sheets will be returned to me without a check and any alterations will void this time sheet.
EMPLOYEE SIGNATURE: X _____

AREYOU RETURNING TO THIS ASSIGNMENT  ☒ Yes  ☐ No
EMPLOYEE MUST FILL IN BELOW
PLEASE NOTE: ALTERATIONS TO THE FOLLOWING CANNOT BE HONORED
☒ MAIL MY CHECK
☐ HOLD MY CHECK IN:

A4

**Left form:**

the client copy with your supervisor.
he employee copy for your records.

**ACSYS**

| | | |
|---|---|---|
| HILADELPHIA, PA | 215.568.6810 | fax 215.977.0362 |
| YNE, PA | 610.687.6107 | fax 610.687.9456 |
| LANCASTER, PA | 717.390.0888 | fax 717.390.2012 |
| LMINGTON, DE | 302.658.6181 | fax 302.658.6244 |
| ERRY HILL, NJ | 609.910.1824 | fax 609.910.1939 |

Y NAME (PLEASE PRINT) MBNA AMERICA BANK

CITY WILMINGTON DE   STATE

TO: Y S. LINDSEY 4459 DEPT. JOB TITLE FINANCIAL ANALYST   WEEK ENDING SUNDAY 10/03/1999

| DATE | | | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|---|---|
| 09 | 27 | 99 | 11.15A | 4.15P | (—) | 5.00 |
| 09 | 28 | 99 | 8.10A | 5.45P | (0.50) | 9.00 |
| 09 | 29 | 99 | 8.05A | 5.45P | (0.50) | 9.25 |
| 09 | 30 | 99 | 8.00A | 5.45P | (0.50) | 9.25 |
| 10 | 01 | 99 | 8.00A | 5.30P | (2.00) | 7.50 |
| 10 | 02 | 99 | 7.50A | 1.20P | (—) | 4.50 |
| 10 | 03 | 99 | | | (—) | |

NT ➤ PLEASE WRITE TOTAL HOURS IN WORDS HERE FORTY HOURS   TOTAL HOURS TO THE NEAREST HALF HOUR 40.00

UM: 4 HOURS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT: on of this form by the client constitutes a certification that the TOTAL hours re correct as stated, that the work was performed in a satisfactory manner, rement by the Client to the TERMS and CONDITIONS printed on the reverse is form. PLEASE DO NOT ADVANCE MONIES TO EMPLOYEES.

SIGNATURE OF ACCEPTANCE | PLEASE PRINT NAME

WTHORIZED SIGNATURE | PLEASE PRINT NAME HERE WENDY S. LINDSEY

PLOYEE Name (Please Print) | SOCIAL SECURITY NUMBER
HOK V. SHAH

y certify that the hours shown were worked by me during the week ending above, and were properly certified by an authorized representative of this ny named above. I understand I am to contact the office after completing this ment, to determine if there is other work available for me. I agree that if I do not t the office upon completion of an assignment, they can assume I am not le. I understand that all unsigned time sheets will be returned to me without a and any alterations will void this time sheet.

LOYEE SIGNATURE: X

EMPLOYEE MUST FILL IN BELOW
ARE YOU RETURNING TO THIS ASSIGNMENT   ☐ Yes  ☐ No
PLEASE NOTE: ALTERATIONS TO THE FOLLOWING CANNOT BE HONORED
☐ MAIL MY CHECK IN
☒ HOLD MY CHECK IN: WILMINGTON, DE
WILL BE AVAILABLE OR NEW ASSIGNMENT ON: / /

EMPLOYEE COPY

**Right form:**

2- Mail the top three (3) copies to our office each Friday.
3- Leave the client copy with your supervisor.
4- Keep the employee copy for your records.

**ACSYS**

| | | |
|---|---|---|
| HILADELPHIA, PA | 215.568.6810 | fax 215.977.0362 |
| WAYNE, PA | 610.687.6107 | fax 610.687.9456 |
| LANCASTER, PA | 717.390.0888 | fax 717.390.2012 |
| WILMINGTON, DE | 302.658.6181 | fax 302.658.6244 |
| CHERRY HILL, NJ | 609.910.1824 | fax 609.910.1939 |

COMPANY NAME (PLEASE PRINT) MBNA AMERICA BANK

ADDRESS   CITY WILMINGTON DE   STATE

REPORT TO: WENDY LINDSEY 4459 DEPT. JOB TITLE FINANCIAL ANALYST   WEEK ENDING SUNDAY 09/26/1999

| DAY | DATE | | | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|---|---|---|
| MONDAY | 09 | 20 | 99 | 8.05A | 5.35P | (0.50) | 9.00 |
| TUESDAY | 09 | 21 | 99 | 2.00P | 6.05P | (—) | 4.00 |
| WEDNESDAY | 09 | 22 | 99 | 8.00A | 5.35P | (0.50) | 9.00 |
| THURSDAY | 09 | 23 | 99 | 8.05A | 5.35P | (0.50) | 9.00 |
| FRIDAY | 09 | 24 | 99 | 8.10A | 5.40P | (0.50) | 9.00 |
| SATURDAY | 09 | 25 | 99 | 7.35A | 12.05P | | 4.50 |
| SUNDAY | 09 | 26 | 99 | | | (—) | |

CLIENT NOTE ➤ PLEASE WRITE TOTAL HOURS IN WORDS HERE Four & half (44.50)   TOTAL HOURS TO THE NEAREST HALF HOUR 44.50

MINIMUM: 4 HOURS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT: Execution of this form by the client constitutes a certification that the TOTAL hours listed are correct as stated, that the work was performed in a satisfactory manner, an...eement by the Client to the TERMS and CONDITIONS printed on the reverse si...his form. PLEASE DO NOT ADVANCE MONIES TO EMPLOYEES.

CLIENT SIGNATURE OF ACCEPTANCE | PLEASE PRINT NAME

X AUTHORIZED SIGNATURE | PLEASE PRINT NAME HERE WENDY S. LINDSEY

EMPLOYEE NAME (Please Print) | SOCIAL SECURITY NUMBER
Ashok V. SHAH

I hereby certify that the hours shown were worked by me during the week ending shown above, and were properly certified by an authorized representative of this company named above. I understand I am to contact the office after completing this assignment, to determine if there is other work available for me. I agree that if I do not contact the office upon completion of an assignment, they can assume I am not available. I understand that all unsigned time sheets will be returned to me without a check and any alterations will void this time sheet.

EMPLOYEE SIGNATURE: X

EMPLOYEE MUST FILL IN BELOW
ARE YOU RETURNING TO THIS ASSIGNMENT   ☒ Yes  ☐ No
PLEASE NOTE: ALTERATIONS TO THE FOLLOWING CANNOT BE HONORED
☐ MAIL MY CHECK IN
☒ HOLD MY CHECK IN: WILMINGTON
I WILL BE AVAILABLE FOR NEW ASSIGNMENT ON: / /

EMPLOYEE COPY

A5

the employee copy for your records.



**ACSYS**

| | | |
|---|---|---|
| PHILADELPHIA, PA | 215 . 568 . 6810 | fax 215 . 977 . 0362 |
| WAYNE, PA | 610 . 687 . 6107 | fax 610 . 687 . 9456 |
| LANCASTER, PA | 717 . 390 . 0888 | fax 717 . 390 . 2012 |
| WILMINGTON, DE | 302 . 658 . 6181 | fax 302 . 658 . 6244 |
| CHERRY HILL, NJ | 609 . 910 . 1824 | fax 609 . 910 . 1939 |

COMPANY NAME (PLEASE PRINT)  MBNA AMERICA BANK

ADDRESS  WILMINGTON  CITY  DE  STATE

REPORT TO:  WENDY LINDLEY  DEPT. 44591  JOB TITLE FINANCIAL ANALYST  WEEK ENDING SUNDAY 10/10/1999

| DAY | DATE | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|---|
| MONDAY | 10 04 99 | 8.15A | 4.45P | (0.50) | 8.00 |
| TUESDAY | 10 05 99 | 8.05A | 5.30P | (0.50) | 9.00 |
| WEDNESDAY | 10 06 99 | 9.40A | 5.40P | (0.50) | 7.50 |
| THURSDAY | 10 07 99 | 8.15A | 5.45P | (0.50) | 9.00 |
| FRIDAY | 10 08 99 | 10.00A | 5.00P | (0.50) | 6.50 |
| SATURDAY | 10 09 99 | | | (—) | |
| SUNDAY | 10 10 99 | | | (—) | |

CLIENT NOTE  PLEASE WRITE TOTAL HOURS IN WORDS HERE.  FORTY HOURS

TOTAL HOURS TO THE NEAREST 1/8 HOUR  40.00

**MINIMUM: 4 HOURS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT:** Execution of this form by the client constitutes a certification that the TOTAL hours listed are correct as stated, that the work was performed in a satisfactory manner, and agreement by the Client to the TERMS and CONDITIONS printed on the reverse side of this form. PLEASE DO NOT ADVANCE MONIES TO EMPLOYEES.

CLIENT SIGNATURE OF ACCEPTANCE    PLEASE PRINT NAME

X _____  Wendy S. Lindley
AUTHORIZED SIGNATURE    PLEASE PRINT NAME HERE

EMPLOYEE NAME (Please Print)    SOCIAL SECURITY NUMBER
ASHOK V. SHAH

I hereby certify that the hours shown were worked by me during the week ending shown above, and were properly certified by an authorized representative of this company named above. I understand I am to contact the office after completing the assignment, to determine if there is other work available for me. I agree that if I do not contact the office upon completion of an assignment, they can assume I am not available. I understand that all unsigned time sheets will be returned to me without a check and any alterations will void this time sheet.

EMPLOYEE SIGNATURE: X _____

**EMPLOYEE MUST FILL IN BELOW**

ARE YOU RETURNING TO THIS ASSIGNMENT  ☐ Yes  ☐ No

PLEASE NOTE: ALTERATIONS TO THE FOLLOWING CANNOT BE HONORED  ☐ MAIL MY CHECK  ☒ HOLD MY CHECK IN:

I WILL BE AVAILABLE FOR NEW ASSIGNMENT ON:  / /

WILMINGTON, DE
(office location)

OFFICE COPY

EMPLOYEE COPY

---

| | | |
|---|---|---|
| PHILADELPHIA, PA | 215 . 568 . 6810 | fax 215 . 977 . 0362 |
| WAYNE, PA | 610 . 687 . 6107 | fax 610 . 687 . 9456 |
| LANCASTER, PA | 717 . 390 . 0888 | fax 717 . 390 . 2012 |
| WILMINGTON, DE | 302 . 658 . 6181 | fax 302 . 658 . 6244 |
| CHERRY HILL, NJ | 609 . 910 . 1824 | fax 609 . 910 . 1939 |

COMPANY NAME (PLEASE PRINT)  MBNA AMERICA BA

ADDRESS  CITY  STATE  DE 19884

REPORT TO:  WENDY  DEPT. 44591  JOB TITLE  WEEK ENDING SUNDAY 07/25/1999

| DAY | DATE | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|---|
| MONDAY | 07 19 1999 | 8.00A | 5.00P | (1.0) | 8.0 |
| TUESDAY | 07 20 1999 | 8.10A | 5.00P | (.75) | 8.0 |
| WEDNESDAY | 07 21 1999 | 8.00A | 5.00P | (1.0) | 8.0 |
| THURSDAY | 07 22 1999 | 8.00A | 5.00P | (1.0) | 8.0 |
| FRIDAY | 07 23 1999 | 8.00A | 4.00P | (.50) | 7.5 |
| SATURDAY | 07 24 1999 | — | — | (—) | |
| SUNDAY | 07 25 1999 | — | — | (—) | |

CLIENT NOTE  PLEASE WRITE TOTAL HOURS IN WORDS HERE.

TOTAL HOURS TO THE NEAREST 1/8 HOUR

**MINIMUM: 4 HOURS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT:** Execution of this form by the client constitutes a certification that the TOTAL hours listed are correct as stated, that the work was performed in a satisfactory manner, and agreement by the Client to the TERMS and CONDITIONS printed on the reverse side of this form. PLEASE DO NOT ADVANCE MONIES TO EMPLOYEES.

CLIENT SIGNATURE OF ACCEPTANCE    PLEASE PRINT NAME

X _____
AUTHORIZED SIGNATURE    PLEASE PRINT NAME HERE  John O'Michi

EMPLOYEE NAME (Please Print)    SOCIAL SECURITY NUMBER
ASHOK V. SHAH

I hereby certify that the hours shown were worked by me during the week ending shown above, and were properly certified by an authorized representative of this company named above. I understand I am to contact the office after completing the assignment, to determine if there is other work available for me. I agree that if I do not contact the office upon completion of an assignment, they can assume I am not available. I understand that all unsigned time sheets will be returned to me without a check and any alterations will void this time sheet.

EMPLOYEE SIGNATURE: X _____

**EMPLOYEE MUST FILL IN BELOW**

ARE YOU RETURNING TO THIS ASSIGNMENT  ☐ Yes  ☐ No

PLEASE NOTE: ALTERATIONS TO THE FOLLOWING CANNOT BE HONORED  ☐ MAIL MY CHECK  ☐ HOLD MY CHECK IN:

I WILL BE AVAILABLE FOR NEW ASSIGNMENT ON:  / /

(office location)

EMPLOYEE COPY

A6

## Left copy

...nt copy with your supervisor.
...ployee copy for your records.

YS

| | | |
|---|---|---|
| ...LPHIA, PA | 215.568.6810 | fax 215.977.0362 |
| ...A | 610.687.6107 | fax 610.687.9456 |
| ...TER, PA | 717.390.0888 | fax 717.390.2012 |
| ...GTON, DE | 302.658.6181 | fax 302.658.6244 |
| HILL, NJ | 609.910.1824 | fax 609.910.1939 |

**E (PLEASE PRINT)**
MBNA AMERICA BANK

| CITY | STATE |
|---|---|
| WILMINGTON | DE |

...LINDSEY | 4459 | DEPT. | JOB TITLE PT FINANCIAL ANALYST | WEEK ENDING SUNDAY 10/24/1999

| | | | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|---|---|
| 10 | 18 | 99 | 8:15A | 5:30P | (0.50) | 8.75 |
| 10 | 19 | 99 | 10:30A | 5:15P | (0.50) | 6.25 |
| 10 | 20 | 99 | 8:10A | 4:55P | (0.50) | 8.25 |
| 10 | 21 | 99 | 8:00A | 5:25P | (0.50) | 9.00 |
| 10 | 22 | 99 | 8:00A | 5:15P | (1.50) | 7.75 |
| 10 | 23 | 99 | — | — | (—) | — |
| 10 | 24 | 99 | — | — | (—) | — |

PLEASE WRITE TOTAL HOURS
▶ FORTY IN WORDS HERE   4HOURS  TOTAL HOURS 40.00

**HOURS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT:**
...his form by the client constitutes a certification that the TOTAL hours
...ct as stated, that the work was performed in a satisfactory manner,
...t by the Client to the TERMS and CONDITIONS printed on the reverse
...n. PLEASE DO NOT ADVANCE MONIES TO EMPLOYEES.

| ...NATURE OF ACCEPTANCE | PLEASE PRINT NAME |
|---|---|
| ...ZED SIGNATURE | JOHN OSRICH |

| ...K Y. SHAH. | SOCIAL SECURITY NUMBER |
|---|---|

...y that the hours shown were worked by me during the week ending
..., and were properly certified by an authorized representative of this
...ned above. I understand I am to contact the office after completing the
...o determine if there is other work available for me. I agree that if I do not
...ffice upon completion of an assignment, they can assume I am not
...derstand that all unsigned time sheets will be returned to me without a
...y alterations will void this time sheet.

SIGNATURE: X _AB Shah_

**EMPLOYEE MUST FILL IN BELOW**
...U RETURNING | PLEASE NOTE: ALTERATIONS TO THE
...ASSIGNMENT | FOLLOWING CANNOT BE HONORED
... No | ☐ MAIL MY CHECK
| ☐ HOLD MY CHECK IN:
...E AVAILABLE | X
...W ASSIGNMENT | _WILMINGTON, DE_
| (office location)

EMPLOYEE COPY

## Right copy

...4- Leave the client copy with your supervisor.
4- Keep the employee copy for your records.

 ACSYS

| | | |
|---|---|---|
| PHILADELPHIA, PA | 215.568.6810 | fax 215.977.0362 |
| ...JAYNE, PA | 610.687.6107 | fax 610.687.9456 |
| LANCASTER, PA | 717.390.0888 | fax 717.390.2012 |
| WILMINGTON, DE | 302.658.6181 | fax 302.658.6244 |
| CHERRY HILL, NJ | 609.910.1824 | fax 609.910.1939 |

**COMPANY NAME (PLEASE PRINT)**
MBNA AMERICA BANK

**ADDRESS**

| CITY | STATE |
|---|---|
| WILMINGTON, DE | |

**REPORT TO** WENDY LINDSEY | DEPT. | JOB TITLE PT FINANCIAL ANALYST | WEEK ENDING SUNDAY 10/17/1999

| DAY | | DATE | | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|---|---|---|
| MONDAY | 10 | 11 | 99 | HOLIDAY | (—) | — |
| TUESDAY | 10 | 12 | 99 | 8:10A | 6:00P | (1.75) | 8.00 |
| WEDNESDAY | 10 | 13 | 99 | 8:00A | 5:30P | (0.50) | 9.00 |
| THURSDAY | 10 | 14 | 99 | 8:15A | 5:25P | (1.25) | 8.00 |
| FRIDAY | 10 | 15 | 99 | 8:35A | 5:00P | (1.50) | 7.00 |
| SATURDAY | 10 | 16 | 99 | — | — | (—) | — |
| SUNDAY | 10 | 17 | 99 | — | — | (—) | — |

| CLIENT NOTE | PLEASE WRITE TOTAL HOURS IN WORDS HERE THIRTY TWO | TOTAL HOURS 32.00 |
|---|---|---|

**MINIMUM: 4 HOURS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT:**
Execution of this form by the client constitutes a certification that the TOTAL hours
listed are correct as stated, that the work was performed in a satisfactory manner,
and... eement by the Client to the TERMS and CONDITIONS printed on the reverse
s... form. PLEASE DO NOT ADVANCE MONIES TO EMPLOYEES.

| CLIENT SIGNATURE OF ACCEPTANCE | PLEASE PRINT NAME |
|---|---|
| X AUTHORIZED SIGNATURE | WENDY LINDSEY |

| EMPLOYEE NAME (Please Print) | SOCIAL SECURITY NUMBER |
|---|---|
| ASHOK V. SHAH | |

I hereby certify that the hours shown were worked by me during the week
shown above, and were properly certified by an authorized representative of this
company named above. I understand I am to contact the office after completing the
assignment, to determine if there is other work available for me. I agree that if I do not
contact the office upon completion of an assignment, they can assume I am not
available. I understand that all unsigned time sheets will be returned to me without a
check and any alterations will void this time sheet.

EMPLOYEE SIGNATURE: X _AB Shah_

**EMPLOYEE MUST FILL IN BELOW**
ARE YOU RETURNING | PLEASE NOTE: ALTERATIONS TO THE
TO THIS ASSIGNMENT | FOLLOWING CANNOT BE HONORED
X Yes ☐ No | ☐ MAIL MY CHECK
| ☐ HOLD MY CHECK IN:
I WILL BE AVAILABLE | X
FOR NEW ASSIGNMENT | _WILMINGTON, DE_
ON: / / | (office location)

EMPLOYEE COPY

A7

3- Leave the client copy with your supervisor.
4- Keep the employee copy for your records.



## ACSYS

| | | |
|---|---|---|
| PHILADELPHIA, PA | 215 . 568 . 6810 | fax 215 . 977 . 0362 |
| WAYNE, PA | 610 . 687 . 6107 | fax 610 . 687 . 9456 |
| LANCASTER, PA | 717 . 390 . 0888 | fax 717 . 390 . 2012 |
| WILMINGTON, DE | 302 . 658 . 6181 | fax 302 . 658 . 6244 |
| CHERRY HILL, NJ | 609 . 910 . 1824 | fax 609 . 910 . 1939 |

**COMPANY NAME (PLEASE PRINT)** MBNA AMERICA BANK

**ADDRESS** WILMINGTON    **CITY**    **STATE** DE

**REPORT TO:** WENDY S. LINDSEY   **DEPT.** 4-459 **JOB TITLE** AS FINANCIAL ANALYST   **WEEK ENDING SUNDAY** 11/07/99

| DAY | DATE | | | TIME IN | TIME OUT | LESS LUNCH | TOTAL HOURS |
|---|---|---|---|---|---|---|---|
| MONDAY | 11 | 01 | 99 | 7.55A | 5.05P | (0.50) | 8.75 |
| TUESDAY | 11 | 02 | 99 | 8.00A | 4.30P | (0.50) | 8.00 |
| WEDNESDAY | 11 | 03 | 99 | 8.05A | 5.00P | (0.50) | 8.50 |
| THURSDAY | 11 | 04 | 99 | 8.00A | 5.10P | (0.50) | 8.75 |
| FRIDAY | 11 | 05 | 99 | 8.00A | 2.00P | (—) | 6.00 |
| SATURDAY | 11 | 06 | 99 | — | — | (—) | — |
| SUNDAY | 11 | 07 | 99 | — | — | (—) | — |

**CLIENT NOTE** ► WRITE TOTAL HOURS IN WORDS HERE. FORTY TOTAL HOURS 40.00 ◄ ROUND TO THE NEAREST 1/4 HOUR

**MINIMUM: 4 HOURS PER EMPLOYEE PER DAY - IMPORTANT FOR CLIENT:**
Execution of this form by the client constitutes a certification that the TOTAL hours listed are correct as stated, that the work was performed in a satisfactory manner, and [agreem]ent by the Client to the TERMS and CONDITIONS printed on the reverse si[de of th]is form. PLEASE DO NOT ADVANCE MONIES TO EMPLOYEES.

**CLIENT SIGNATURE OF ACCEPTANCE**    **PLEASE PRINT NAME**

X **AUTHORIZED SIGNATURE** [signature]    **PLEASE PRINT NAME HERE** John O'Salbn

**EMPLOYEE NAME (Please Print)** ASHOK Y. SHAH    **SOCIAL SECURITY NUMBER** [redacted]

I hereby certify that the hours shown were worked by me during the week ending shown above, and were properly certified by an authorized representative of this company named above. I understand I am to contact the office after completing the assignment, to determine if there is other work available for me. I agree that if I do not contact the office upon completion of an assignment, they can assume I am not available. I understand that all unsigned time sheets will be returned to me without a check and any alterations will void this time sheet.

**EMPLOYEE SIGNATURE: X** [signature]

**EMPLOYEE MUST FILL IN BELOW**

**ARE YOU RETURNING TO THIS ASSIGNMENT**
☐ Yes  ☐ No

**I WILL BE AVAILABLE FOR NEW ASSIGNMENT ON:** / /

**PLEASE NOTE: ALTERATIONS TO THE FOLLOWING CANNOT BE HONORED**
☐ MAIL MY CHECK
☒ HOLD MY CHECK IN: WILMINGTON, DE
(office location)

OFFICE COPY

**EMPLOYEE COPY**

A8

10/14/99

Dear Ashok,

I have very strong feelings for you. This is why I do not want to lose you. It does bother me that your assignment is coming to an end. I do not like short-termed relationships. I prefer long-termed especially with you. You are my light. I have never experienced the "energy" that there is between us. It must be something special. Do you know what it means to become as one? There are not many people who experienced it even though they are together. If two people really love each other, they can feel what the other is feeling and what the other thinks. Yes, I am a very emotional person but women usually are. Please don't think that you have done something to upset me when I'm not having a good day.

You have encouraged me to go to college. I'm grateful for that. I will do my best.

It is getting late. I just wanted you to know some of my thoughts. I will miss you when your assignment ends but we will continue to see each other. Remember this "Ich liebe dich"!

Greatest Affection,
Nancy

A9

```
From: Nancy Pingitore <pingita@erols.com>
To: sashokv@juno.com
Date: Sun, 25 Jun 2000 06:18:15 -0400
Subject: Testing E-mail
Message-ID: <3955DC66.2B30AA16@erols.com>
Received: from mx1.boston.juno.com (mx1.boston.juno.com [63.211.172.33])
        by m28.boston.juno.com with SMTP id AAA6XMZJLAPMVKHS
        for <sashokv@juno.com> (sender <pingita@erols.com>);
        Sun, 25 Jun 2000 06:20:58 -0400 (EST)
Received: from smtp01.mrf.mail.rcn.net (smtp01.mrf.mail.rcn.net [207.172.4.60])
        by mx1.boston.juno.com with SMTP id AAA6XMZJLANR9BL2
        for <sashokv@juno.com> (sender <pingita@erols.com>);
        Sun, 25 Jun 2000 06:20:58 -0400 (EST)
Received: from 209-122-217-46.s46.tnt1.atn.pa.dialup.rcn.com ([209.122.217.46]
        helo=erols.com)
        by smtp01.mrf.mail.rcn.net with esmtp (Exim 2.12 #3)
        id 1369X4-0006yx-00
        for sashokv@juno.com; Sun, 25 Jun 2000 06:20:54 -0400
X-Mailer: Mozilla 4.72 [en] (Win95; U)
MIME-Version: 1.0
Content-Type: text/plain; charset=us-ascii
Content-Transfer-Encoding: 7bit
X-Status: Replied
X-Juno-Att: 0
Return-Path: <pingita@erols.com>
X-Accept-Language: en
```

I hope this e-mail reaches you.  If you do get this e-mail, send a reply
to me.

Have a nice day!

Nancy

# LIBERTY TRAVEL

## CREDIT CARD FINAL PAYMENT RECEIPT

LIBERTY TRAVEL
604 CHRISTIANA MALL
NEWARK, DE 19702
Tel: 302-366-1500

Receipt Date: 08/10/00
Receipt Time: 12:41:44

Departure Date: 08/18/00    Final Payment Date: 08/10/00    Batch #:126386

File #  2051805502    Name: SHAH ASHOK

MASTERCARD

Card #

Charge Amount:  1018.00    Approval Code: 987549

Expire Date: 01/01

Travel Protection NOT INCLUDED with this payment

Description: CANADA

Signature:                                                              NR

Cancellation/Revision Penalties

LIBERTY TRAVEL : Charge per person once trip is confirmed, TRAVEL PROTECTION is
50.00 . Charge per person once trip is confirmed,
HOTELS : Charge if cancelled/revised .            non-refundable
. Days . Charge if cancelled/revised .    Days or less prior to arrival at hotel
TOUR OPERATORS / STEAMSHIP COMPANIES .     Days or less prior to arrival at hotel
. Charge per person once trip is confirmed, plus
. Charge per person if cancelled . Days or less prior to departure
. Charge per person if cancelled . Days or less prior to departure
AIRLINES : Charge once ticket is issued, plus
. Charge if cancelled . Days or less prior to departure

A11

# Citibank Platinum Select
### With NO ANNUAL FEE

Account Number

Payment must be received by 1:00 pm local time on 09/22/2000

| Statement/Closing Date | Total Credit Line | Cash Advance Limit | New Balance | Available Credit Line | Available Cash Line |
|---|---|---|---|---|---|
| 08/29/2000 | $5800 | $1500 | $1511.64 | $4288 | $1500 |

BOX 6500
SIOUX FALLS, SD
57117

*To report billing errors, or to lose a dispute of billing will not preserve your rights*

| Date | Reference | Description | | Location | | Amount |
|---|---|---|---|---|---|---|
| 7/28 | 42672362 | PAYMENT THANK YOU | | | | -1,627.89 |
| 7/29 | JRNRVV31 | BJ'S WHOLESALE $15 WOX | | NEW CASTLE | DE | 9.49 |
| 7/28 | L79YY8LF | WAWA #840 | | WILMINGTON | DE | 6.23 |
| 7/29 | CM0*02N8 | GENUARDI'S #40 | S3P | WILMINGTON | DE | 14.08 |
| 7/31 | WMZM2QLF | WAWA #840 | | NEW CASTLE | DE | 6.31 |
| 8/01 | 7KYNNV31 | BJ'S WHOLESALE $15 WOX | | NEW CASTLE | DE | 6.89 |
| 8/01 | 2CQPN1N8 | GENUARDI'S $40 | S3P | WILMINGTON | DE | 15.14 |
| 8/02 | F9011001 | JCP HOSP INS AUG | 888-527-6808 | | DE | 8.95 |
| 8/03 | HPP*XYLF | WAWA #840 | | NEW CASTLE | DE | 9.62 |
| 8/03 | 4N6H4PGW | RICHMAN'S RESTAURANT | | PENNSGROVE | NJ | 9.68 |
| 8/05 | XOXNN1N8 | GENUARDI'S | S3P | WILMINGTON | DE | 12.64 |
| 8/05 | LM0PZTCS | KMART | | CLAYMONT | DE | 26.48 |
| 8/07 | 8XTNFGLF | WAWA #840 | 00007110 | NEW CASTLE | DE | 27.25 |
| 8/10 | D1QWP5BF | LIBERTY TRVL SALES HDQ | 201-9343879 | | NJ | 1,018.00 |
| 8/10 | M99X02N8 | GENUARDI'S | S3P | NEW CASTLE | DE | 16.24 |
| 8/11 | 24ZTV9LF | WAWA #840 | | WILMINGTON | DE | 8.00 |
| 8/12 | MP286DB3 | BORDERS BOOKS & MUSIC1 | | NEW CASTLE | DE | 83.95 |
| 8/14 | 5K3LCHLF | WAWA #840 | | NEW CASTLE | DE | 13.71 |
| 8/17 | XKBPD3F0 | BOSCOV DEPARTMENT STOR | | WILMINGTON | DE | 29.99 |
| 8/17 | H64V3LLF | WAWA #840 | | NEW CASTLE | DE | 5.01 |
| 8/19 | R4SYPKHP | AERO CAR GIFT SHOP 93.14 | | NIAGARA FAL | CAN | |
| | | CANADIAN DOLLAR = | | | | 65.12 |
| 8/20 | 9D2NHKHP | ZELLERS NIAGARA SQUARE 51.72 | | NIAGARA FALLS | CAN | |
| | | CANADIAN DOLLAR = | | | | 36.16 |
| 8/20 | YVJ2SKHP | POLO RALPH LAUREN FACT 97.73 | | NIAGARA FALLS | CAN | |
| | | CANADIAN DOLLAR = | | | | 68.34 |
| 8/22 | 7L9HNLLF | WAWA #840 | | WILMINGTON | DE | 4.75 |
| 8/23 | FTGNN1N8 | GENUARDI'S $40 | S3P | WILMINGTON | DE | 15.73 |
| 8/24 | GK3H4PGW | RICHMAN'S RESTAURANT | | PLLESGROVE | NJ | 8.98 |

*(handwritten note: Reimbursed by ck #1525 — arrow pointing to 8/10 LIBERTY TRVL SALES line)*

## Account Summary

| | Previous Balance | (+)Purchases & Advances | (+)Payments | (-)Credits | (+)Finance Charge | (+)Late Charges | (=)New Balance |
|---|---|---|---|---|---|---|---|
| Purchases | 1627.89 | 1511.64 | 1627.89 | 1627.89 | | | 1511.64 |
| Advances | | | | | | | |
| Total | 1627.89 | 1511.64 | 1627.89 | 1627.89 | | | 1511.64 |

| | |
|---|---|
| Purchases Minimum Due | 31.00 |
| Advances Minimum Due | |
| Amount Over Credit Line | |
| Fees | |
| Past Due | |
| Minimum Amount Due | 31.00 |

## Rate Summary
Number of days this Billing Period 32

| | Purchases | Advances |
|---|---|---|
| Calculation Method | Daily | Daily |
| Periodic Rate | .04630% | .05476% |
| Nominal Annual Percentage Rate | 16.900% | 19.990% |
| Annual Percentage Rate | 16.900% | 19.990% |
| Balance Subject to Finance Charge | | |

SEND PAYMENTS TO: CITIBANK P.O. BOX 8119 S HACKENSACK, NJ 07606-8119
PLEASE FOLLOW PAYME' 'STRUCTIONS ON REVERSE SIDE.

Make check or money c_ .. payable in U.S. dollars on a U.S. bank to Citibank. Include account number on check or money ...t. No cash please.

119S12S



Ashok

| | | |
|---|---|---|
| 6/11/00 | #1505 | $1,000.00 |
| 6/25/00 | #1512 | $2,000.00 |
| 7/8/00 | #1513 | $3,000.00 |
| 7/28/00 | #1522 | $3,500.00 |
| | Financial Gift | |
| 12/8/00 | #1604 | $500.00 |
| | Christmas Gift | |
| 4/14/01 | #1569 | $1,000.00 |
| 4/23/01 | #1575 | $4,000.00 |
| | Financial Gift | |

Nancy

A14

 

Ashok Shah
PO Box 1185
New Castle DE 19720

19720+7185

A15

Dear Rakesh,

Happy Birthday! This Check
#1646 dated 8/5/01 for $1,000.00
is a gift.

Love,
Mommy

A16




Ashok Shah
PO Box 1182
New Castle, DE 19720

A17



Ashok Shah
PO Box 1182
New Castle, DE 19720

A18

10/10/01 @ 1130

VIA ROB YSAIS THRU LEE ALLISON
WENDY LINDSEY X 70315
CAROL SELDOMRIDGE 68835
COLE HSE. 1ST FLOOR — FINANCIAL OPS.
NANCY PINGITORE X - 70897

H/ADD ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   PHONE! ▮▮▮▮▮▮
                          HUSBAND! ▮▮▮▮▮

                                    BRN. EYES
        5'11"   195 LBS      S+P HAIR   GLASSES
SUSPECT: ASHOK SHAH   8-8-54   INDIAN (HINDU)
        400 FOULK RD.   WILM. DE    MOUSTACHE
                                    ACCENT
WORK:   UNEMPLOYED TEMP - ACCT.
M/V:    94   MAXIMA NISSAN > Z37998 DE-GRN (DK)
        4 DR.

MET HIM 2 YRS AGO @ MBNA DURING ANC
CONVERSION.   FRIENDS @ WORK, SPOUSES AWARE
HUSBAND TERMED RELATIONSHIP.
SHAH'S HAD FINANCIAL PROBLEMS - ASKED
FOR LOAN $17,000. UP TO THIS POINT
ASKED FOR 2 TO 3000 MORE. NO
MONEY OUT OF HER CHECKING ACCT. ONLY.
NO PAI BACK, NO PROOF OF X-PENSES
WSFS - MONEY ALL SAVED - NO ACCESS
    AROUND)  8/2000 - THINGS CHANGED -

CALLING HOUSE REPEATEDLY - CELL PHONE, OUTSIDE LINES
(HARASSING)

NO MORE MONEY/

A19

. NO HISTORY OF VIOLENCE, VERBAL/PHYSICAL
. KNOWS WORK LOCATION
. WOULD NOT CAUSE PROBLEMS @ WORK

. CELL PHONE: YES
. WORK  7×4      M-FRI
. ESCORTS/PARKING/VIDEO/CALL TRACE

. GOOD EMPLOYEE, NO ISSUES
. BETSY SULLIVAN   1300    10/10/01

A20



# INCIDENT REPORT

Page __1__ of __1__

| Center:    Crozier  Center | Report Number:    CRC 01-193 |
|---|---|
| Type of Incident:    Miscellaneous / Nuisance telephone call | |
| Day/Date of Incident:    Wednesday, 10-10-01 | Time of Incident:    10:45 HRS |
| Location of Incident:    Financial Operations, 1st floor Cole House | |

| ☒ MBNA People Name | Department | Extension | Manager's Name |
|---|---|---|---|
| WENDY LINDSEY | FINANCIAL OPERATIONS | 70315 | RANDY BLACK |
| NANCY PINGITORE | FINANCIAL OPERATIONS | 70897 | WENDY LINDSEY |
| LEE ALLISON | SECURITY | 35810 | RICH DAVOLOS |
| | | | |

### NOTIFICATION(S)

Name:  Rob Ysais          Time:  1050 hrs    Name: _____    Time: _____

Name:  Ed Disabitino      Time:  1100 hrs    Name: _____    Time: _____

**AED Pack Used:          Yes ☐   No ☒

| ☒ NON-MBNA People Name | Address/Company | Work # | Home # |
|---|---|---|---|
| ASHOK SHAH | 400 FULK ROAD, WILM., DE. | N/A | 302-655-2097 |
| | | | |

**Details of Incident (Attach statement forms or additional sheets, if applicable):**

At the above date and time this writer received a call from Wendy Lindsey manager of Nancy Pingitore. Wendy informed me that Nancy has been receiving annoying telephone calls at her residence and is now receiving them at her desk. The calls received are believed to be from a male acquaintance, Ashok Shah and have not been in anyway delivered in a threatening manner. This writer contacted Rob Ysais of the incident. Rob Ysais informed Ed Disabitino of the T.M.T. group, which will be following up with this incident.

| Follow up:  ☒ Yes  ☐ No | By Whom:     Ed Disabitino | | |
|---|---|---|---|
| Reported By:      Lee Allison | | Date:  10/10/01  Time:  1045 hrs | |
| Reviewed By:      Rob Ysais | | Date:  10/10/01  Time:  1138 hrs | |

SF-01                                                          Rev. 5/01

A21

State of Delaware
Department of Labor
Division of Unemployment Insurance

**DELAWARE DEPARTMENT OF LABOR**

Notice of
Determination
UC-409

| | | | |
|---|---|---|---|
| Claimant Address | ASHOK V. SHAH 3-C18 ALLANDALE DR ALLANDALE VILLAGE NEWARK, DE 19713 | SS Number: Local Office: 2 Fund Code: 10 Claim Date: 09/03/2006 Date of AC: 12/03/2006 Case Number: 20009561 | Delivered by Mail Redet: No Count: Yes |

**Findings of Fact:**
The claimant's assignment ended, as he stated the client of the employer indicated he could not work at a bank. Although the employer was given the opportunity to provide information regarding this claim, Form UC-119C was not completed and submitted to the division (or was not submitted to the division in a timely manner) as required by Section 3317(b), Title 19, Delaware Code. Accordingly, this determination is based solely on information provided to the division by the claimant and the employer is barred from appealing this decision.

In a discharge case, the burden of proof is with the employer to prove the claimant was discharged for just cause. Just cause for discharge refers to a willful or wanton act in violation of either the employer's interest or of the employee's duties or of the employee's expected standard of conduct. The employer has not met this burden. The claimant is eligible as he was discharged without just cause in connection with the work.

**Title 19 of Delaware Code 3314(2)**
An individual shall be disqualified for benefits: For the week in which he was discharged from his work for just cause in connection with his work and for each week thereafter until he has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.

**Determination:**
You were discharged by your employer without just cause in connection with the work. Therefore, you are not disqualified from receiving unemployment insurance benefits pursuant to Section 3314(2), Title 19, Delaware Code and will be eligible to receive benefits for each week of unemployment insurance benefits for which the division determines you meet the eligibility requirements of Section 3315, Title 19, Delaware Code. The division shall issue a determination for any week(s) of unemployment insurance benefits claimed for which you are subsequently deemed ineligible to receive benefits.

**Claims Deputy Signature:**                                              Date: 12/18/2006

If you disagree with this determination, you should ask the Claims Deputy for an explanation. If you are not satisfied with the explanation, you may file an appeal.

**Claimant and Employer Appeal Rights**
This determination becomes final on    12/28/2006    unless a written appeal is filed. Your appeal must be received or postmarked on or before the date indicated. If the last date to file an appeal falls on a Saturday, Sunday or Legal Holiday, the appeal will be acceptable the next business day.
If you file an appeal and are still unemployed, you must continue to file weekly claim pay authorization forms with the local office, as instructed, until you receive a final decision.

| | | |
|---|---|---|
| Employer Name and Address | ADECCO ATTN: TALX P.O. BOX 283 ST. LOUIS, MO 63166 | Your employer account will not be charged on this claim benefit year, but may be subject to a charge in a subsequent claim benefit year. |

A22

1-29-07: 4:48PM:BOA                                    :7043868032         # 4/ 10

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | 070100060W<br>17C-2007-00284 |

| Delaware Department of Labor | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name (indicate Mr., Ms., Mrs.)<br>**Mr. Ashok V. Shah** | Home Phone (Incl. Area Code)<br>**(302) 369-3657** | Date of Birth |
|---|---|---|

Street Address                                   City, State and ZIP Code
**P.O. Box 1182 New Castle, DE 19720**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**BANK OF AMERICA** | No. Employees, Members<br>**101 - 200** | Phone No. (Include Area Code)<br>**(302) 266-5600** |
|---|---|---|

Street Address                                   City, State and ZIP Code
**300 N. Wakefield Dr., Newark, DE 19702**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address                                   City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest **12-04-2006**  Latest **12-04-2006** |

[ ] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [X] NATIONAL ORIGIN

[ ] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] OTHER (Specify below.)

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):
Jurisdiction: Charging Party was employed at Respondent's Delaware facility as a Accountant since 12/4/06

Charging Party's protected class: : ___ National Origin ( India)

Adverse employment action: Discharge

Brief statement of allegations: Charging Party states that based on ___ national origin he was discharged. Specifically, Charging Party states he arrived at work 12/4/06 and began his work day. Charging Party, states that he was contacted by Respondent's supervisor (Michele Durso) 11:44am and advised that he was to contact HR. Charging Party states that once he contacted HR (Lisa Pisano) he was told that because of a bad reference he was not eligible to work for Bank of America and was being discharged. Charging Party states that Respondent's reason for his discharge was a pretext. Charging Party states that after checking with Office Supervisor (Yamaris Esquillin) at Olstan Staffing services he found that he had no bad reference status with them. Charging Party states that ultimately, based on national origin ___ he was after working for approx 4 hours discharged by the Respondent.

Respondent's explanation: Charging Party was discharged because of bad reference

Applicable law(s): Title VII of the Civil Rights Act, as amended; Delaware Discrimination in Employment Act, as amended

Comparators(s) or other specific reason(s) for alleging discrimination: Charging Party alleges that based on national origin he was discriminated against when he was treated different by the Respondent and discharged.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Jan 08, 2007**<br>Date          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

JAN-29-2007 MON 16:41  TEL:6173460571      NAME:BANKOFAMERICA COMPENSATION B  P. 4

A23

1-29-07; 4:46PM;BOA                                    ;7043868032              # 5/ 10

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | 07010006W |
| | [X] EEOC | 17C-2007-00284 |

| **Delaware Department of Labor** | and EEOC |
|---|---|
| State or local Agency, if any | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

NO FURTHER INFORMATION

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | *mShelton* 01/09/07 |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| | *[signature]* |
| Jan 08, 2007    X *[signature]* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE |
| Date              Charging Party Signature | (month, day, year)    MELINDA S. SHELTON |
| | NOTARY PUBLIC, STATE OF DELAWARE |
| | My Commission Expires  4/30/07 |

JAN-29-2007  MON 16:41  TEL:6173460671        NAME:BANKOFAMERICA COMPENSATION B  P.  5

A24

1-29-07; 4:48PM;BOA                                    ;7043888032        #  27 10



STATE OF DELAWARE DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 N. MARKET STREET
WILMINGTON, DE 19802
(302) 761-8200/ FAX: (302) 761-6601

January  19, 2007

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Personnel Manager
BANK OF AMERICA
300 N. Wakefield Dr.,
Newark, DE 19702

RE:    Shah v. BANK OF AMERICA
       Case No. 07010006W/17C-2007-00284

Dear Respondent:

Enclosed please find a NOTICE OF CHARGE OF DISCRIMINATION, along with the following documents:

1.    Verified Charge of Discrimination filed against the above-named Respondent;
2.    Mediation interest form;
3.    Copy of 19 Del. Code § 712 (c), describing the administrative process.

Pursuant to 19 Del. Code § 712 (c), the named Respondent has an opportunity at this time to "file an answer within twenty (20) days of the receipt of the Charge of Discrimination, certifying that a copy of the answer was mailed to the Charging Party at the address provided." If you are interested in mediation, you do not need to file an answer at this time. If you elect this option you must check the appropriate provision on the enclosed Invitation To Engage in Mediation and return it to us in lieu of your answer.
This Charge of Discrimination has been filed under the following law(s), and as indicated by the case numbers referenced above.

    ✓  Title VII        ✓  DE Discrimination in Employment Act
       ADA           DE Handicapped Persons Employment Protection Act
       ADEA

We anticipate your full cooperation.  If you intend to retain legal representation at any time throughout this process, please have your attorney enter his or her appearance so that future contact will be made through him or her.

*Julie Cutler*

Julie Klein Cutler, Administrator,
Discrimination Program

cc:  Charging Party (w/o enclosures)

17C_DDOL_B-06W-R Resp New Charge Packet Wilm_DOC : 07/06

<div style="border:1px solid black">EXHIBIT

A</div>

JAN-29-2007  MON 16:40  TEL:6173460671          NAME:BANKOFAMERICA COMPENSATION B P.  2

A25

STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION PROGRAM

Ashok V. Shah                                    Case No. 07010006W
P.O. Box 1182
New Castle, DE 19720

vs.

BANK OF AMERICA
300 N. Wakefield Dr.,
Newark, DE 19702

FINAL DETERMINATION AND RIGHT TO SUE NOTICE

Pursuant to 19 Del. C. § 710, *et seq.*, the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

*No-Cause Determination and Dismissal with Corresponding Right to Sue Notice.*

In this case, the Department has completed its investigation and found that there is no reasonable cause to believe that an unlawful employment practice has occurred. The Department hereby issues a No-Cause Determination and Dismissal and provides the Charging Party with a Delaware Right to Sue Notice.

*In this Charge of Discrimination, the Charging Party bears the burden to prove his allegations by a preponderance of the evidence. Here he alleges the Respondent discriminated against him because of his National Origin (India) when he was terminated. The Respondent denies these allegations. They state the Charging Party worked for an agency that provided contract employees for the Respondent. They contend while the Charging Party provided similar services to them on an earlier assignment, he harassed another of the Respondent's employees. To this extent, the Respondent has provided evidence of these previous issues with the Charging Party. The Respondent states their decision to discharge the Charging Party was based solely on these earlier incidents and had nothing to do with his National Origin. The Charging Party was advised of this Agency's preliminary determination in this matter and was afforded the opportunity to respond. The information he submitted in response tended to support the Respondent's claim regarding Charging Party's inappropriate conduct. Based on the foregoing, the Charging Party has failed to meet his evidentiary burden. Accordingly, this No Cause Determination follows.*

See the attached Notice of Rights.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Program.

_____                    _____
Date issued                        Julie Klein Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

17C_DDOL_C-12-NC - No Cause Determ_DOC: 3/06

EXHIBIT
B

A26

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ASHOK V. SHAH,                          )
                                        )    Civil Action No.
              Plaintiff,                )    07-554-SLR
                                        )
v.                                      )
                                        )
BANK OF AMERICA,                        )
                                        )
              Defendant.                )

          Videotape deposition of ASHOK V. SHAH
taken pursuant to notice at the law offices of
Young, Conaway, Stargatt & Taylor, LLP, The Brandywine
Building, 1000 West Street, 17th Floor, Wilmington,
Delaware, beginning at 10:30 a.m., on Thursday,
February 21, 2008, before Patricia L. Shelton,
Registered Professional Reporter and Notary Public.


APPEARANCES:

        ELENA D. MARCUSS, ESQ.
        McGUIRE WOODS
          7 Saint Paul Street - Suite 1000
          Baltimore, Maryland  21202-1671
          For the Defendant


ALSO PRESENT:

        LINDSAY DuPHILY - Videotape Specialist
        RANDALL DRAPER - Videotape Specialist
          Discovery Video Services
        MARGARET M. DiBIANCA, ESQ.
        SHAINA CARL

```
┌─────────────────┐
│    EXHIBIT      │
│       2         │
└─────────────────┘
```

          WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
          (302) 655-0477
          www.wilfet.com



**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters

COPY

A27

Ashok V. Shah

68

1    A.    Yes.

2    Q.    Okay.  What else?

3    A.    One, two, three, four, five, six, seven, eight,

4    nine, ten, eleven, twelve -- fourteen.  One moment.

5              This is the time sheet copy confirming that

6    I work for Adecco on, I think it was Monday --

7              THE REPORTER:  I'm sorry.  It was on Monday

8    what?

9              THE WITNESS:  December 4th.

10   Q.    December 4, 2006?

11   A.    Same thing signed by the supervisor.  Her name

12   Yamaris, I think, at Adecco.

13   Q.    Thank you.

14   A.    This is only one I have pay stub advice

15   confirming --

16             THE REPORTER:  I'm sorry.  Pay stub what?

17   Advice?

18             THE WITNESS:  Advice I think you call it.

19   Advice.  Pay stub advice.

20             (Continuing) from, I think, Adecco

21   confirming the rate $13 per hour and work for

22   3.75 hours.

23             THE REPORTER:  3.75 hours?

24             THE WITNESS:  Yeah.

96

1          It's white color.  You can look.  Thank

2    you.

3          Here is something about money and love.

4    Here is the money that -- okay.  I forgot to tell you

5    that she used to come to my home for very, very long

6    time.  Even she was staying there using my one car,

7    1994 Nissan Maxima, without paying the rent or the car

8    monthly installment or enough gas money or enough

9    repairing cost.  Any costs substantial amount to me.

10   For which no -- not even MBNA, not even Bank of

11   America, not even Pingitore family has reimbursed me

12   completely.

13·        One moment.  Keep some patience.

14   Q.   Mr. Shah, you and Ms. Pingitore had a personal

15   relationship in 1999 and 2000, correct?

16   A.   I was forced.  She was my supervisor.  And I

17   was treated as slave and asked to keep my mouth shut.

18   Q.   And that was in --

19   A.   And I'm --

20         THE REPORTER:  I'm sorry.  And what?

21         THE WITNESS:  One moment.

22         THE REPORTER:  No.  I didn't understand

23   what you said.

24

A29

Ashok v. Shah

97

1   BY MS. MARCUSS:

2       Q.    Mr. Shah, you need to repeat your words for the

3   court reporter so she can get them down.

4       A.    You can repeat what you asked me.  1999 --

5       Q.    This relationship you had --

6       A.    Personal relationship.

7       Q.    -- was in 1999 --

8       A.    One moment.

9       Q.    -- and 2000, correct?

10      A.    1999, 2000.

11      Q.    Correct?

12      A.    And more.  I was forced to have.

13      Q.    And it ended in 2000 or 2001, correct?

14      A.    No.

15      Q.    When did it end?

16      A.    I have to look at the evidence.

17      Q.    Tell me, if you can remember, when did it end?

18      A.    I think might be current with -- it is with the

19  police department.  She used to call me on phone at my

20  home.

21      Q.    When did your relationship with Ms. Pingitore

22  end?

23      A.    How do you define relationship?

24              One moment.

Ashok v. Shah

98

1    Q.    However you define relationship.  When did it

2    end?

3    A.    I think it was no relationship.  It was forced

4    act.  She like rape.  She used to rape me.

5    Q.    She raped you?

6    A.    Yes.

7    Q.    When did she rape you?

8    A.    Starting from 1999.

9    Q.    When?  When else?

10    A.    I think one important date America is 9/11.

11    The same date I have.

12    Q.    Excuse me?  I didn't understand that?

13    A.    In America, people have one 9/11.

14    Q.    You said Ms. Pingitore raped you in 1999.  When

15    else did she allegedly rape you?

16    A.    One moment.

17          Can you repeat the last statement?  When?

18    Q.    When else do you claim she raped you?

19    A.    I don't have the calculator and not all the

20    memory.  I think she's keeping the record.  The police

21    can find it.

22    Q.    Are you telling me you don't know?

23    A.    I don't know all the dates.

24    Q.    What do you know?

Ashok v. Shah

99

1    A.    I know might be more than 100 times.

2    Q.    More than 100 times?

3    A.    Yeah.

4    Q.    And when was the last time?

5    A.    Last time she called me at home and...

6          At home, then also she called me outside

7    couple of times.

8    Q.    That was not my question.  When was the last

9    time you claim she raped you?

10   A.    I think I gave you the letter.  Can I read

11   that, Bank of America letter?

12   Q.    What letter?

13   A.    I gave you the letter of the Bank of America.

14   Q.    Statement of position?

15   A.    Yeah.  It is somehow related.

16         Relationship, like there are couple of

17   instances in all.  I want to -- I don't like to have

18   anything other than my wife.

19   Q.    Mr. Shah, would you, please, answer my

20   question?

21   A.    This matter is also with the police department.

22         One -- I think last time she called me, I

23   remember, January 30th, two thousand, I think, seven.

24   Q.    She called you on January 30th, 2007?

Ashok v. Shah

100

1    A.    One moment.

2    Q.    No.  Please answer my question.  Are you

3    claiming that she called you --

4    A.    You are trying to intimidate me.

5    Q.    I am not trying to intimidate you.

6    A.    You're not trying to let me write down --

7              THE REPORTER:  Mr. Shah, Mr. Shah, please

8    let her finish her statement.  Then you can say what

9    you what to say.

10             THE WITNESS:  Why you taking her side?

11             THE REPORTER:  I'm not taking her side.  I

12   can't hear two people talking.  If she finishes, then

13   you can say what you have to say.

14             THE WITNESS:  She trying to obstruct the

15   justice.  She don't allow me to write.  And I have

16   right to write.  I'm also human being.  You are human

17   being.  Everybody human being.  All you citizens, I

18   hope.  Why somebody is prevented from writing?  I have

19   the right to write, right?

20   BY MS. MARCUSS:

21   Q.    Mr. Shah, you need to listen to my questions

22   and you need to answer my questions.  That is your

23   duty here today.

24   A.    Okay.



WILCOX & FETZER LTD.
Registered Professional Reporters

A33

Ashok v. Shah

101

```
 1    Q.    So here's my question to you --

 2    A.    One moment.

 3          And -- okay.  I think I have no right to

 4    speak.

 5    Q.    Here's my question to you --

 6    A.    One moment.

 7          I think --

 8    Q.    Mr. Shah --

 9    A.    -- you are going off the track.

10    Q.    No.  Mr. Shah, you need to listen to my

11    questions, you need to answer them.

12          Are you ready?  Here's my question --

13    A.    Please slowly.

14    Q.    Isn't it true --

15    A.    Is it true.

16    Q.    Isn't it true that you never reported --

17    A.    That you never reported.

18    Q.    -- any harassment against you --

19    A.    Any harassment against you.

20    Q.    -- any assault against you --

21    A.    Any A double S --  can you spell it for me?

22    Q.    A-S-S-A-U-L-T.

23    A.    Against you.  Okay.

24    Q.    (Continuing) or any rape --
```

A34

102

1    A.    Or any rape.

2    Q.    -- by Ms. Pingitore --

3    A.    And can you tell me the correct last name?

4    Q.    Sir, you've been using her name throughout.  I

5    think you know her name.

6    A.    But I want on the record.  I want the name on

7    the record.

8    Q.    It is on the record.

9    A.    Nancy Weeks, right?

10    Q.    (Continuing) to Bank of America or MBNA?

11    A.    Pardon me?

12          One time initially I tried to terminate the

13    assignment, and she told me couple of things about --

14    the racial slurs, I cannot use the same words.

15    Q.    Sir, that was in 1999, is that the case?

16    A.    1999.  It might be 2000.  Like initially I

17    don't like to have anything other than my wife in my

18    life.

19    Q.    Mr. Shah, you need to listen to my questions

20    and answer those questions.

21    A.    One moment.

22          MS. MARCUSS:  Would you, please, read back

23    my question regarding reports to Bank of America or

24    MBNA?

**W&F**

Ashok v. Shan

103

```
 1            Please listen to this question and please
 2   answer it.
 3            THE WITNESS:  Okay.  Okay.
 4            THE REPORTER:  "Isn't it true that you
 5   never reported any harassment against you, any assault
 6   against you or any rape by Ms. Pingitore?"
 7            THE WITNESS:  I was --
 8            MS. MARCUSS:  To Bank of America or MBNA.
 9            THE WITNESS:  I feel threatened all the
10   time, T-H-R-E-A-T-E-N-E-D all the time.
11   BY MS. MARCUSS:
12     Q.   Would you, please, answer the question yes or
13   no?
14     A.   I was threatened.  I'm not able to complete my
15   statement.
16     Q.   So you did not report anything --
17     A.   You are trying to intimidate me.  You are
18   trying to rule me.
19     Q.   I am not trying to intimidate you.  I am trying
20   to get an answer to my question.
21     A.   You are trying to rule me.  You are trying to
22   intimidate me.
23     Q.   No, sir, I'm not trying to rule you.  I need an
24   answer to my question.
```

**W&F**
WILCOX & FETZER LTD.
Registered Professional Reporters

1        Isn't it true that you never reported any

2   of this alleged inappropriate --

3     A.   I was not given a chance until today.

4           THE REPORTER:  I didn't -- see, when you

5   speak on top of her, I can't get what you're saying,

6   so it's not going to be on the record.

7           She needs an answer to her question.  Isn't

8   it true that you never reported any of this alleged

9   inappropriate...

10          MS. MARCUSS:  Conduct to anyone at MBNA or

11  Bank of America?

12          THE WITNESS:  Even though without reporting

13  immediate supervisor -- I think Wendy first name.

14  Last name might be Lindsey, who signed my time sheets.

15          THE REPORTER:  Might be what?

16          THE WITNESS:  She can tell from the time

17  sheet who signed my time sheet.

18  BY MS. MARCUSS:

19    Q.   Wendy Lindsey?

20    A.   I think, yeah.

21    Q.   What do you think about her?

22    A.   I think she already told what she had with me.

23    Q.   No.  Mr. Shah, I have a very simple question.

24  Isn't it true that you never reported any of this

Ashok v. Shah

105

1    allegedly inappropriate conduct by Ms. Pingitore to

2    anyone at MBNA or Bank of America?

3        A.    I was threatened.  I was out of money.  I

4    cannot hire the lawyer.  Still I'm stuck being

5    U.S. citizen treated as slave.

6        Q.    So you did not report it; is that correct?

7        A.    I was the one hurt.  Even if I want to speak,

8    they prevented me from speaking.  Nancy told me, "Shut

9    your mouth."  Otherwise, she didn't complete the

10   statement.  And she told never tell to anybody.

11           MS. MARCUSS:  I'd like to mark this as

12   Exhibit 1, please.

13           (Shah Deposition Exhibit No. 1 was marked

14   for identification.)

15           THE WITNESS:  I think you are trying to mix

16   up the discrimination with the personal things and

17   trying to obstruct the justice.

18           The main thing is discrimination.

19   BY MS. MARCUSS:

20       Q.    Mr. Shah, would you --

21       A.    They are trying to go to personal things, even

22   it is one of the protections, the game bank used to

23   play with immigrants.

24       Q.    Would you, please, look at Exhibit 1?

A38

Ashok v. Shah

106

1     Do you recognize this as the complaint you

2   filed against Ms. Nancy Pingitore?

3   A.   What is this 1179...

4        Yeah.

5   Q.   Okay.

6   A.   One moment.

7   Q.   Please turn to the second page.

8   A.   One moment.

9        I think you are trying to prevent me from

10  writing.  You want the record.  You don't allow me to

11  keep the record what I speak.  Right?

12       I have the right to speak.  I have the

13  right to write; like you have the right to speak.  You

14  have the right to write.  Both equal U.S. citizens.

15  Q.   Mr. Shah, you're taking a whole lot of time

16  taking about your rights to write.  I've asked you to

17  turn to the second page of that document that's in

18  front of you.  Is that your signature on the bottom?

19  A.   Yes.

20  Q.   And do you see the paragraph in the middle that

21  starts with "The bank associate"?

22  A.   Yeah.  See, dishonest complaint.  This is what

23  I give you the Bank of America highlight.  You can

24  highlight the same.

Ashok V. Shan

107

1    Q.   The last sentence of that paragraph says, "Due

2    to the threats" -- "Due to her threats, I did not

3    report the matter to the bank or to the police."

4    A.   Yeah.

5    Q.   Is that true?

6    A.   At that time when I signed, 5/25/2007.

7    Q.   Mr. Shah, I'd like to turn --

8    A.   One moment.  One moment.

9    Q.   Mr. Shah, I'm now going to ask you about

10   December 4, 2006.  Okay?

11   A.   December 4, 2006.  I think it was Monday,

12   right?

13   Q.   I don't know what day of the week it was.

14   A.   I can tell you, if you want.

15   Q.   Nope.  I don't care.

16   A.   Okay.  I hope you care for me, also.

17        One moment.  One moment.  Sorry.

18   Q.   Mr. Shah, you reported --

19   A.   One moment.  One moment.  I need the glasses.

20   One moment.

21   Q.   Here they are.

22   A.   Oh.  Thanks.

23        I think -- can I speak?

24   Q.   Mr. Shah, you need to listen to my questions.

A40

108

1    You need to answer my questions.

2        A.    Okay.  I think I need to drink something.

3        Q.    That's fine.

4        A.    You can also drink something.

5              Thank you.

6        Q.    Mr. Shah, you reported for your assignment --

7        A.    Pardon me?

8        Q.    You reported for your assignment --

9        A.    Reported means I went, right?

10       Q.    You went for your assignment at Bank of America

11   on the morning of December 4, 2006, correct?

12       A.    December 4, 2006, yes.  Answer yes.

13       Q.    And you reported to Michelle Durso, correct?

14       A.    Yeah.  One moment.

15             I was waiting outside for about 15 minutes.

16   She was late.  You know, the permanent people born in

17   USA, they are like superior.  And born in other

18   countries not treated the same way.

19             Like I was not offered the cake they had

20   for my work.  I did the merger of the PNC credit card

21   with the Bank of America.  They celebrated.  I was not

22   invited even for a simple piece of cake.  One of the

23   richest country.

24             One moment.

Ashok v. Shah

109

1    Q.    And the person you --

2    A.    One moment.  One moment.

3          Person reported...

4    Q.    The person you first reported to is

5    Michelle Durso, correct?

6    A.    I think somebody, like the security I was

7    waiting for more than about 10, 15 minutes.

8    Q.    Okay.  And after you waited at security, you

9    spoke with --

10   A.    After waiting, yeah.

11   Q.    -- you spoke with Michelle Durso, correct?

12   A.    Yeah.

13         One moment.  Talked to Michelle, yeah.

14         But -- can I interrupt, if you give me

15   permission?  Okay.  You finish, then I can speak.

16   Q.    Thank you.

17         And Ms. Durso walked you --

18   A.    Walked you.

19   Q.    -- through the premises of Bank of America and

20   had you sit down for a while, correct?

21   A.    I don't think all the premises, only the place

22   I was supposed to sit.

23   Q.    Okay.

24   A.    One moment.

Ashok V. Shah

110

1          Went to the place I was supposed to sit.

2          I think she introduced to few persons.

3    Might be four or five.

4          THE REPORTER:  I'm sorry.  You think she

5    what?

6          THE WITNESS:  She introduced to like four

7    or five persons.

8    BY MS. MARCUSS:

9    Q.    She introduced you to four or five people?

10   A.    Yeah.

11   Q.    Do you remember who any of those people were?

12   A.    I think one person like I -- started training

13   me.  One person.  I'm not sure.

14   Q.    Do you remember the name?

15   A.    I'm trying to recollect.

16          Like he offered me something like, like

17   this notebook, like small one.  This is from the

18   Bank of America I got some time.  I don't remember.

19   He started training me, giving me -- like so I was

20   writing like.  And like he gave me -- he gave me

21   break, 10, 15 minutes.  I'm not sure.

22          His name was Rogers Cole.  Might be.  I'm

23   not sure.

24          THE REPORTER:  I'm sorry.  Rogers what?

111

1              THE WITNESS:  Might be -- I have to check

2    other papers, if I can find.

3              Rogers, last name I think might be Cole,

4    C-O-L-E.  I'm not sure.  But you can verify with the

5    Michelle Durso.

6              One moment.

7    BY MS. MARCUSS:

8      Q.    And --

9      A.    One moment.

10             Yes.

11             MS. MARCUSS:  The court reporter is going

12   to need to switch video.  So why don't we do that?

13   We'll take a one-minute break while he does that.

14             THE WITNESS:  Then I can drink something.

15             VIDEOTAPE SPECIALIST:  Going off the record

16   at approximately 2:40 p.m.

17             (A short recess was taken.)

18             VIDEOTAPE SPECIALIST:  Going on the record

19   at approximately 2:42 p.m.

20             THE WITNESS:  One moment.

21   BY MS. MARCUSS:

22     Q.    Okay.  Mr. Shah, we were talking about

23   December 4, 2006.

24     A.    December 4, 2006.  Okay,

Asnok v. Shah

1          And we were --

2     Q.    You said that Ms. Durso walked you to where

3     you'd be sitting?

4     A.    Yeah.

5     Q.    And then you were starting some training with

6     Mr. Roger, or a gentleman probably named Roger, you're

7     not sure; is that fair?

8     A.    I'm not sure about the name.

9     Q.    Okay.  But it was a gentleman?

10    A.    I hope good human being.

11    Q.    I'm asking you, it was a male individual?

12    A.    I think male.  But you know sometimes we cannot

13    make statement.

14    Q.    Shortly thereafter, Mr. Shah, Ms. Durso told

15    you that you needed to call Lisa Pisano at Adecco,

16    correct?

17    A.    One moment.

18          I think I gave you the name on the sticky.

19    You can make the copy on record.  Lisa Pisano?

20    Q.    Right.

21    A.    And you have also the number.  Can I know the

22    number, please, for record?

23          74059.  And you can have good picture.

24    Q.    So is that the sticky that Ms. Durso gave --

**W&F**
WILCOX & FETZER LTD.
Registered Professional Reporters

A45

Ashok V. Shah

113

1   did Ms. Durso give you that sticky?

2       A.    Yeah.  I usually have things.  Sometimes I

3   misplace them.

4       Q.    That's fine.  I just want to understand.

5       A.    Like her handwriting on the record.

6       Q.    Okay.  So Ms. Durso handed you a sticky with

7   Lisa Pisano's name on it and the number 74059 on it?

8       A.    This is what I remember.

9       Q.    Okay.  And asked you to call Ms. Pisano,

10  correct?

11      A.    Yeah.

12      Q.    Do you remember anything else about your

13  conversation with Ms. Durso at that point?

14      A.    I returned to the department.  And I can

15  recollect the memory if you give me chance.

16      Q.    I want you to tell me everything you can

17  remember about your conversation with Ms. Durso at

18  that point.  Okay?

19      A.    Would you mind if I look at the papers?

20      Q.    If you need to look at something, that's fine.

21      A.    Thank you very much.  Okay.

22            I think this is...

23            I think I only give one, right?  I don't

24  like to duplicate.

114

1    Q.    Yes.  I already have a copy of that one.

2    A.    Would you like to get a copy of the check?

3    Q.    Sure.  We'll put them in our pile.

4    A.    I'll give them altogether.  So I will count and

5    give you.

6    Q.    Okay.  But remember --

7    A.    I was looking at -- I know.  Sorry.

8    Q.    What I asked you was to tell me everything you

9    can remember --

10    A.    Yeah.

11    Q.    -- about your conversation with Ms. Durso when

12    she told you to call Ms. Pisano.  Okay?

13    A.    Yeah.  Okay.  Thank you for the patience.

14          "Charging party states that based on race

15    and national origin, he was" -- oh, you are asking

16    about...

17    Q.    Yes.  Remember, I'm asking you about --

18    A.    Sorry.

19    Q.    Okay.

20    A.    But this is part.  So I just...

21          It is admitted.

22          Termination date, December 4, 2006 about

23    12:15.

24    Q.    Mr. Shah, what were you reading off there that

117

1  lawyer and lawyers.

2    Q.   Mr. Shah, there's no grounds for filing a

3  lawsuit against any lawyer in this matter.

4           Let's go back to what I was asking you.

5    A.   So -- this is not your client.  I'm giving you

6  something more.

7    Q.   Okay.  Please do.

8    A.   We are going somewhere else under one pretext

9  or some --

10   Q.   Mr. Shah, remember the question I asked.  And I

11 would like an answer to that question.

12   A.   I'm looking.  I'm trying my best.  I'm human

13 being.  Like you are three; I'm by myself.  And you

14 know the situation of my wife, the patient.  She's

15 sitting without any medical help.

16          What I remember, I recollect from the

17 memory that Lisa Pisano, I think pronounced rightly,

18 did not give me any reason at the time of termination.

19   Q.   So when you called Ms. Pisano, she told you

20 that your assignment at the bank was being terminated,

21 correct?

22   A.   One moment.

23          I remember Lisa Pisano told me, yeah.

24   Q.   What exactly did Lisa Pisano tell you?

A48

Ashok v. Shah

.118

1        Mr. Shah, can you remember your
2   conversation with Ms. Pisano?
3    A.    Can you give me chance to get the justice,
4   please?
5    Q.    Can you remember your conversation with
6   Ms. Pisano?
7    A.    I'm trying to give as much as possible.  I'm
8   human being.
9    Q.    I understand that.  And I appreciate that.
10   A.    Don't try to rule me.
11   Q.    I'm not trying to rule you.  I'm trying to find
12   out from you --
13   A.    You're trying to intimidate me.
14   Q.    -- if you remember your conversation with
15   Ms. Pisano?
16   A.    I think you are trying to intimidate me.  This
17   is for record.  Requested more than 20 times.  She is
18   trying to rule me and intimidate me.  I have the right
19   to file the lawsuit if necessary, on record.
20   Q.    Mr. Shah --
21   A.    One moment.
22   Q.    -- what exactly did Lisa Pisano tell you?
23   A.    I recollect that Lisa Pisano told me that I'm
24   not eligible to work anymore at Bank of America.

Ashok V. Shah

124

```
 1    A.    I am trying to recollect my memory.

 2          Do you have some problem?

 3    Q.    Mr. Shah, please answer my questions.

 4    A.    Can I know what you have in your hands?

 5    Q.    I have a tissue in my hand.

 6    A.    No.  Any devices other than this --

 7    Q.    Sir, no.  I have no devices.

 8    A.    Okay.  Okay.  Sorry about that.

 9          I think about 11:50 a.m.

10          One moment.

11          THE REPORTER:  50 or 15?

12          THE WITNESS:  Five zero.

13  BY MS. MARCUSS:

14    Q.    What happened --

15    A.    One moment.

16    Q.    What happened after you spoke with Ms. Pisano?

17    A.    One moment.

18          I repeated.  I'm repeating again.  I'm

19  not -- no more eligible.

20          THE REPORTER:  What's that?  You're not

21  what?

22          THE WITNESS:  No more eligible to work for

23  Bank of America.

24
```

**W&F**
WILCOX & FETZER LTD.
Registered Professional Reporters

Ashok V. Shah

125

BY MS. MARCUSS:

Q.    That's what Ms. Pisano told you, correct --

A.    Yeah.

Q.    -- that you were no longer eligible to work for Bank of America?

        What happened after you spoke with Ms. Pisano?

A.    I think I told you that I left the place.

Q.    You left the building.  Okay.

A.    Left.  Okay.  Bank of America building.

Q.    Who else --

A.    Who else.

Q.    -- did you speak with --

A.    Speak with.

Q.    -- while at Bank of America --

A.    With while at Bank of America.

Q.    -- on December 4, 2006?

A.    She introduced to some people.  I think few people sitting on the same side I was sitting, sitting on the backside.  I think one was temporary from medical and -- might be couple of people.  Couple of people just put.

Q.    So you're saying that while you were at the bank, you spoke with a few people who were sitting in

Ashok v. Bhan

126

1   your area; is that correct?

2   A.   Like not so much talking.  Just introduction.

3   You know how in America immigrants are treated just

4   like slaves.

5   Q.   So you were introduced to --

6   A.   Just introduced, but not enough right to speak.

7   Q.   And --

8   A.   One moment.  Let me finish.

9   Q.   Do you know the names of any of those

10  individuals?

11  A.   I think one person you have written the name.

12  I think Peggy or something like that.  I don't

13  remember, in your words, off the hand, right?  It is

14  your word, off the hand.

15  Q.   I just want to know anything you can remember.

16  A.   Can I read your letters?  You have written

17  something.  I can recollect something if you allow me

18  to read your papers.

19  Q.   You're not going to read my notes, no.

20  A.   No.  My notes.

21  Q.   If you have notes -- if you have notes, read

22  them.

23  A.   Okay.  Okay.  Thank you so much.

24          How many minutes I can look?  Excuse me?

Ashok v. Shah

127

1  How much time I can be allowed to look?

2    Q.   Mr. Shah, remember what you're looking for.  I

3  asked you for names of any of the --

4    A.   Yeah.

5    Q.   Then look.

6    A.   It should be here.

7    Q.   Then great.  Look for it.

8    A.   Thank you so much.

9         I don't remember the last name.  I think

10  you might have it somewhere, the last name.  I

11  recollect the memory.  I think it was K-E-E-N,

12  Peggy Keen.

13    Q.   Okay.  You spoke with Peggy Keen --

14    A.   I think Peggy I remember.

15         One moment.

16    Q.   Okay.  Do you remember the names of anyone else

17  with whom you spoke at Bank of America on December 4,

18  2006?

19    A.   Anybody else means?

20         I talked to, I think, my supervisor,

21  Mr. Gentleman.

22    Q.   Okay.  The gentleman.  Okay.  Anyone else?

23    A.   Then security when I entered the building.

24    Q.   Okay.  Anyone else?

Ashok v. Shah

128

1    A.    Keen was there.  My -- how you say?  Like

2    introduce, say hi, hello, that's all.  And all of the

3    things I don't remember.

4              Whatever I have...

5    Q.    Well, we know you spoke with Michelle Durso,

6    correct?

7    A.    Michelle, yeah.  Michelle.

8              It's like -- she's racist from beginning.

9    I work for her in 1997.

10             THE REPORTER:  I'm sorry.  She's what?

11             THE WITNESS:  She's like racist.  She's

12   against people from India.

13             THE REPORTER:  Oh, racist.

14             THE WITNESS:  And she don't like even if I

15   drink tea at the building I used to work at back in

16   '97.  She had like bad feeling I drink tea over her.

17   Like she was yelling, "Who drink the tea here?"  I'm

18   the human being.  And like she was not at all like

19   treating me as a human being.

20             And you want something for '97 if I can

21   find?

22   BY MS. MARCUSS:

23   Q.    No.  What I want to know is whether you can

24   remember anything more about your conversations with

1   Michelle Durso on December 4, 2006?

2     A.   I told that.  I got the assignment with the

3   same person.  This is what I remember.

4          I got the assignment with Michelle, I

5   think, second time.  First time I work for MBNA.  And

6   she was the -- I think some supervisor signing the

7   time sheet.  Against people from India, racist, rude.

8     Q.   Mr. Shah --

9     A.   She had terminated also long back in '97.

10         THE REPORTER:  She had what?

11         THE WITNESS:  She terminated my job in '97

12  without -- this is like --

13         THE REPORTER:  I know.  But I just don't

14  understand the word you're using.

15         She had what your job in '97?

16         THE WITNESS:  Like '97 I work for her.  I

17  was reconciling assets -- you understand the word

18  "asset," right?

19         THE REPORTER:  I do.

20         THE WITNESS:  (Continuing) of MBNA all over

21  the world.  Checking the work of all most senior

22  officers and, I think, reporting to management.

23  Assignment, I think, was about two or three months

24  that I remember.



**W&F**

WILCOX & FETZER LTD.
Registered Professional Reporters

Ashok V. Shah

130

1    BY MS. MARCUSS:

2       Q.    Two or three months; is that what you said?

3       A.    Yeah.  At that time in '97.

4              And I was terminated within three weeks'

5    time, I think.  I went for work one day.  If you give

6    me chance, I can find what date it happened.

7       Q.    This is from 1997?

8       A.    Yes.

9       Q.    Okay.  No.  My question to you was, do you

10   remember anything else --

11      A.    Yeah.  This is part of the conversation.

12      Q.    No.  No.  No.

13             (Continuing) anything else about your

14   conversation with Michelle Durso on December 4, 2006?

15      A.    Anything else?

16      Q.    About your conversation with Ms. Durso on

17   December 4, 2006?

18      A.    I don't have like reporters or persons helping

19   me all the time.  I'm not documenting each and every

20   word entire life.

21      Q.    I understand that.  I just want to know what

22   you remember.

23      A.    Please.

24      Q.    You told me before everything is in the head,

**W&F**

WILCOX & FETZER LTD.
Registered Professional Reporters

A56

1    A.    Okay.  Should I read it?

2    Q.    Do you recognize it?

3    A.    In the Superior Court of the State of

4  Delaware...

5    Q.    Is that the complaint you filed against Bank of

6  America in this matter?

7    A.    I think so.

8    Q.    Is that your signature on the second page?

9    A.    I think so.

10   Q.    Also on the first page, in fact?  Yes?

11   A.    Signature for Bank of America, okay.

12   Q.    Mr. Shah, what facts or evidence --

13   A.    What facts, evidence.

14   Q.    -- do you have --

15   A.    Do you have.

16   Q.    -- to support --

17   A.    To support.

18   Q.    -- the claim --

19   A.    The claim.

20   Q.    -- in that complaint that your assignment --

21   A.    That your assignment.

22   Q.    -- at the bank --

23   A.    Assignment at bank.

24   Q.    -- was terminated --

Ashok v. Shah

142

```
 1    A.    Was terminated.

 2    Q.    -- due to --

 3    A.    Due to.

 4    Q.    -- discrimination based on race?

 5    A.    Okay.  I think you should have other pages with

 6   this so I can recollect.

 7              And national origin.  Race and national

 8   origin.

 9    Q.    Right.  You alleged both, but I'd like to

10   handle them one at a time.

11              What facts or evidence do you have to

12   support the claim in your complaint that your

13   assignment at the bank was terminated due to

14   discrimination based on race?  Let's start with race.

15    A.    As plaintiff, I have right to send the lawyer

16   or lawyers or attorney I think you call it

17   interrogatories, like -- interrogatories like

18   questions so I can get the evidence proof from you.

19    Q.    What I want to know is sitting here today, I

20   need you to tell me all of the facts or evidence you

21   have to support your claim that your assignment at the

22   bank was terminated due to discrimination based on

23   race.

24    A.    I'm in the process of sending you by mail
```

Ashok v. Shah

143

1   interrogatories.  I think you understand the meaning

2   of "interrogatories."

3       Q.   I do understand what interrogatories are.  I

4   still need you --

5       A.   Like the set of questions.

6       Q.   I still need you to answer my questions.

7       A.   Like set of questions.

8            You are trying to win the case by anyhow.

9   Like you created obstruction of justice in my case of

10  Nancy Pingitore, now Nancy Weeks in the Superior

11  Court.  You can read the letter which I'll return to

12  the judge.  Can you, please, read the letter?

13      Q.   I have no idea what letter you're talking

14  about.

15      A.   Can I look at my papers?

16      Q.   Yes.

17      A.   Okay.  And I hope you recollect your memory

18  what I talk to judge.  It is not very old.  You can

19  read the books.

20      Q.   Mr. Shah, you're talking about your complaint

21  against Ms. Pingitore which was dismissed by the

22  Superior Court.

23      A.   But it is a part.

24      Q.   I need you to tell me today, tell me every fact

144

1    and every piece of evidence you have to support your

2    claim that your assignment at the bank was terminated

3    due to discrimination based on race.  You need to tell

4    me all of the facts and evidence.

5      A.   I'm trying to tell, but you are creating the

6    obstruction.  So I'm cut short before I reach the

7    destination.  Judge told me I should file other cases,

8    including appeal.

9             THE REPORTER:  The judge told you you

10   should file other cases, including what?

11            THE WITNESS:  Appeal.  I should appeal.

12            And I was cut short.  So I cannot discuss

13   the legal issues about the lawyer, whether I should

14   take them to the court.  But there is record in the

15   Superior Court.  You took the case because you think

16   it is related to the case, right?

17   BY MS. MARCUSS:

18     Q.   Mr. Shah, you need to answer my question.

19     A.   This is part of the question.  You're --

20     Q.   Please listen carefully.  You cannot be asking

21   me questions.  You need to answer my question.  I will

22   repeat it once again.  And afterwards, I'm going to

23   have the court reporter repeat it if you don't answer.

24     A.   Okay.

**W&F**

WILCOX & FETZER LTD.
Registered Professional Reporters

A60

Ashok v. Shah

145

1   Q.    What facts --

2   A.    One by one.  Okay.  What factor.

3   Q.    -- facts or evidence --

4   A.    Or evidence.  One moment.

5   Q.    -- do you have --

6   A.    Do you have.

7   Q.    -- to support your claim --

8   A.    One moment.  To support your claim.

9   Q.    -- in your complaint, which is Exhibit 2 --

10  A.    In your complaint, Exhibit 2.

11  Q.    -- that your assignment at the bank --

12  A.    That -- sorry.  At the bank.  Of America,

13  right?

14  Q.    Bank of America.

15        (Continuing) was terminated --

16  A.    Was terminated.

17  Q.    -- due to discrimination based --

18  A.    One moment.  Due to discrimination.

19  Q.    -- based on race?

20  A.    Okay.  I should be allowed answer on record.

21  To subpoena all related people during the trial since

22  '97, even though the problem ended in 2006.  I started

23  working '97, ended 2006, on and off.

24        I didn't get chance to mail you the

Ashok V. Shah

146

1    interrogatories or complete my investigation and also

2    investigation by police department.  And I think you

3    are going too fast to obstruct the justice somehow.

4    And all the places you are asking without genuine

5    cause to dismiss the case, including Superior Court,

6    Federal Court.

7       Q.   Mr. Shah, I am going to -- listen to me.

8       A.    This is proof.

9       Q.   Listen to me.  I'm going to move to dismiss

10   your case unless you can give me some facts or

11   evidence to support your claim in this case.

12      A.   I gave -- I gave the letter from -- letter from

13   Department of Labor, L-A-B-O-R, Delaware.  I can give

14   you the phone number.  I already give the letter.  No

15   genuine cause to terminate assignment.

16      Q.   Okay.  I understand that.

17           What other facts or evidence do you have to

18   support your claims?

19      A.   And don't try to rule me.  You feel that you

20   are the judge.  You're acting like you will dismiss

21   the case.  You are not the judge.  Be very polite,

22   understand the legal word of lawyer, attorney, judge.

23   Then you'll try to order anything.

24           You might be having deep pockets, but you

W&F
WILCOX & FETZER LTD.
Registered Professional Reporters

147

```
 1   are not the judge.  Be careful.  You are not the
 2   judge.  This is not the Federal Court.  You are
 3   attorney for the defendant, Bank of America.
 4      Q.   Correct.  And as the attorney for the
 5   defendant, I represent the defendant.  And the
 6   defendant has the right to know all facts and evidence
 7   that you have that you believe supports your claim --
 8      A.   Yeah.  I'm giving you one by one.
 9      Q.   -- that you were discriminated against by the
10   bank.  Please give me all of the facts and evidence
11   you have.
12      A.   Okay.  One letter I give.  One letter,
13   Department of Labor, right?  You understand English.
14   Should I repeat?  Department of Labor, Delaware, City
15   name Newark.
16      Q.   In which it said that the Unemployment
17   Commission found --
18      A.   No genuine cause.
19      Q.   For your termination.
20      A.   And --
21      Q.   And awarded you unemployment benefits, correct?
22      A.   And -- listen, they didn't answer anything to
23   the department.  They did not answer anything,
24   anything, which I understand, to Department of Labor.
```

**W&F**

WILCOX & FETZER LTD.
Registered Professional Reporters

A63

Ashok v. Shah

148

1   It means they were quiet.

2          Now you are asking -- you are speaking.  It

3   is good.  But they kept silence for unreasonable time.

4   They did not respond to the department.

5   Q.   You're saying the bank did not respond to the

6   department --

7   A.   Adecco.

8   Q.   May I finish my sentence, please?

9          Are you saying that the bank didn't respond

10  to the Department of Labor's request for information?

11  A.   Adecco.  Adecco --

12         THE REPORTER:  I don't know that word

13  you're saying.

14         THE WITNESS:  Adecco.  She can tell you.

15         MS. MARCUSS:  No.  I don't understand that

16  word either.

17         THE WITNESS:  I give you the letter.  It is

18  written in the red color.  The letter in the red

19  color.  Yeah.

20         MS. MARCUSS:  Adecco.

21         THE WITNESS:  Adecco.

22         MS. MARCUSS:  Adecco.

23         You can get their address and everything.

24  They were quiet.  They didn't tell anything to the

Ashok v. Shah

1    Department of Labor.

2    BY MS. MARCUSS:

3      Q.    Okay.  I didn't -- so Adecco didn't respond to

4    the Department of Labor's request for information; is

5    that what you're saying?

6      A.    It is what I understand from the department.

7      Q.    Okay.  Fine.

8                Tell me any other fact or evidence you have

9    to support your claim of discrimination in this

10   matter.

11     A.    Like I give you the Bank of America letter.

12   And if you get chance, can you, please, read this one?

13   I already give, but I'm giving it back -- giving you

14   back again.  You just read the yellow highlighted

15   words.  This you can mark and take as exhibit from my

16   side, if you can take.

17     Q.    What about the bank's statement of position

18   supports your claim that it discriminated against you?

19     A.    There is a policy number I can tell you on

20   front on my hand.  The policy number -- can you,

21   please, go to policy number 603, page 3 of 3?

22   Effective date, October 2003.  Section, performance

23   and conduct.  Subject, harassment.  Applies to all

24   people of MBNA corporation.  United States only.

150

1          Paragraph F, penalties for violations --

2          THE REPORTER:  I'm sorry.  Penalties for

3   what?

4          THE WITNESS:  Violations.

5          MS. MARCUSS:  Violations.

6          THE WITNESS:  "If the investigation shows a

7   violation of this policy, MBNA will take prompt

8   disciplinary and remedial action designed to

9   prevent" --

10          THE REPORTER:  Hold on.

11          THE WITNESS:  -- "further harassment and

12   discrimination."

13          THE REPORTER:  "MBNA will take prompt

14   disciplinary and remedial action designed to

15   prevent"...

16          THE WITNESS:  "Further harassment and

17   discrimination."

18          Depending on the circumstances, corrective

19   action may range from reduction to dismissal.

20   BY MS. MARCUSS:

21    Q.    Reeducation.

22    A.    I'm not sure.  What is exact meaning?

23    Q.    Why don't you spell that word?

24    A.    R-E-E-D-U-C-A-T-I-O-N to dismissal.

Ashok v. Shah

1           I'm not sure what you are --

2    Q.   What about that policy do you believe supports

3    your claim that the bank discriminated against you?

4    A.   Can I complete the statement?

5           Okay.  "A complaint or report of harassment

6    is a serious matter.  Dishonest complaints or reports

7    are a violation against this policy.  The company will

8    take appropriate corrective action up to and including

9    dismissal if its investigation shows that

10   deliberately, dishonest and bad faith accusations have

11   been made."

12   Q.   What about that policy do you believe supports

13   your claim of discrimination in this matter?

14   A.   Like Wendy Lindsey, she was knowing, in my

15   opinion, that Nancy Pingitore at that time -- one

16   moment.

17          She was knowing that Nancy Pingitore at

18   that time was harassing me, including sexual

19   harassment, including the fact that I was asked to go

20   to Canada, Niagara Falls, for about four, five days --

21   I don't know exactly -- for which Nancy Pingitore at

22   that time, now Nancy Weeks had taken the pictures in

23   which Nancy told -- she had told to her supervisor,

24   Wendy, I think, Lindsey.

Ashok V. Shah

152

1          Also went her newest husband.  I don't know

2   the number.  Might be four, three.  Current husband.

3   Might be three or fourth number.  Husband had the

4   knowledge of the incidents.  I think he had access to

5   the checks, canceled copies.

6          Pictures she had taken in Canada, in

7   Delaware, special camera against privacy of my life

8   and my wife in dark, stalking, different places.  I

9   change residencies, but she didn't stop till I went to

10  Department of Labor, I think.

11         The bank was knowing what was going on.  I

12  was treated like a temp.  Nothing in America.  If you

13  are born in other country, you don't have any rights.

14  This is the way Bank of America treated me, no rights

15  to speak.  They say keep mouth shut.  Otherwise, they

16  didn't complete a statement.

17         They told what happened in American history

18  about the moment African-American people --

19         THE REPORTER:  Wait a second.  Wait a

20  second.  "They told what happened in American history

21  about the moment African" --

22         THE WITNESS:  African-American people,

23  yeah.  Nancy told me.  So she told keep --

24

153

1   BY MS. MARCUSS:

2       Q.    Nancy told you what?

3       A.    Keep mouth shut and keep on following the

4   instructions.

5       Q.    About what?

6       A.    Everything what she did me.

7       Q.    Right.  And so you didn't tell about that,

8   correct?

9       A.    To whom?

10      Q.    Anyone at the bank?

11      A.    I was not given chance.  Nobody -- even though

12  they know me, I was ignored 'til the termination.

13      Q.    And you're talking about the time you were

14  there in 1999, correct?

15      A.    No.  I applied -- ignored until the things came

16  out, everything because of the investigation by

17  myself, by the department and might be some other

18  people.  Investigation might be with the police, also.

19  I don't know what states.

20           See, three persons are involved, like more

21  people.  Like myself, I'm the victim.  Then there is

22  Nancy.  Then number one, two -- two or three number

23  husband, Angelo.  Then another person I think might be

24  Mr. Weeks, if he's the current husband.

Ashok v. Shan

154

1    Q.    How is Mr. Weeks involved in this?

2    A.    You know, Weeks he threatened me one time.

3              THE REPORTER:  He what you one time?

4              THE WITNESS:  He threatened me that he's

5    born in USA.  He has the friends in police department.

6    BY MS. MARCUSS:

7    Q.    And that was because Ms. Pingitore-Weeks said

8    she didn't want to hear from you again, correct, or

9    see you again, correct?

10   A.    No.  I was on the way to -- I go into their

11   area to see family doctor for one of the patient.

12   They threaten me.

13   Q.    Mr. Weeks threatened you?

14   A.    Weeks threatened me and told me they would get

15   me arrested if I go to see that area, even the doctor

16   or by the property.  I was looking for my property

17   because doctor is in that area.  So I had to change

18   the doctor, also.  And my wife feel more and more sick

19   because of all these tricks.

20   Q.    Mr. Shah, we need to focus in on what --

21   A.    No.  This --

22   Q.    -- facts you have that the bank, not Mr. Weeks,

23   discriminated against you.

24   A.    I'm trying to go up to that level.

Ashok v. Shan

155

Q.    But, please, tell me your facts.

A.    Yeah.  The facts -- this is the dishonest

complaint you have in the record.

Q.    What is the dishonest complaint?  Tell me

exactly what you believe the dishonest complaint is.

A.    Here you have returned the month of

November 2006.  But actual is December 2006.  So that

is error on the part of the bank or the lawyer.  I

don't know who there.  This is on page 2 of Bank of

America dated February 7, 2007.

        And during November 2006, which you have

written here, I think I went for interview.  And if

you have access to the surveillance camera, if you

give me chance, I can look, if I can find exit date I

went for interview for temporary job through, I think,

Olsten, a temporary job through Olsten Staffing.

Q.    Olsten?

A.    Olsten, O-L-S-T-E-N.  Olsten Staffing Services.

        I think I left on that day after completing

my interview.  I don't remember the name of the person

who took my interview.

Q.    Mr. Shah, my question to you was, what is the

dishonest complaint?

A.    Yeah.  This is part of the dishonesty, who took

Ashok V. Shah

156

1  my interview.  After I left and I was on the way to my

2  car -- complicating to you one states -- was in the

3  process of walking towards -- I was walking to parking

4  lot.  You can look at the camera.

5           Nancy Weeks, new name, she was stalking.  I

6  saw on the backside somewhere.  So I immediately sit

7  in the car and left the place.  If she --

8           THE REPORTER:  Say this again.

9           THE WITNESS:  She was stalking on back of

10  me.  She was following me.

11           I can tell you the exact date if I can

12  find.  S-T-A-L-K-I-N-G.  She did similar things

13  before, also.  I don't have recollection of each and

14  every date.

15  BY MS. MARCUSS:

16   Q.   So are you telling me -- let me see if I

17  understand.

18   A.   Can I drink water?

19   Q.   You can drink your water.

20           Let me see if I understand.  You are

21  telling me that Ms. Pingitore-Weeks' --

22   A.   Nancy Weeks.

23   Q.   -- complaint to the bank --

24   A.   Dishonest.  Bad faith accusations.

Ashok v. Shah

157

1    Q.    Would you, please, let me finish my question?

2    A.    Okay.

3    Q.    Her complaint to the bank that she felt you

4   were harassing her with phone calls --

5    A.    One moment.

6    Q.    -- at home and at the bank --

7    A.    One moment.

8    Q.    -- was false; is that what you're saying?

9    A.    I was asked to call her.  I can find the

10   number.  It might be handy, what number she asked me

11   to call and what -- the things she gave me.

12   Q.    No.  No.  Listen to my question, if you would,

13   please.

14   A.    Listen.  Don't try to cut me off.

15   Q.    You're not answering my question.

16   A.    I'm trying to give you the correct answer and

17   you're trying to obstruct me.  This is not good.  You

18   can -- this is -- you can on record.  Can you, please,

19   make copy?

20   Q.    I'll make a copy.  Put it on our pile of

21   copies.

22          What is this?

23   A.    (Indicating).

24   Q.    There are two phone numbers written on a

Ashok V. Shan

158

1    Post-it Note.

2       A.    Yeah.  She told me to -- keep it separate.  You

3    can separate it, if you don't mind, because this is

4    important for the trial, also.

5                THE REPORTER:  Because this is important

6    for the what?

7                THE WITNESS:  For the trial I'm going for.

8    At the trial.

9    BY MS. MARCUSS:

10      Q.    What do you want me to do with this?  I'm just

11   going to make a copy of it.

12      A.    Like do you have like blank piece of paper?

13   Can you staple so I don't lose it?  Can you do for me,

14   please?

15      Q.    I will staple it to a blank piece of paper for

16   you.

17      A.    This is my only.

18      Q.    What are you saying this Post-it Note is?

19      A.    These are the numbers she gave me to keep on

20   calling her.

21      Q.    When did she give you this Post-it Note?

22      A.    During my assignment.

23      Q.    In 1999?

24      A.    During my assignment.

Ashok v. Shah

159

1    Q.    In 1999?

2    A.    Yeah.

3          And I think I can give you something more,

4    if you give me chance.  If I cannot give you right

5    now, I will give you during the trial.  I think -- it

6    is not off the hand, in your words, but it is

7    somewhere.  One moment.

8    Q.    Mr. Shah --

9    A.    This is one of the evidence, and solid

10   evidence.  Thank you for the patience.

11          Can you make the copy of this?

12   Q.    Make copies of that.  What is it?

13   A.    One, two, three, four, five, six.

14   Q.    May I see it?

15   A.    Signed by Michelle Durso '97.

16          THE REPORTER:  Signed by who?

17          THE WITNESS:  Durso.

18          And I think I was terminated also on

19   May 12th 1997.  This is one of the evidence, this

20   termination.

21   BY MS. MARCUSS:

22   Q.    Mr. Shah --

23   A.    Yeah.

24   Q.    -- what evidence do you have --

Ashok V. Shah

160

1    A.    I'm looking.

2    Q.    No.  Listen to my question, please.

3    A.    This is evidence.  I can give you everything I

4    have if you give me chance, all facts.  But it is a

5    question of finding the right folder.  Or, it might be

6    misplaced.

7           You can call me for -- oh, I be found

8    something more.  See, I look more and find something.

9           Can you, please, make copy?  This is for

10   record, my credit card statement, Citibank Platinum

11   Select Card.  Last four digits --

12           THE REPORTER:  What was that?

13           THE WITNESS:  -- 5403.

14           THE REPORTER:  Did you say last what?

15           THE WITNESS:  Digits, like numbers.

16           THE REPORTER:  Oh.  Last digits what, 54 --

17           THE WITNESS:  5403.

18           Dated August 10, 2000.  And amount paid to

19   Liberty Travel $1,018.  You can make a copy.  And

20   Wendy was knowing that I was asked to go to Canada.

21   BY MS. MARCUSS:

22   Q.    Wendy Lindsey knew that you and Ms. Pingitore

23   went to Canada; is that correct?

24   A.    I think, yeah.  Because I recollect Nancy told

**W&F**
WILCOX & FETZER LTD.
Registered Professional Reporters

A76

Ashok V. Shah

161

1    me that she told to the supervisor.  I'm not

2    100 percent sure.  You can verify with the different

3    people.

4                One moment.  And I think I gave you that

5    1525 check.  Thank you for the patience.

6                And this is also the same address the

7    complaint is filed, P.O. Box 1182.  P.O. Box 1182.

8                She says she feel threatened to me during

9    '99.  She filed dishonest, bad faith accusations.

10                THE REPORTER:  I'm sorry.  She filed

11    dishonest, bad faith what?

12                THE WITNESS:  Accusations.

13                MS. MARCUSS:  Accusations.

14                THE WITNESS:  Then why she writes the

15    letter to me?  This is U.S. mail stamp.

16    BY MS. MARCUSS:

17    Q.    Mr. Shah, let me ask you this question --

18    A.    I'm trying to --

19    Q.    No.  Let me ask you a question.  Okay?  Listen

20    to my question, would you, please?

21    A.    Yeah, I'm listening.  I'm trying to find the

22    numbers.  This is the phone numbers I give.  I'm

23    trying to find more phone numbers to call her several

24    times.  I was forced to call her.  I was threatened.

Ashok v. Shah

162

1   And you can take copy of this, Liberty Travel.

2              Also, you can take the computer printout.

3              THE REPORTER:  You can take the what?

4              THE WITNESS:  Map Quest directions.

5              Can you, please, count how many pages I

6   give?

7   BY MS. MARCUSS:

8    Q.    There's a pile right here in front of me.

9    A.    But --

10   Q.    No.  We need to go through it later.  Because I

11  need you to answer the question I want to ask you.

12   A.    I think you are trying to cut me short.  I'm

13  trying to recollect whatever I can to the best of my

14  knowledge.  Thank you for your patience.

15             Can I look at my wallets, if you allow me

16  to?  I think I can find it from somewhere.  Or, if I

17  cannot find today, I will give during the trial, if

18  I'm given the chance to be heard by the Federal Court

19  or the Supreme Court, if I'm supposed to go.

20             One moment.  I'm looking for the card, if I

21  can find it.  Thank you for your patience.

22             I think if I cannot find all the numbers

23  she gave me, I will give during the trial.  Or, if you

24  want, I can mail once I find it.  It was like small

Ashok V. Shah

163

1   card, business card with also the 800 number she give

2   me to call.

3       Q.   When did she give you this number?

4       A.   During assignment and also after assignment.

5   During and after, both times.  Several times, I think.

6   I think I might have different card; see if I can

7   find.  One moment.

8               I'm borrowing the pen.

9               And also when I was asked to call, Wendy

10  was answering the phone couple of times.  I was asked

11  to call home, her husband, number two or three at that

12  time, answering the phone.  So there is no question of

13  threat involved at any point in time.

14              Actually I -- she got the -- she wanted to

15  steel everything from my life, including my wife.

16      Q.   Mr. Shah --

17      A.   This is like bad faith, false, dishonest

18  accusations, allegations.

19      Q.   By Ms. Weeks, correct?

20      A.   By the Bank of America and MBNA.

21              They are unduly supporting the person who

22  is born in America in number one color, because she's

23  born in America.  I'm born in other country.

24      Q.   Is that Ms. Weeks you're talking about?

**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters

A79

Ashok V. Shah

164

1    A.    Yeah, Nancy.

2         Like she got all support.  Like also you're

3    supporting.  You are defending her, even though she's

4    dishonest, false.

5    Q.    Mr. Shah, listen to me.  What evidence do you

6    have that the bank knew that her complaint was, in

7    your words, dishonest?

8    A.    What evidence I have?

9    Q.    That the bank knew that her complaint was

10   dishonest.

11   A.    The same person Wendy gave -- Wendy Lindsey, I

12   think, gave my review of the job for 1999.  Out of 10,

13   I heard from the consulting company in Philadelphia,

14   9.5.  Ten being the highest review for my -- one of

15   the best consulting job for the merger.  This is what

16   I got, the information from Nancy.

17        Bank give this review for my job.  As a

18   professional person, I got the review to -- they give

19   my review to Abex Financial -- I don't remember.

20   First word is Abex.  They are located in Philadelphia.

21        THE REPORTER:  Could you spell that for me?

22        THE WITNESS:  A-B-E-X.

23        So there is no question of threat involved

24   at anyplace.  Why they give the best review to outside

Ashok v. Shah

165

1   people? Because I had to call the bank couple of

2   times to get the reference. Like I work for different

3   banks. They ask you want -- I don't like to give

4   where I worked, the numbers and name. They also call

5   directly to Nancy or Wendy about the reference.

6          And this is how I survive so many years.

7   You went on temporary business, little money. I got

8   the best review everyone got at work. I work for the

9   Fleet merger. I got good review.

10         Now the bank says bad reference. So

11  suddenly the pretext game, I don't understand.

12         THE REPORTER: Suddenly the what?

13         THE WITNESS: It is a pretext that I got

14  the bad reference. Why then I got the job for the

15  merger of Fleet when they took over Bank of America?

16  I think I work for about three weeks. If you give me

17  chance, I can give you the exact dates I worked.

18         So Bank of America already hired at that

19  time for the merger, special project. I got the good

20  review. And this was verified by Yamaris. She told

21  me. She look at the record. She look at the computer

22  of Olsten Staffing Company. Now which is merged by

23  Adecco. They took over.

24         She had access. So she says you got good

Ashok V. Shah

166

1   review for the job I did for the Bank of America or

2   MBNA, whatever I did for the Olsten Staffing.  So she

3   was also confused.  I don't know why.  Because

4   different story.

5           She says Yamaris says good review.  Okay.

6   Then another employee Olsten -- I forgot the name --

7   she was temporary for the merger, she told also

8   looking at the computer good review.  No complaint.

9           Michelle Durso terminated in '97 --

10          THE REPORTER:  What was that?

11          THE WITNESS:  Michelle Durso, initially she

12   terminated my job in 1997.

13          THE REPORTER:  I don't understand.

14          MS. MARCUSS:  Michelle Durso.

15          THE REPORTER:  Okay.

16          THE WITNESS:  For which I give the time

17   sheet, right?

18          About two, three -- three months'

19   assignment, two or three, about three weeks.  Same

20   repetition of the history in 2006 by the same person.

21   BY MS. MARCUSS:

22     Q.   Mr. Shah, what did Michelle Durso ever say or

23   do to you that makes you believe she is -- and this is

24   your word -- a racist?

Asnok V. Shan

167

1    A. . Like she don't even like that I drink tea at my

2    assignment in '97.

3    Q.    What else?

4    A.    And she was rude, unprofessional.

5    Q.    How?

6    A.    Your question how, right?

7    Q.    Correct.

8    A.    How for rudeness, unprofessional, what?

9    Q.    You said she was rude and unprofessional.    I

10   want to know exactly how she was rude and/or

11   unprofessional.

12   A.    I give you the time sheet signed by Michelle in

13   97, right?  Can I look?

14             Everything was fine on May 12th, 1997.    I

15   started job 8:00 o'clock in the morning, left

16   5:00 p.m.  Total I work eight hours, one hour lunch.

17   Everything fine.  I think review also fine.

18             Next day, May 13th, 1997, I went for my

19   job, almost same time.  7:45 might be.  I went

20   5th floor.  1997.  5th floor.  I think building was --

21   and her phone number and extension I can give you.

22   453 -- area code (302) 453-9930.  And her extension at

23   that time, 23433.  Assignment number, 19907.  Ended

24   June, written in English.  But assignment ended

Ashok v. Shah

168

1    May 13th.  Same attitude after almost ten years.  Same

2    person, same harassment, same discrimination.

3        Q.   What exactly was the harassment or

4    discrimination?

5        A.   Like she -- she did the same thing here.

6        Q.   What do you mean "The same thing here"?

7        A.   Like I was terminated on May 13th, 1997 about

8    8:15 in the morning.  But I was out of money, so I

9    cannot hire the lawyer.  I was not aware of the law.

10    I cannot represent myself.  So I suffered for as long

11    as I can suffer.  Now enough is enough.

12                One moment.

13                This is everything for record.  May 13,

14    1997 terminated, about 8:15.  And bank didn't pay

15    me --

16                THE REPORTER:  I'm sorry.  And they didn't

17    pay me...

18                THE WITNESS:  Bank didn't pay me money for

19    about waiting for 15 minutes on May 13, 1997, MBNA

20    Bank, one of the top bank.

21                I was asked to go home just like in 2006,

22    immediately without any compassion for showing up for

23    the job on May 13, 1997.  And she was rude:  "Why you

24    come here?"  Same work issues.  I'm human being like

Ashok V. Shah

169

1  you're human being.  Everybody is human being.

2            Actually I didn't do the trespassing.  This

3  is the paper on the days on which I went up to the 5th

4  floor on May 13, 1997.  I signed it, the security

5  guard, to let me go upstairs.  After 15 minutes, I was

6  asked to leave the bank.

7  BY MS. MARCUSS:

8     Q.   How else was she rude or unprofessional?

9     A.   She didn't offer me --

10    Q.   She asked you to leave.

11    A.   She didn't off me seat --

12    Q.   Seat.  What else?

13    A.   -- in '97.

14    Q.   What else?

15    A.   No seat.  Like I was standing, right?

16            She don't like I drink tea, also.

17    Q.   What do you mean she doesn't like that you

18  drink tea?

19    A.   I forgot another my supervisor --

20    Q.   Sir, can you answer my question?  What do you

21  mean she didn't like that you drank tea?

22    A.   She was yelling at somebody like, "Who is

23  drinking this tea?"  Like I forgot the brand name

24  about the tea, tea bag.  I like to drink tea if I'm

**W&F**

WILCOX & FETZER LTD.
Registered Professional Reporters

A85

Ashok V. Shah

170

1  given by the client or the company.

2              I didn't steel anything.  Like you are

3  drinking water, I can drink.  He can drink water.  You

4  can drink water.  Why I cannot drink?  I'm also human

5  being from the same family of God.  She don't like

6  that I drink tea.

7      Q.  Okay.  I understand.

8      A.  Same as she don't like I eat cake.  I'm also

9  human being.  You are hungry.  I'm hungry.  You are

10  hungry.  Everybody is hungry.  We are human being,

11  right?

12              You feel hungry when you got hungry.  You

13  need to eat something.  They eat cake, nice cake,

14  fancy cake, fancy everything.  They eat like -- this

15  is a picture.  Like most of the things they eat here,

16  right.  Leftover is here.  This is the map for the

17  temp people born in other countries, leftover.

18              I can highlight if you want.  This is

19  leftover, meant for temporary people after people born

20  in American eat and leftover.

21              And the celebration for 1999 merger, the

22  celebration --

23              THE REPORTER:  The celebration what?

24              THE WITNESS:  The celebration.

Ashok v. Shah

171

1          I forgot to get the gift they gave me, only
2   one piece of pencil. They give gift to all the
3   permanent employees, including cup and different
4   things --
5          THE REPORTER: Including golf and different
6   things?
7          THE WITNESS: No. Cup, plastic cup and
8   couple of different things.
9          Nancy give me only one pencil. It was
10  written --
11         THE REPORTER: Wait. I don't understand.
12  It was written what?
13         THE WITNESS: F-E-S-T, something like that.
14  She give me only one piece of pencil.
15         I think all people, permanent people left
16  about 1:00 p.m. She came over about after 3:00 some
17  time. I was asked to answer phone like I'm the
18  secretary. I say I need to go and eat something. So
19  I left, took almost same lunch they took. Because,
20  also, I'm human being, born on the same planet
21  everybody is born.
22         They didn't offer anything -- no food,
23  nothing; only a piece of pencil. Everybody eats
24  everything, all permanent. I was treated as a ghost.

Ashok v. Shah

172

1    I'm not a ghost.  You think -- you can look at me,

2    right?  I'm visible.  I'm not a ghost.  They treat me

3    as a ghost because all the work I did went in the name

4    of Nancy Pingitore.  She stole all my work.

5    BY MS. MARCUSS:

6        Q.    Because you were a temporary employee; is that

7    right?

8        A.    This is America.  Everybody should be treated

9    equal, should be given credit.  Suppose you are the

10   lawyer.  You should be given credit that you're

11   defending.

12       Q.    And because you were a temporary employee, you

13   weren't given that same respect?

14       A.    No, not same respect.  Not even food.  I was

15   excluded even for the blood test, like high blood

16   pressure.  Temp people, no, no, no, you cannot go.

17   You cannot go to fitness center.  You cannot eat.  You

18   cannot have the blood pressure checked free.

19               THE REPORTER:  Cannot have what free?

20               THE WITNESS:  Blood pressure.  That was one

21   time occasion.  I ask why.  They says (indicating).

22   BY MS. MARCUSS:

23       Q.    Only for permanent employees?

24       A.    Yeah.  They says keep mouth shut.  Otherwise,

**W&F**

**WILCOX & FETZER LTD.**
Registered Professional Reporters

A88

Ashok V. Shah

178

1    Q.   Well, let's continue then.

2                Would you, please, look at Exhibits 3

3    and 4?

4                Is that your signature on the bottom of

5    Exhibit 3?

6    A.   Okay.  Charge of discrimination:  Race,

7    national origin...

8                THE REPORTER:  I'm sorry.  I can't...

9                THE WITNESS:  Okay.

10                THE REPORTER:  Charge of discrimination:

11    Race, national origin...

12                You just can't mumble.  Just read it out

13    loud, if you're going to.

14                THE WITNESS:  Okay.  Bank of America.  And

15    discrimination based on race, national origin --

16    BY MS. MARCUSS:

17    Q.   You don't need to read the whole thing out

18    loud.  I asked you whether that was your signature on

19    the bottom.

20    A.   I think.

21    Q.   Okay.  You think so, correct?

22    A.   In Exhibit 3, right?

23    Q.   Yes.

24    A.   Can I get copy, please?

Ashok V. Shah

179

1    Q.    I'll make you a copy.

2    A.    Thank you so much.

3    Q.    On Exhibit 4, is that your signature on the

4    bottom?

5    A.    Bank of America.  I give --

6    Q.    Sir, is that your signature on the bottom of

7    Exhibit 4?

8    A.    What -- I think what happened --

9    Q.    Wait.  Wait.  You can answer that in a sec.

10   Answer my question about your signature.  Is that your

11   signature on the bottom of Exhibit 4?.

12   A.    But which one is the final, I think this is the

13   final (indicating).

14   Q.    We'll talk about that in a sec.

15   A.    This is the final.

16   Q.    Is that your signature --

17   A.    This is final.  This was canceled by the

18   officer, but somehow it came to your record.

19   Q.    Okay.  So let me just be clear for a second.

20   Exhibit 3 --

21   A.    Exhibit 3.

22   Q.    -- was canceled?

23   A.    I think -- because you know what happened?  I'm

24   not sure which one the Department of Labor has.

Ashok v. Shah

180

1    Because he did something same day. He mix up. So I

2    cannot -- you can call. I think his name was

3    Herndell, something like that.

4              THE REPORTER: Herndell?

5              THE WITNESS: Yeah. He can give more

6    information.

7    BY MS. MARCUSS:

8    Q.    Okay. But I need you to answer a few very

9    specific questions. Is that your signature --

10   A.    My signature.

11   Q.    -- on the bottom of Exhibit 4?

12   A.    Yeah. Three and four.

13   Q.    Three and four.

14   A.    Three and four.

15              Which one is final...

16              THE REPORTER: Visual is final?

17              MS. MARCUSS: Which one is final.

18              THE WITNESS: You can ask the officer

19   because it was witnessed by the notary. So the

20   notary -- you should verify with the notary.

21              MS. MARCUSS: Mark this one as Exhibit 5,

22   please.

23              THE WITNESS: Because --

24              MS. MARCUSS: Wait a minute. Wait a

**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters

A91

Ashok V. Shah

181

1   minute.  Let the court reporter finish what she's

2   doing, please.

3                (Shah Deposition Exhibit No. 5 was marked

4   for identification.)

5   BY MS. MARCUSS:

6      Q.   I'm showing you what's been marked as

7   Exhibit 5.  That one looks like Exhibit 4 and has a

8   second page where you signed and a notary signed.

9                Do you see that?

10     A.   Yeah, January 8.

11     Q.  · Does that help you figure out which of those

12  two is final?

13     A.   You can verify with the officer who work on

14  this issue.  He's the final person.  So -- also, like

15  suppose somebody's error, I should not be victim again

16  and again.

17                THE REPORTER:  You should not be what again

18  and again?

19                THE WITNESS:  Victim of the error of

20  somebody.  I should not be victimized.

21  BY MS. MARCUSS:

22     Q.   Well, I'm not trying to victimize you.  I'm

23  trying to ask you why there's a difference between

24  those two documents.  Are you saying you don't know?

**W&F**

**WILCOX & FETZER LTD.**

Registered Professional Reporters

Ashok v. Shah

182

1    A.    I know.  But they did couple of things.  They

2    asked me to sign.  And just like here, you are trying

3    to rule me.  I was facing hard time.  And in American

4    when you fall, people kick you more and more.  So I'm

5    kicked by couple of places, including Bank of America.

6    Q.    Mr. Shah, who else have you filed charges of

7    discrimination against?

8    A.    Okay.  Some places I have filed and -- you know

9    like Adecco, because you have Adecco papers.

10   Q.    Adecco.  You filed a charge of discrimination

11   against Adecco?

12   A.    One moment.

13         Then another company said -- I'm not hiding

14   anything.  I don't have a lawyer to discuss a lot of

15   things.  From which my situation, you might take undue

16   advantage.  Some places I work, I have to sign the

17   privacy contract.  So I don't want to go against the

18   law.

19   Q.    Have you filed other charges of discrimination?

20   A.    Yeah.

21   Q.    Against --

22   A.    One moment.  Against.

23   Q.    Against what employers?

24   A.    I'm not hiding, but one is University of

Ashok v. Shah

183

1  Delaware.  Another is staffing company, which you

2  know.

3      Q.    What?  Adecco?

4      A.    Adecco you know.

5      Q.    Okay.  What else?

6      A.    And you know what happened to -- this is in

7  process.  And for one employer, I got the right to

8  proceed further.

9      Q.    What employer is that?

10     A.    University of Delaware.

11     Q.    Have you filed charges of discrimination

12  against any other employers?

13     A.    Yes.  These all problems started because of

14  MBNA and Bank of America.  This is the main problem

15  for myself and for people born in India.  I'm being

16  kicked by MBNA, Bank of America.  So I have to

17  struggle like animal.

18     Q.    Mr. Shah, what facts or evidence do you have to

19  support your claim that your assignment at the bank

20  was terminated due to discrimination based on national

21  origin?

22     A.    Like -- what basis, right?  What evidence --

23     Q.    Facts or evidence.

24     A.    -- my assignment ended?

Ashok v. Shah

184

1   Q.    Due to discrimination --

2   A.    Ended on -- due to discrimination.

3   Q.    -- based on national origin.

4   A.    Like where there are two persons, two persons,

5   like number two, one person born from India.   One

6   person born in USA.   Same staffing company.   Right?

7   Two persons given the job at the same employer, Bank

8   of America.   Person born in India asked to go home.

9   Person born in USA asked to stay.

10   Q.    Any other facts to support that claim?

11   A.    And they don't respect my right as a

12   U.S. citizen.

13   Q.    How have they not respected your right as a

14   U.S. citizen?

15   A.    Like they treat people born in USA with more

16   dignity.   They give them better treatment.   Like they

17   don't -- myself, like I was escorted, like leave the

18   bank.   I'm not a criminal person.

19          I work for America, more than one trillion

20   dollar business.   I brought lot of jobs to America.

21   But this is my future.

22          You can write on record my job.   I help

23   America for business, more than one trillion dollars.

24   On and off, different jobs, mergers, acquisitions,

Ashok v. Shah

185

1   payrolls.  I work up to 3:30 in the morning.  This is

2   my life.

3                  No respect.  No dignity.  No cake.  No

4   food.  No medical testing.  In America, pets are

5   treated better than human being.

6                  THE REPORTER:  In America what?

7                  THE WITNESS:  The pets are given more

8   respect and dignity.

9   BY MS. MARCUSS:

10      Q.    The permanent employees?

11      A.    No.  Pets.  Your dog, cat, you give more love.

12      Q.    Than?

13      A.    Immigrants are treated like slaves.  Still,

14   America says this is democratic country.

15      Q.    Other than the individuals we've talked about

16   today --

17      A.    One moment.  Let me finish, please.

18                  Can I describe the discrimination at your

19   bank?

20      Q.    I have asked you repeatedly to describe the

21   discrimination you feel you have suffered at the bank.

22      A.    That is --

23      Q.    Please tell me exactly what it is.

24      A.    Mail department.  Mail department you have --

**W&F**

WILCOX & FETZER LTD.

Registered Professional Reporters

Ashok v. Shah

186

1    like mail.  You understand mail.  You send the checks.

2    Q.    M-A-I-L.

3    A.    Yeah.

4    Q.    Yes.

5    A.    You have the mail department, right?  Most of

6    the time, your defendant hire people on the word temp

7    to permanent --

8              THE REPORTER:  What's that?

9              THE WITNESS:  Temp to permanent job.

10             THE REPORTER:  Temp to permanent job?

11             THE WITNESS:  Right.

12             You'll be given permanent job after so and

13   so, so and so.  Keep on lying, keep on lying, keep on

14   lying as long as the person collapse and is

15   hospitalized, born in India.

16             THE REPORTER:  I didn't understand.  "Keep

17   on lying, keep on lying, keep on lying as long as the

18   person" what?

19             THE WITNESS:  Keep on exploiting under the

20   pretext temp to hire.  The pretext you understand.

21             Highly unrealistic, highly unachievable

22   productivity standards without enough lunch --

23             THE REPORTER:  I don't understand what

24   you're saying.

**W&F**

**WILCOX & FETZER LTD.**

Registered Professional Reporters

Ashok v. Shah

187

1          THE WITNESS:  Lunch or break.

2          MS. MARCUSS:  Unachievable productivity

3   standards.

4          THE WITNESS:  Unrealistic.  Unrealistic

5   productivity standards.  Unachievable productivity

6   standards.

7          You hire -- the Bank of America hire,

8   previously MBNA.  Immigrants has to work no sleep,

9   night shift, forced to work night shift.  You won't

10  leave, if they collapse or become disabled.  And once

11  the person becomes disabled, then what the Bank of

12  America or what the MBNA does, they dump the person

13  like you are throwing trash in a Dumpster.

14         One person become disabled, they don't ask

15  how is your health.  Nobody ask.  Don't give a single

16  penny.  Once the person recovers from the disability,

17  whether partially or fully, the Bank of America likes

18  to suck again, S-U-C-K, suck the blood as long as they

19  can.  And person wears the fancy clothes, fancy food,

20  fancy cars born in America.  They are sucking the

21  people born in India.

22         One of the victims is sitting outside.  You

23  can call inside if you want.  This is the real

24  evidence.  Kamini Shah is the real evidence.

ASHOK v. SHAH

188

BY MS. MARCUSS:

Q.    That's your wife?

A.    Yeah, she's the wife.

You can look at the picture.  You can call
her.  You can take the photograph.  This is the main
real evidence all problems created by the Bank of
America and MBNA.  This is the live real evidence.
You can call her.

Q.    She does not need to come in.

You brought up witnesses.  I want to know
if there are any other individuals that you believe
have personal knowledge relevant to your claims
against Bank of America?

A.    One moment.  Can I drink water?

Q.    Sure.

A.    I allow you to look at her leg if you can.  If
you have any feeling for human being, you can look at
her leg on the right leg.  Please, I request.

Q.    Mr. Shah, I don't need to look at your wife's
right leg.  I'm asking you now whether there are any
individuals we have not spoken about today --

A.    One moment.  Any individual.

Q.    That we haven't already talked about today that
you --

**W&F**
WILCOX & FETZER LTD.
Registered Professional Reporters

A99

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

**PRAECIPE**

ASHOK V. SHAH
P.O.BOX 1182
NEW CASTLE, DE-19720

VS.                              CIVIL ACTION NO *07C-05-271 WCC*

MS. NANCY PINGITORE
SR. RECONCILMENT COORDINATOR
ACCOUNTING DEPT.
~~BANK OF AMERICA~~
300 N. WAKEFIELD DR;
NEWARK, DE-19702

PLEASE ISSUE————————————————————————————————

MS. NANCY PINGITORE
SR. RECONCILMENT COORDINATOR
ACCOUNTING DEPT.
BANK OF AMERICA
300 N. WAKEFIELD DR;
NEWARK, DE-19702

PLAINTIFF: ASHOK V. SHAH
ADDRESS: P.O.BOX 1182
                NEW CASTLE, DE-19720
PHONE: HOME (302) 369-3657

(1) writ issued

Shir CK # 1179 $30.00



A100

Ashok V. Shah                                    VS.  SR. Reconcilment Co-ordinator
P.O.Box 1182                                            Accounting Dept.
New Castle, DE-19720                                   300 N. WAKEFIELD DR
Phone: Home (302) 369-3657                             NEWARK   DE - 19702

                                                       05/25/2007

        TO WHOMSOEVER IT MAY IT MAY CONCERN                    07C-05-271
                                                                   WCC

I STARTED WORKING FOR BANK OF AMERICA ON 12/04/2006 AS
TEMPORARY EMPLOYEE THROUGH ADECCO AT THEIR CLIENT
BANK OF AMERICA. I WAS TERMINATED ON 12/04/2006 BY MY
SUPERVISOR AT THE BANK.

I WAS TERMINATED DUE TO DISCRIMINATION BASED ON RACE,
NATIONAL ORIGIN. I FILED THE CHARGES OF DISCRIMINATION
AGAINST BANK OF AMERICA ON JAN 08, 2007,
CASE NO. 07010006W. FOR THIS I RECEIVED FINAL
DETERMINATION AND RIGHT TO SUE ON 02/28/2007.

 The Bank Associate have filed dishonest complaint & made bad faith accusations. In fact
she is harassing me from Sept 1999 to present. The matter is reported to the police.
Previously I worked for MBNA from 07/19/1999 to 11/12/1999. The associate physically
abused me from Sept 1999 to Nov. 2001. Due to her threats I did not report the matter to
the Bank or to the Police.

I AM U.S. CITIZEN.DUE TO THE DISCRIMINATION I LOST
SALARY FOR ANOTHER 18 YEARS, ASSUMING THE RETIRING
AGE OF 70 YEARS. $ 1,440,000 (ONE MILLION FOUR HUNDRED
FORTY THOUSAND U.S. DOLLARS), i.e. 18 years multiply by
$80,000.00.

I AM VICTIM OF SEXUAL ABUSE & HARASSMENT BY
THE BANK EMPLOYEE.
 I BELIEVE PENALTY FOR THIS HARASSMENT & PHISICAL
 SEXUAL ABUSE SHOULD BE AT LEAST $41,000,000.00
 (Forty one Million U.S. Dollars)

MY OCCUPATION IS ACCOUNTANT; I AM CHARTERED ACCOUNTANT FROM
INDIA & CERTIFIED FINANCIAL CONSULTANT U.S.A. & CANADA.


THANK YOU.

SINCERELY,

ASHOK V. SHAH

                                                                A101

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | |
| [X] EEOC | 17C-2007-00284 |

| Delaware Department of Labor | and EEOC |
|---|---|
| State or local Agency, if any | |

| me (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| r. Ashok V. Shah | (302) 369-3657 | 08-08-1954 |

eet Address    City, State and ZIP Code

O. Box 1182 New Castle, DE 19720

med is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe criminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| ne | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ANK OF AMERICA | 101 - 200 | (302) 266-5600 |

eet Address    City, State and ZIP Code

0 N. Wakefield Dr.,  Newark, DE 19702

| ne | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

eet Address    City, State and ZIP Code

CRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN
[ ] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 12-04-2006 | 12-04-2006 |

[ ] CONTINUING ACTION

ARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

risdiction: Charging Party was employed at Respondent's Delaware facility as a Accountant since 12/4/06

harging Party's protected class: Race ( Hindu), National Origin ( India)

dverse employment action: Discharge

rief statement of allegations:  Charging Party states that based on race and national origin he was discharged. Specifically, Charging Party states he rived at work 12/4/06 and began his work day. Charging Party, states that he was contacted by Respondent's supervisor (Michele Durso) 11:44am and lvised that he was to contact HR. Charging Party states that once he contacted HR (Lisa Pisano) he was told that because of a bad reference he was ot eligible to work for Bank of America and was being discharged. Charging Party states that Respondent's reason for his discharge was a pretext. harging Party states that after checking with Office Supervisor (Yamaris Esquillin) at Olsten Staffing services he found that he had no bad reference atus with them. Charging Party states that ultimately, based on national origin and race he was after working for approx 4 hours discharged by the espondent.

espondent's explanation: Charging Party was discharged because of bad reference

pplicable law(s): Title VII of the Civil Rights Act, as amended; Delaware Discrimination in Employment Act, as amended

omparators(s) or other specific reason(s) for alleging discrimination: Charging Party alleges that based on national origin he was discriminated jainst when he was treated different by the Respondent and discharged.

| nt this charge filed with both the EEOC and the State or local Agency, if any. I advise the agencies if I change my address or phone number and I will cooperate with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| clare under penalty of perjury that the above is true and correct. | |
| Jan 08, 2007 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date            *AB Shah* (Charging Party Signature) | |

DEPOSITION EXHIBIT
Shah 3

A102

CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| X FEPA | 0701000(ω) |
| X EEOC | 17C-2007-00284 |

Delaware Department of Labor _____ and EEOC
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Ashok V. Shah** | (302) 369-3657 | 08-08-1954 |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 1182 New Castle, DE 19720** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **BANK OF AMERICA** | 101 - 200 | (302) 266-5600 |

| Street Address | City, State and ZIP Code |
|---|---|
| **300 N. Wakefield Dr.,  Newark, DE 19702** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

RACE ☐   COLOR ☐   SEX ☐   RELIGION ☐   NATIONAL ORIGIN ☒

RETALIATION ☐   AGE ☐   DISABILITY ☐   OTHER *(Specify below.)* ☐

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 12-04-2006 | 12-04-2006 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Jurisdiction: Charging Party was employed at Respondent's Delaware facility as a Accountant since 12/4/06

Charging Party's protected class: ! . : . ..), National Origin ( India)

Adverse employment action: Discharge

Brief statement of allegations: Charging Party states that based on . : national origin he was discharged. Specifically, Charging Party states he arrived at work 12/4/06 and began his work day. Charging Party, states that he was contacted by Respondent's supervisor (Michele Durso) 11:44am and advised that he was to contact HR. Charging Party states that once he contacted HR (Lisa Pisano) he was told that because of a bad reference he was not eligible to work for Bank of America and was being discharged. Charging Party states that Respondent's reason for his discharge was a pretext. Charging Party states that after checking with Office Supervisor (Yamaris Esquillin) at Olsten Staffing services he found that he had no bad reference status with them. Charging Party states that ultimately, based on national origin · · he was after working for approx 4 hours discharged by the Respondent.

Respondent's explanation: Charging Party was discharged because of bad reference

Applicable law(s): Title VII of the Civil Rights Act, as amended; Delaware Discrimination in Employment Act, as amended

Comparators(s) or other specific reason(s) for alleging discrimination: Charging Party alleges that based on national origin he was discriminated against when he was treated different by the Respondent and discharged.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Jan 08, 2007 _____ *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date | |

DEPOSITION EXHIBIT
Shah 4
1-800-631-6989

A103

## DECLARATION OF KAREN BAHR

I, Karen Bahr, do hereby depose and swear as follows:

1.    I am over 18 years of age. I have personal knowledge of and am competent to testify to the matters stated in this declaration.

2.    I am currently an Advice and Counsel Case Manager for Bank of America, N.A. (the "Bank"). One of my responsibilities in this position is to respond to charges of discrimination filed against the Bank or one of its subsidiaries. One charge of discrimination I handled was that filed by Ashok Shah.

3.    Attached hereto as Exhibit A is a true and accurate copy of the Notice of Change of Discrimination that the Bank received from the Delaware Department of Labor.

4.    Attached hereto as Exhibit B is a true and accurate copy of the Final Determination and Right to Sue Notice regarding Mr. Shah's Charge that the Bank received from the Delaware Department of Labor.

5.    Attached hereto as Exhibit C is a true and accurate copy of the notes of the report made to MBNA Security regarding Mr. Shah in October 2001.

_____
Karen Bahr

Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the foregoing is true and correct. Executed this 2nd day of May, 2008.

_____
Karen Bahr

#6225072

A104

1-29-07; 4:48PM;BOA                                    ;7043868032          # 27 10



STATE OF DELAWARE DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 N. MARKET STREET
WILMINGTON, DE 19802
(302) 761-8200/ FAX: (302) 761-6601

January  19, 2007

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Personnel Manager
BANK OF AMERICA
300 N. Wakefield Dr.,
Newark, DE 19702

RE:    Shah v. BANK OF AMERICA
       Case No. 07010006W/17C-2007-00284

Dear Respondent:

Enclosed please find a NOTICE OF CHARGE OF DISCRIMINATION, along with the following documents:

    1.    Verified Charge of Discrimination filed against the above-named Respondent;
    2.    Mediation interest form;
    3.    Copy of 19 Del. Code § 712 (c), describing the administrative process.

Pursuant to 19 Del. Code § 712 (c), the named Respondent has an opportunity at this time to "file an answer
within twenty (20) days of the receipt of the Charge of Discrimination, certifying that a copy of the answer
was mailed to the Charging Party at the address provided." If you are interested in mediation, you do not
need to file an answer at this time. If you elect this option you must check the appropriate provision on
the enclosed Invitation To Engage in Mediation and return it to us in lieu of your answer.
This Charge of Discrimination has been filed under the following law(s), and as indicated by the case numbers
referenced above.

    ____✓____  Title VII              ____✓____  DE Discrimination in Employment Act
    _____  ADA                    _____  DE Handicapped Persons Employment Protection Act
    _____  ADEA

We anticipate your full cooperation.  If you intend to retain legal representation at any time throughout this
process, please have your attorney enter his or her appearance so that future contact will be made through him
or her.

                                        *Julie Cutler*

                                        Julie Klein Cutler, Administrator,
                                        Discrimination Program

cc:  Charging Party (w/o enclosures)

                                                        ┌─────────────────┐
                                                        │    EXHIBIT      │
17C_DDOL_B-06W-R Resp New Charge Packet Wilm_DOC : 07/06 │                 │
                                                        │      A          │
                                                        └─────────────────┘

JAN-29-2007  MON 16:40  TEL:6173460571        NAME:BANKOFAMERICA COMPENSATION B P.  2

                                                                                    A105



1-29-07: 4:48PM;BOA                           ;7043868032          # 3/ 10



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604

**EEOC Charge No.** ___17C-2007-00284___          **DDOL Charge No.** ___07010006W___

### NOTICE OF CHARGE OF DISCRIMINATION

You are hereby notified that the above-referenced charge of employment discrimination has been received by the Labor Law Enforcement Section of the Delaware Dept. of Labor (DDOL) and sent to the EEOC for dual-filing purposes. This Notice is being sent to you by the DDOL, on behalf of EEOC, simultaneously with DDOL's notification to you of the filing of the charge with DDOL. The charge has been assigned the EEOC and DDOL charge numbers shown above. A copy of the charge is included with these Notices.

While EEOC has jurisdiction (upon the expiration of any 60-day deferral requirement if this is a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of DDOL's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that there has been a violation of the statute(s) administered by EEOC.

You are therefore urged to cooperate fully with the DDOL. All facts and evidence provided by you to the DDOL in the course of its proceedings will be considered by EEOC when it reviews the DDOL's final findings and orders. In many instances the EEOC will take no further action, thereby avoiding the necessity of an investigation by both the DDOL and the EEOC. This likelihood is increased by your full cooperation with the DDOL.

As a party to the charge, you may request that EEOC review the DDOL's final decision and order. For such a request to be honored, you must notify the EEOC in writing within 15 days of your receipt of DDOL's final closure notification. Such a request should be forwarded to EEOC at the address shown in the letterhead above, to the attention of the State and Local Unit. If the DDOL terminates its processing without issuing a final finding and order or the charge is otherwise one which requires further EEOC processing, you will be contacted further by EEOC. Regardless of whether the DDOL or EEOC process the charge, the Recordkeepng and non-retaliation provisions of Title VII, the ADA and the ADEA as explained in the "EEOC Rules and Regulations" apply.

___January 19, 2007___
**Date**

_Marie M. Tomasso_

**Marie M. Tomasso, District Director**

JAN-29-2007  MON 16:40   TEL:6173460671        NAME:BANKOFAMERICA COMPENSATION B P.  3

1-29-07: 4:48PM:BOA    ;7043868032    # 4/ 10

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| X FEPA | 070100060W |
| X EEOC | 17C-2007-00284 |

and EEOC

## Delaware Department of Labor
State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Ashok V. Shah | (302) 369-3657 | 08-08-1954 |

| Street Address | City, State and ZIP Code |
|---|---|
| P.O. Box 1182 New Castle, DE 19720 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| BANK OF AMERICA | 101 - 200 | (302) 266-5600 |

| Street Address | City, State and ZIP Code |
|---|---|
| 300 N. Wakefield Dr., Newark, DE 19702 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest · Latest |

RACE ☐   COLOR ☐   SEX ☐   RELIGION ☐   NATIONAL ORIGIN X

RETALIATION ☐   AGE ☐   DISABILITY ☐   OTHER (Specify below.) ☐

Earliest 12-04-2006   Latest 12-04-2006

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Jurisdiction: Charging Party was employed at Respondent's Delaware facility as a Accountant since 12/4/06

Charging Party's protected class: National Origin ( India)

Adverse employment action: Discharge

Brief statement of allegations: Charging Party states that based on national origin he was discharged. Specifically, Charging Party states he arrived at work 12/4/06 and began his work day. Charging Party, states that he was contacted by Respondent's supervisor (Michele Durso) 11:44am and advised that he was to contact HR. Charging Party states that once he contacted HR (Lisa Pisano) he was told that because of a bad reference he was not eligible to work for Bank of America and was being discharged. Charging Party states that Respondent's reason for his discharge was a pretext. Charging Party states that after checking with Office Supervisor (Yamaris Esquillin) at Olsten Staffing services he found that he had no bad reference status with them. Charging Party states that ultimately, based on national origin he was after working for approx 4 hours discharged by the Respondent.

Respondent's explanation: Charging Party was discharged because of bad reference

Applicable law(s): Title VII of the Civil Rights Act, as amended; Delaware Discrimination in Employment Act, as amended

Comparators(s) or other specific reason(s) for alleging discrimination: Charging Party alleges that based on national origin he was discriminated against when he was treated different by the Respondent and discharged.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jan 08, 2007**   _Date_        _Charging Party Signature_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

JAN-29-2007  MON 16:41  TEL:6173460671    NAME:BANKOFAMERICA COMPENSATION B P.  4

A107

1-29-07; 4:48PM;BOA                              ;7043888032            # 5/ 10

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | 0701000⁄₆ω<br>**17C-2007-00284** |

| **Delaware Department of Labor** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

# NO FURTHER INFORMATION

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements*<br>*mhshelton*   01/09/07 |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Jan 08, 2007**    X *ABhush*<br>Date          *Charging Party Signature* | *ABhush*<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)*    **MELINDA S. SHELTON**<br>NOTARY PUBLIC, STATE OF DELAWARE<br>My Commission Expires *01/30/07* |

JAN-29-2007  MON 16:41   TEL:6173460671      NAME:BANKOFAMERICA COMPENSATION B P.  5

A108

STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION PROGRAM

Ashok V. Shah                                           Case No. 07010006W
P.O. Box 1182
New Castle, DE 19720

vs.

BANK OF AMERICA
300 N. Wakefield Dr.,
Newark, DE 19702

FINAL DETERMINATION AND RIGHT TO SUE NOTICE

Pursuant to 19 Del. C. § 710, et seq., the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

*No-Cause Determination and Dismissal with Corresponding Right to Sue Notice.*

In this case, the Department has completed its investigation and found that there is no reasonable cause to believe that an unlawful employment practice has occurred. The Department hereby issues a No-Cause Determination and Dismissal and provides the Charging Party with a Delaware Right to Sue Notice.

*In this Charge of Discrimination, the Charging Party bears the burden to prove his allegations by a preponderance of the evidence. Here he alleges the Respondent discriminated against him because of his National Origin (India) when he was terminated. The Respondent denies these allegations. They state the Charging Party worked for an agency that provided contract employees for the Respondent. They contend while the Charging Party provided similar services to them on an earlier assignment, he harassed another of the Respondent's employees. To this extent, the Respondent has provided evidence of these previous issues with the Charging Party. The Respondent states their decision to discharge the Charging Party was based solely on these earlier incidents and had nothing to do with his National Origin. The Charging Party was advised of this Agency's preliminary determination in this matter and was afforded the opportunity to respond. The information he submitted in response tended to support the Respondent's claim regarding Charging Party's inappropriate conduct. Based on the foregoing, the Charging Party has failed to meet his evidentiary burden. Accordingly, this No Cause Determination follows.*

See the attached Notice of Rights.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Program.

_2/28/07_                              _Julie Klein Cutler, Administrator_
Date issued                           Julie Klein Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

17C_DDOL_C-12-NC - No Cause Determ_DOC: 3/06

**EXHIBIT**

B

A109

EXHIBIT

C

10/10/01 @ 1130

VIA ROB YSAIS THRU LEE ALLISON
WENDY LINDSEY X 70315
CAROL SELDOMRIDGE 68835
COLE HSE. 1ST FLOOR — FINANCIAL OPS.
NANCY PINGITORE X - 70897

H/ADD     PHONE!
                                        HUSBAND:

                                                    BRN. EYES
            5'11"  195 LBS    S+P/HAIR  GLASSES
SUSPECT:  ASHOK SHAH    8-8-54  INDIAN (HINDU)
          400 FOULK RD. WILM. DE      MOUSTACHE
                                        ACCENT
WORK:   UNEMPLOYED TEMP - ACCT.
M/V :    94  MAXIMA NISSAN > Z37998 DE - GRN (DK)
          4 DR.

MET HIM 2 YRS AGO @ MBNA DURING PVC
CONVERSION,   FRIENDS @ WORK, SPOUSES AWARE
HUSBAND) TERMED RELATIONSHIP.
SHAH's HAD FINANCIAL PROBLEMS - ASKED
FOR  LOAN $17,000  UP TO THIS POINT
ASKED FOR  2 TO 3000 MORE,  NO
MONEY OUT OF HER CHECKING ACCT. ONLY,
NO PAY BACK, NO PROOF OF X - PENSES
WSFS- MONEY ALL SAVED - NO ACCESS
        AROUND)  8/2000 - THINGS CHANGED -

CALLING HOUSE REPEATEDLY - CELL PHONE, OUTSIDE LINES
HARASSING/

NO MORE MONEY/

A111

NO HISTORY OF VIOLENCE, VERBAL/PHYSICAL
KNOWS WORK LOCATION
WOULD NOT CAUSE PROBLEMS @ WORK

CELL PHONE: YES
WORK 7×4     M-FRI
ESCORTS/PARKING/VIDEO/CALL TRACE

GOOD EMPLOYEE, NO ISSUES
BETSY SULLIVAN  1300    10/10/01



# INCIDENT REPORT

Page __1__ of __1__

| | |
|---|---|
| **Center:** Crozier Center | **Report Number:** CRC 01-193 |
| **Type of Incident:** Miscellaneous / Nuisance telephone call | |
| **Day/Date of Incident:** Wednesday, 10-10-01 | **Time of Incident:** 10:45 HRS |
| **Location of Incident:** Financial Operations, 1st floor Cole House | |

☒ **MBNA People**

| Name | Department | Extension | Manager's Name |
|---|---|---|---|
| WENDY LINDSEY | FINANCIAL OPERATIONS | 70315 | RANDY BLACK |
| NANCY PINGITORE | FINANCIAL OPERATIONS | 70897 | WENDY LINDSEY |
| LEE ALLISON | SECURITY | 35810 | RICH DAVOLOS |
| | | | |
| | | | |

## NOTIFICATION(S)

| | | | | |
|---|---|---|---|---|
| Name: Rob Ysais | Time: 1050 hrs | Name: | | Time: |
| Name: Ed Disabitino | Time: 1100 hrs | Name: | | Time: |

**AED Pack Used:    Yes ☐    No ☒

☒ **NON-MBNA People**

| Name | Address/Company | Work # | Home # |
|---|---|---|---|
| ASHOK SHAH | 400 FULK ROAD, WILM., DE. | N/A | 302-655-2097 |
| | | | |

### Details of Incident (Attach statement forms or additional sheets, if applicable):

At the above date and time this writer received a call from Wendy Lindsey manager of Nancy Pingitore. Wendy informed me that Nancy has been receiving annoying telephone calls at her residence and is now receiving them at her desk. The calls received are believed to be from a male acquaintance, Ashok Shah and have not been in anyway delivered in a threatening manner. This writer contacted Rob Ysais of the incident. Rob Ysais informed Ed Disabitino of the T.M.T. group, which will be following up with this incident.

| | | | | |
|---|---|---|---|---|
| Follow up: ☒ Yes ☐ No | By Whom: Ed Disabitino | | | |
| Reported By: Lee Allison | | Date: 10/10/01 | Time: 1045 hrs | |
| Reviewed By: Rob Ysais | | Date: 10/10/01 | Time: 1138 hrs | |

SF-01

Rev. 5/01

A113

## DECLARATION OF DAWN M. C. WEAVER

I, Dawn M. C. Weaver, do hereby depose and swear as follows:

1.    I am over 18 years of age.  I have personal knowledge of and am competent to testify to the matters stated in this declaration.

2.    I am currently a Group Operations Manager for Banc of America Card Servicing Corp. (the "Bank"), which is a subsidiary of Bank of America, N.A. and was formerly part of MBNA America Bank.  I have been in this position since March 2006 and with the Bank or a predecessor since September 1987.

3.    In late 2006, our area was working on a special project for which we needed temporary assistance.    Accordingly, I contacted Adecco, among other temporary staffing agencies, to obtain temporary assistance.  Linda ("Michele") Durso, an Operations Manager, who reports to me, was going to oversee the temporary employees.

4.    Sometime in the morning of December 4, 2006, Ms. Durso reported to me that she had learned from another supervisor that there had been a significant issue in the past between one of our permanent employees, Nancy Weeks (formerly Pingitore), and one of the Adecco employees who had been assigned to our project.

5.    I spoke with Wendy Lindsey, one of Ms. Weeks' former managers, who reported to me that Ms. Weeks and the temporary employee, Ashok Shah, had worked together as part of a special project at the Bank.  She told me that after the project had ended something significant had happened that had been escalated to Personnel, MBNA security and Threat Management due to the severity of the situation.  I then consulted with an individual in Human Resources who advised me that we were under no obligation to retain the temporary employee and that they recommended and supported us contacting the temporary agency to advise Mr. Shah that his services were no longer needed effectively immediately.

6.   As the current temporary assignment would have involved Ms. Weeks and Mr. Shah working in the same area, I felt it was appropriate to end his temporary assignment. Mr. Shah's race and national origin were irrelevant to my decision. In fact, at the time I made the decision to end his assignment, I had never to my knowledge met Mr. Shah and was not aware of Mr. Shah's race or national origin.

Dawn M. C. Weaver

Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the foregoing is true and correct. Executed this 2nd day of May, 2008.

Dawn M. C. Weaver

#6224565.3

2

A115

## DECLARATION OF LINDA M. DURSO

I, Linda ("Michele") Durso, do hereby depose and swear as follows:

1.    I am over 18 years of age. I have personal knowledge of and am competent to testify to the matters stated in this declaration.

2.    I am currently an Operations Manager for Banc of America Card Servicing Corp. (the "Bank"), which is a subsidiary of Bank of America, N.A. and was formerly part of MBNA America Bank. I have been with the Bank or a predecessor since 1988.

3.    In late 2006, our area was working on a special project for which we needed temporary assistance. One of the individuals who was assigned to the Bank by Adecco is Ashok Shah, who reported to me on December 4, 2006. I walked Mr. Shah across the work area and showed him where he would be sitting.

4.    At some point that morning, I was told by Jennifer Buchanan, another supervisor in our area, that Wendy Lindsey, another Bank supervisor, called to tell her that there had been an issue in the past between one of our permanent employees, Nancy Weeks (formerly Pingitore), and Mr. Shah. I reported what I had learned to my supervisor, Dawn Weaver.

5.    After Ms. Weaver consulted with various individuals, she directed me to contact Adecco to inform it that the Bank had decided to end Mr. Shah's temporary assignment. Lisa Pisano, with whom I spoke, asked me to have Mr. Shah call her so that she could tell him that his assignment was ending. I then gave Ms. Pisano's phone number to Mr. Shah and directed him to a conference room. After Mr. Shah had spoken with Ms. Pisano, I directed Mr. Shah back to the entrance of the Bank.

Linda M. Durso

PAGE 2/3 * RCVD AT 5/5/2008 12:45:21 PM [Eastern Daylight Time] * SVR:RIGHTFAX/4 * DNIS:2479 * CSID: * DURATION (mm-ss):00-30

A116

Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the foregoing is true and correct. Executed this 5th day of May, 2008.

Linda M. Durso

#6224779.2

2

A117

## DECLARATION OF PEGGY JANE KEEN

I, Peggy Jane Keen, do hereby depose and swear as follows:

1. I am over 18 years of age. I have personal knowledge of and am competent to testify to the matters stated in this declaration.

2. I am currently an Accounting Specialist with Banc of America Card Servicing Corp. (the "Bank"). I have been with the Bank or a predecessor as a permanent employee since August 2000.

3. I started working at MBNA as a temporary employee in 1999 as part of a special project. Ashok Shah was also a temporary employee at the time. One of the permanent associates with whom we worked was Nancy Weeks (then Pingitore). Mr. Shah's temporary assignment ended when the project on which we were working ended in late 1999.

4. In about 2001, I was in a lead role and Ms. Weeks was one of the individuals who reported to me. During that period, I became aware that Ms. Weeks was having a problem with Mr. Shah. I understood that the issue had been reported to Wendy Lindsey, our senior manager.

5. In December 2006, I saw Mr. Shah in our work area at the Bank and he came up to me and asked if I remembered him. Ms. Weeks was not at the Bank that day. Based on what I knew about the previous issue between Ms. Weeks and Mr. Shah, I believed that Ms. Weeks would be very upset if she saw Mr. Shah at the Bank. I felt that this needed to be reported to management, but I did not want to involve individuals who might not be aware of the previous situation. As a result, I called Ms. Lindsey and told her that Mr. Shah was at the Bank on a temporary assignment in our area.

Peggy Jane Keen

A118

Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the foregoing is true and correct. Executed this 2nd day of May, 2008.

Peggy Jane Keen ()

#6225721.2

2

A119

## DECLARATION OF NANCY WEEKS

I, Nancy Weeks, do hereby depose and swear as follows:

1.     I am over 18 years of age.  I have personal knowledge of and am competent to testify to the matters stated in this declaration.

2.     I am currently an Accounting Specialist with Banc of America Card Servicing Corp. (the "Bank").  I have been in this position for approximately 13 years and with the Bank or a predecessor since 1987.  My former married name was Nancy Pingitore.

3.     In 1999, I worked as part of a special project along with a number of temporary employees, including Ashok Shah and Peggy Keen.  Mr. Shah's temporary assignment ended when the project on which we were working ended in November 1999.

4.     Mr. Shah and I became friends and developed a personal relationship during his temporary assignment with MBNA in 1999.  Our relationship continued until August 2001.  At that point, I no longer wanted to have any sort of relationship or contact with Mr. Shah.   During our relationship he had borrowed $17,000 from me and pressured me to forgive the debt.  After I asked him to stop bothering me, Mr. Shah continued calling my home phone (even after I changed the number) and cell phone and driving by my home.  I became very scared of Mr. Shah and the only place I felt safe was at work.  However, Mr. Shah continued to call me at work and on my cell phone during working hours, despite my repeated requests that he not call me anymore.

5.     In October 2001, I reported the situation with Mr. Shah to my senior manager, Wendy Lindsey.  Ms. Lindsey told me that she would contact MBNA Security.  Thereafter I met with someone from Threat Management who gave me some advice on how to protect myself and told me that Mr. Shah would not be permitted to work at MBNA again.

A120

6.    Between October 2001 and December 2006, Mr. Shah called me on a couple of occasions. One time he came to my former residence and asked for more money. One time my current husband and I saw him driving slowly by our new home. On a few occasions in 2006, I saw Mr. Shah on foot or riding his bike near the parking garage where I park my car when I am at work. I remain afraid of Mr. Shah.

7.    I was not at work on December 4, 2006. Two days later, Ms. Keen told me that Mr. Shah had been at the Bank in our work area that day. I was very upset when I heard that because there is no way I would work with him again.

*Nancy Weeks*
Nancy Weeks

Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the foregoing is true and correct. Executed this 2nd day of May, 2008.

*Nancy Weeks*
Nancy Weeks

#6225754.2

2

A121

## DECLARATION OF WENDY S. LINDSEY

I, Wendy S. Lindsey, do hereby depose and swear as follows:

1.    I am over 18 years of age.  I have personal knowledge of and am competent to testify to the matters stated in this declaration.

2.    I am currently a Manager in the Card Services-Accounting area for FIA Card Services, N.A. (the "Bank"), a subsidiary of Bank of America, N.A.  I have been in this position since April 2006 and with the Bank or a predecessor since March 1999.

3.    In late 2006, I received a call from Peggy Keen, an MBNA associate, who informed me that Ashok Shah just arrived at the Bank on a temporary assignment in her and Nancy Weeks' area.  Ms. Keen's immediate manager was out of the office that day which is why she called me with her concern.

4.    I was familiar with Mr. Shah because I supervised a special project in 1999 for which the Bank hired temporary employees.  Mr. Shah was one of those temporary employees.  His temporary assignment ended before the end of 1999.  Thereafter, in about 2001, Ms. Weeks reported to me she and Mr. Shah had developed a personal relationship that had subsequently soured.  She told me that she had attempted to separate herself from Mr. Shah, but that he continued calling her and showing up near her home.  He also kept calling her at work, despite her repeated requests that he not call her anymore.  Ms. Weeks told me that she had become scared of Mr. Shah.  I sought advice from Personnel and then reported the situation to MBNA Security and was told that the Bank's Threat Management group would follow up with Ms. Weeks.

5.    In late 2006, I was no longer working in the same area as Ms. Weeks.  After I received the call from Ms. Keen, I called Jennifer Buchanan who I knew was a manager in Ms. Weeks' area and told her what I had learned from Ms. Keen and that there previously had been

A122

an issue between Ms. Weeks and Mr. Shah. Thereafter, I spoke with Dawn Weaver, a senior manager in that area, about the situation.

Wendy S. Lindsey

Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the foregoing is true and correct. Executed this 2nd day of May, 2008.

Wendy S. Lindsey

#6226818.2

2

A123

## DECLARATION OF LISA PISANO

I, Lisa Pisano, do hereby depose and swear as follows:

1.    I am over 18 years of age. I have personal knowledge of and am competent to testify to the matters stated in this declaration.

2.    I am currently Client Program Manager for Adecco. In this position, I work with Adecco's client Bank of America.

3.    Adecco assigned Ashok Shah to Bank of America for a temporary assignment that started on December 4, 2006 and had an expected end date of December 29, 2006. Mr. Shah's rate of pay for this assignment was $13 per hour.

4.    On the morning of December 4, 2006, I received a call from Michele Durso who told me that the Bank has decided to end Mr. Shah's temporary assignment at the Bank. I asked Ms. Durso to have Mr. Shah call me so that I could convey the message to him. Mr. Shah called me shortly thereafter and I conveyed the message to him.

5.    The termination of Mr. Shah's assignment with Bank of America did not affect his ability to obtain further assignments from Adecco. Mr. Shah has been maintained by Adecco as eligible to work.

Lisa Pisano

Pursuant to 28 U.S.C. Section 1746, I declare under the penalty of perjury that the foregoing is true and correct. Executed this 2 day of May, 2008.

Lisa Pisano

#6225264

A124

<u>**CERTIFICATE OF SERVICE**</u>

       I, Margaret M. DiBianca, Esquire, do hereby certify that on May 5, 2008, I did

file electronically the foregoing **Appendix to Defendant's Opening Brief in Support of It's**

**Motion for Summary Judgment** with the Court.  I also certify that I caused two (2) copies of

**Defendant's Opening Brief in Support of It's Motion for Summary Judgment** to be mailed

via Certified Mail, return receipt requested, to the following plaintiff pro se:

                Ashok V. Shah
                P.O. Box 1182
                New Castle, Delaware 19720

                        /s/ Margaret M. DiBianca
                        Margaret M. DiBianca

